**No. 2024-2296**

# United States Court of Appeals for the Federal Circuit

**EXAFER LTD.,**
*Plaintiff-Appellant*

v.

**MICROSOFT CORPORATION,**
*Defendant-Appellee*

Appeal from the United States District Court for the Western District of Texas, No. 1:20-cv-131-RP, Judge Robert Pitman

## NONCONFIDENTIAL BRIEF FOR DEFENDANT-APPELLEE

EIMERIC REIG-PLESSIS
Winston & Strawn LLP
101 California Street
San Francisco, CA 94111
(415) 591-6800
ereigplessis@winston.com

KELLY C. HUNSAKER
MICHAEL R. RUECKHEIM
MATTHEW R. MCCULLOUGH
Winston & Strawn LLP
255 Shoreline Drive
Redwood City, CA 94065
(650) 858-6500
khunsaker@winston.com
mrueckheim@winston.com
mrmcullough@winston.com

February 6, 2025

*Counsel for Defendant-Appellee Microsoft Corporation*

# CLAIM LANGUAGE

## U.S. Patent No. 8,325,733, Claim 26 (Appx75)

26. A method for forwarding frames of a flow via a layer 2 forwarder and manipulator (L2FM), the method comprising:

a. identifying, at the L2FM, one or more first frames of a new flow;

b. obtaining forward control information for frames of the new flow, wherein the forward control information includes re-writing of at least one field in an original header of the frames of the new flow, wherein obtaining forward control information is done out of band;

c. changing the at least one field in an original header of the frames of the new flow according to the obtained forward control information; and

d. forwarding the frames of the new flow according to the forward control information;

wherein at least portion of the control information is obtained from a remote-admission-and-information controller (RAIC).

**U.S. Patent No. 8,971,335, Claim 26 (Appx105)**

26. A method to optimize information delivery between a first node on a first network and a second node on the same or different network, the delivery being made through a networked system in which one or more paths between the first node and the second node are known and, through a Transmitting Device Set with Promiscuous and Re-writing Capabilities (TDSPRC) that receives and retransmits all frames of the first network and the same or different network, and the method comprising:

collecting topology information related to three or more different Open System Interconnection (OSI) model layers from a plurality of network devices working in networks that belong to different OSI layers;

identifying alternate paths, based at least in part on the collected topology information related to three or more different OSI layers, between the first node and the second node;

creating a collective virtual network (CVN) including the known paths and the alternate paths, for a particular flow, identify an optimal path in the CVN instead of a known path between the first node and the second node; and

modifying the data frames of the particular flow to be compatible with a network technology employed by the identified optimal path, wherein the modification is implemented by the TDSPRC and the TDSPRC is not a member in at least one of the networks.

## CERTIFICATE OF INTEREST

Undersigned counsel certifies that the following information is accurate and complete to the best of counsel's knowledge:

1. **Represented Entities.** Fed. Cir. R. 47.4(a)(1): "The full name of every entity represented in the case by the counsel filing the certificate."

   Microsoft Corporation

2. **Real Party in Interest.** Fed. Cir. R. 47.4(a)(2): "For each entity, the name of every real party in interest, if that entity is not the real party in interest."

   Microsoft Corporation

3. **Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3): "For each entity, that entity's parent corporation(s) and every publicly held corporation that owns ten percent (10%) or more of its stock."

   None

4. **Legal Representatives.** Fed. Cir. R. 47.4(a)(4): "The names of all law firms, partners, and associates that have not entered an appearance in the appeal, and (A) appeared for the entity in the lower tribunal; or (B) are expected to appear for the entity in this court."

| | | |
|---|---|---|
| *Winston & Strawn:* | M. Brett Johnson | Vivek V. Krishnan |
| Thomas M. Melsheimer | Qi (Peter) Tong | Carson Swope |
| Katherine Kelly Vidal | Samantha M. Lerner | |

| *Shelton Coburn LLP:* | *Sidley Austin LLP:* | |
|---|---|---|
| Barry Kenneth Shelton | Aimee P. Fagan | |

**5. Related Cases.** Fed. Cir. R. 47.4(a)(5): "An indication as to whether there are any related or prior cases, other than the originating case number(s), that meet the criteria under Federal Circuit Rule 47.5."

No

**6. Organizational Victims and Bankruptcy Cases.** Fed. Cir. R. 47.4(a)(6): "All information required by Federal Rule of Appellate Procedure 26.1(b) and (c) that identifies organizational victims in criminal cases and debtors and trustees in bankruptcy cases."

Not applicable

/s/ Kelly C. Hunsaker
KELLY C. HUNSAKER
*Counsel for Defendant-Appellee*

February 6, 2025

# TABLE OF CONTENTS

Page

CLAIM LANGUAGE .......... i

CERTIFICATE OF INTEREST .......... iii

TABLE OF AUTHORITIES .......... ix

GLOSSARY OF ABBREVIATIONS .......... xv

STATEMENT OF RELATED CASES .......... xvi

INTRODUCTION .......... 1

STATEMENT OF ISSUES .......... 6

STATEMENT OF THE CASE .......... 6

A. Microsoft's accused—and unaccused—Azure products .......... 6

B. Procedural history .......... 9

1. Exafer failed to disclose any damages theory or damages evidence during fact discovery. .......... 9

2. Exafer served a first round of expert reports and used unaccused VM revenues for its royalty base. .......... 10

3. Without leave of Court, Exafer served a second round of expert reports, disrupting the schedule while reasserting the same damages theory. .......... 12

4. Microsoft's expert only rebutted Exafer's expert and offered no alternate damages calculation. .......... 15

C. The district court's orders .......... 15

1. The district court excluded Exafer's damages testimony based on undisputed law and facts. .......... 15

## TABLE OF CONTENTS (continued)

**Page**


2. The district court denied Exafer's motion to reopen discovery and serve a third round of expert reports. .......... 17

3. The district court granted summary judgment after Exafer failed to raise a triable dispute. .......... 18

SUMMARY OF ARGUMENT .......... 19

STANDARD OF REVIEW .......... 23

ARGUMENT .......... 25

I. The district court properly excluded Mr. Blok's opinions. .......... 25

A. Longstanding precedent precludes a patentee from including noninfringing products in its royalty base. .......... 25

B. Mr. Blok's damages opinions are inadmissible because his proposed royalty base consists entirely of unpatented VM product revenue .......... 29

C. Exafer fails to show any legal error or abuse of discretion in the exclusion of Mr. Blok's opinions. .......... 31

1. Exafer's cited caselaw is consistent with the district court's decision, which did not categorically exclude *any* consideration of noninfringing activity but only barred Exafer from relying on such activity for its royalty *base*. .......... 31

2. Exafer's reliance on allegedly "real-life" considerations lacks any factual or legal basis. .......... 36

3. Exafer's argument that unaccused VMs are "used with" VNets is irrelevant and does not permit damages based on unaccused products. .......... 39

**TABLE OF CONTENTS (continued)**

**Page**


4. Exafer's objection that the district court "entirely" excluded Mr. Blok's opinions is both waived and fails to show abuse of discretion. 42

II. Exafer fails to show any abuse of discretion in the district court's denial of Exafer's motion to reopen discovery. 46

A. Exafer does not challenge the discretionary finding that it failed to explain any inability to comply with the scheduling order, which alone is dispositive. 47

B. The district court did not abuse its discretion in rejecting Exafer's vague allegations of "importance" for unspecified discovery requests. 50

C. The district court did not abuse its discretion in finding Exafer's request prejudicial. 51

D. The district court did not abuse its discretion in finding a continuance would increase prejudice. 52

III. The district court correctly granted summary judgment. 53

A. Exafer fails to show any abuse of discretion in the district court's evidentiary rulings. 54

1. The district court did not abuse its discretion in finding that Mr. Martinez's rebuttal expert opinions are inadmissible hearsay. 54

2. The district court did not misapply Rule 56(c) or abuse its discretion by disregarding unspecified documents Exafer did not cite in its opposition. 61

B. Exafer's conduct resulted in a record devoid of damages evidence, warranting summary judgment. 64

## TABLE OF CONTENTS (continued)

**Page**


1. Microsoft met its initial burden by pointing to Exafer's failure to preserve any damages evidence or theory during discovery. .......... 66

2. Exafer failed to come forward with evidence that would support a non-zero damages award. .......... 67

3. Section 284 does not preclude summary judgment when, as here, the patentee fails to preserve admissible evidence of damages. .......... 71

CONCLUSION .......... 75

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

CERTIFICATE OF CONFIDENTIAL MATERIAL


## CONFIDENTIAL MATERIAL OMITTED

The material omitted at pages 11 and 37 indicates an alleged percentage increase of virtual machine hours; and the material omitted at page 58 indicates a percentage of revenue attributable to a category of networking services.

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Fam. Life Assur. Co. of Columbus v. Biles*,
714 F.3d 887 (5th Cir. 2013) .......... 25, 64

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .......... 65, 67

*Apple Inc. v. Motorola, Inc.*,
757 F.3d 1286 (Fed. Cir. 2014), *overruled on other grounds*, *Williamson v. Citrix Online, LLC*,
792 F.3d 1339 (Fed. Cir. 2015). .......... *passim*

*Arbuckle Mountain Ranch of Texas, Inc. v. Chesapeake Energy Corp.*,
810 F.3d 335 (5th Cir. 2016) .......... 43

*Aro Mfg. Co. v. Convertible Top Replacement Co.*,
377 U.S. 476 (1964) ("*Aro II*") .......... *passim*

*AstraZeneca AB v. Apotex Corp.*,
782 F.3d 1324 (Fed. Cir. 2015) .......... *passim*

*Balboa Cap. Corp. v. Okoji Home Visits MHT, L.L.C.*,
111 F.4th 536 (5th Cir. 2024) .......... 24, 25, 53, 63

*Barrett v. Atl. Richfield Co.*,
95 F.3d 375 (5th Cir. 1996) .......... 51

*Brumfield, Trustee for Ascent Trust v. IBG LLC*,
97 F.4th 854 (Fed. Cir. 2024) .......... 32, 33, 34

*Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*,
807 F.3d 1283 (Fed. Cir. 2015) .......... 33

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .......... 65, 69

## TABLE OF AUTHORITIES (continued)

**Page(s)**

*Certain Underwriters at Lloyd's, London v. Axon Pressure Prods. Inc.*,
951 F.3d 248 (5th Cir. 2020) .......... 46

*Collins v. Wayne Corp.*,
621 F.2d 777 (5th Cir. 1980) .......... 57

*Devex Corp. v. Gen. Motors Corp.*,
667 F.2d 347 (3d Cir. 1981) .......... 71

*Dow Chem. Co. v. Mee Indus., Inc.*,
341 F.3d 1370 (Fed. Cir. 2003) .......... 73, 74

*EEOC v. General Dynamics Corp.*,
999 F.2d 113 (5th Cir. 1993) .......... 52

*Enplas Display Device Corp. v. Seoul Semiconductor Co.*,
909 F.3d 398 (Fed. Cir. 2018) .......... *passim*

*ePlus, Inc. v. Lawson Software, Inc.*,
700 F.3d 509 (Fed. Cir. 2012) .......... 25, 45, 46

*Fahim v. Marriott Hotel Servs., Inc.*,
551 F.3d 344 (5th Cir. 2008) .......... 47, 48, 50, 51

*Fox v. Taylor Diving & Salvage Co.*,
694 F.2d 1349 (5th Cir. 1983) .......... 55, 57

*Garretson v. Clark*,
111 U.S. 120 (1884) .......... 40

*Geiserman v. MacDonald*,
893 F.2d 787 (5th Cir. 1990) .......... 51

*Guillory v. Domtar Indus. Inc.*,
95 F.3d 1320 (5th Cir. 1996) .......... 38

**TABLE OF AUTHORITIES (continued)**

**Page(s)**

*Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*,
897 F.2d 508 (Fed. Cir. 1990) ........ 72

*HTC Corp. v. Telefonaktiebolaget LM Ericsson*,
12 F.4th 476 (5th Cir. 2021) ........ 57

*i4i Ltd. P'ship v. Microsoft Corp.*,
598 F.3d 831 (Fed. Cir. 2010) ........ 34

*Info-Hold, Inc. v. Muzak LLC*,
783 F.3d 1365 (Fed. Cir. 2015) ........ 45, 73

*Key Pharms. v. Hercon Labs. Corp.*,
161 F.3d 709 (Fed. Cir. 1998) ........ 60

*Kim v. Am. Honda Motor Co.*,
86 F.4th 150 (5th Cir. 2023) ........ 23, 25

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
694 F.3d 51 (Fed. Cir. 2012) ........ 40, 49

*Lee v. Offshore Logistical & Transport, LLC*,
859 F.3d 353 (5th Cir. 2017) ........ 62, 63

*Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co., Harris Press & Shear Div.*,
895 F.2d 1403 (Fed. Cir. 1990) ........ 74

*Marathon Fin. Ins., Inc., RRG v. Ford Motor Co.*,
591 F.3d 458 (5th Cir. 2009) ........ 24

*MicroStrategy Inc. v. Bus. Objects, S.A.*,
429 F.3d 1344 (Fed. Cir. 2005) ........ 45, 67

*MLC Intell. Prop., LLC v. Micron Tech., Inc.*,
10 F.4th 1358 (Fed. Cir. 2021) ........ 23, 67

**TABLE OF AUTHORITIES (continued)**

**Page(s)**

*Mooney v. Aramco Servs. Co.*,
54 F.3d 1207 (5th Cir. 1995), *overruled on other grounds*, *Rachid v. Jack in The Box, Inc.*,
376 F.3d 305 (5th Cir. 2004) .......... 56

*Munoz v. Int'l All. of Theatrical Stage Emps. & Moving Picture Mach. Operators of U.S. & Canada*,
563 F.2d 205 (5th Cir. 1977) .......... 64

*Omega Patents, LLC v. CalAmp Corp.*,
13 F.4th 1361 (Fed. Cir. 2021) .......... 46

*Profectus Tech. LLC v. Huawei Techs. Co.*,
823 F.3d 1375 (Fed. Cir. 2016) .......... 24

*Promega Corp. v. Life Techs. Corp.*,
875 F.3d 651 (Fed. Cir. 2017) .......... 3, 49, 65, 72

*Ragas v. Tenn. Gas Pipeline Co.*,
136 F.3d 455 (5th Cir. 1998) .......... 64

*Rembrandt Social Media, LP v. Facebook, Inc.*,
561 F. App'x 909 (Fed. Cir. 2014) .......... 49, 50

*Rios v. City of Conroe*,
674 F. App'x 366 (5th Cir. 2016) .......... 52

*Rite-Hite Corp. v. Kelley Co. Inc.*,
56 F.3d 1538 (Fed. Cir. 1995) .......... 34, 35

*Slip Track Sys., Inc. v. Metal-Lite, Inc.*,
304 F.3d 1256 (Fed. Cir. 2002) .......... 24

*SmithKline Beecham Corp. v. Apotex Corp.*,
439 F.3d 1312 (Fed. Cir. 2006) .......... 35, 43, 67, 74

*Springboards to Educ., Inc. v. Houston Indep. Sch. Dist.*,
912 F.3d 805 (5th Cir. 2019) .......... 46

**TABLE OF AUTHORITIES (continued)**

**Page(s)**

*TecSec, Inc. v. Adobe Inc.*,
978 F.3d 1278 (Fed. Cir. 2020) .......... 5, 22, 71, 72

*United States v. Loew's, Inc.*,
371 U.S. 38 (1962) .......... 28

*Versata Software, Inc. v. SAP Am., Inc.*,
717 F.3d 1255 (Fed. Cir. 2013) .......... 73

*VirnetX, Inc. v. Cisco Sys., Inc.*,
767 F.3d 1308 (Fed. Cir. 2014) .......... 38, 41, 42

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
395 U.S. 100 (1969) .......... 28

**Statutes**

35 U.S.C. § 271(a) .......... 32, 33, 34

35 U.S.C. § 284 .......... *passim*

**Other Authorities**

Fed. R. Civ. P. 16(b) .......... 23, 24

Fed. R. Civ. P. 16(b)(4) .......... 23, 46, 53

Fed. R. Civ. P. 26 .......... 56, 65

Fed. R. Civ. P. 26(a)(1) .......... 9

Fed. R. Civ. P. 26(a)(1)(A)(iii) .......... 9

Fed. R. Civ. P. 26(b) .......... 57

Fed. R. Civ. P. 26(e) .......... 9

Fed. R. Civ. P. 26(e)(1)(A) .......... 9

**TABLE OF AUTHORITIES (continued)**

**Page(s)**

Fed. R. Civ. P. 30(b)(6) .......... 10, 13, 61

Fed. R. Civ. P. 56 .......... 61, 63, 64, 65

Fed. R. Evid. 702 .......... *passim*

Fed. R. Evid. 801(d)(2)(B) .......... 58

Fed. R. Evid. 801(d)(2)(C) .......... 54, 56

Fed. R. Evid. 804(b)(6) .......... 55

## GLOSSARY OF ABBREVIATIONS

| | |
|---|---|
| Bansal | Deepak Bansal, Microsoft Azure Core Engineering |
| Blok | Justin Blok, Exafer's damages expert |
| Br. | Corrected Opening Brief of Plaintiff-Appellant |
| Congdon | Paul Congdon, Ph.D., Exafer's technical expert |
| Exafer | Plaintiff-Appellant Exafer Ltd. |
| Firestone | Daniel Firestone, Microsoft Azure Host Networking |
| IaaS | Infrastructure as a Service |
| Maltz | David Maltz, Ph.D., Microsoft Azure Networking |
| Martinez | Christopher Martinez, Microsoft's rebuttal damages expert |
| Microsoft | Defendant-Appellee Microsoft Corporation |
| NIC | Network Interface Card |
| Olivier | James Olivier, Ph.D., Microsoft's technical expert |
| VFP | Virtual Filtering Platform |
| VM | Virtual Machine |
| VNet | Virtual Network |

## STATEMENT OF RELATED CASES

Under Federal Circuit Rule 47.5, Defendant-Appellee ("Microsoft") states as follows:

(a) No previous appeal has been taken in this action.

(b) Counsel is not aware of any case pending in this or any other tribunal that will directly affect or be directly affected by this Court's decision in the pending appeal.

## INTRODUCTION

Exafer lost this case because it made a series of bad choices and is now unhappy with the result. It chose to stonewall and not identify any damages evidence or theory during fact discovery. It chose to limit its first damages expert report to a single invalid theory using a royalty base made up entirely of *unaccused* product revenues. When assumptions underlying that theory proved false, it chose to take its "second chance" and serve supplemental expert reports that doubled down on the theory anyway. And it chose to oppose summary judgment without identifying *any* facts that could support a damages award at trial. Exafer's own choices led directly to the rulings below, and it fails to show any abuse of discretion or legal error to change the result.

***First***, Exafer provides no basis to disturb the district court's exclusion of its damages expert. Exafer's appeal rests on the false premise that "the district court set a categorical bar on the consideration of *any* non-accused activities in a reasonable royalty analysis." Br. 2. But the court did no such thing. It "specifically acknowledge[d]" and *allowed* expert testimony about unaccused activities that "may be directly benefiting" from the accused technology.

Appx8. The court simply applied longstanding precedent that "[t]he *royalty base* for reasonable royalty damages cannot include activities that do not constitute patent infringement, as patent damages are limited to those 'adequate to compensate for the infringement.'" *Enplas Display Device Corp. v. Seoul Semiconductor Co.*, 909 F.3d 398, 411 (Fed. Cir. 2018) (quoting *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1343 (Fed. Cir. 2015) (quoting 35 U.S.C. § 284)).[1]

Exafer's damages expert violated that principle. As Exafer admitted, Mr. Blok calculated damages using "VM [i.e., virtual machine] hours as the royalty base," even though "VMs are not themselves accused of infringing." Appx3255. That is precisely what precedent forbids: "applying a royalty to sales of non-accused [products] *cannot* support a jury's verdict on damages." *Enplas*, 909 F.3d at 412. "The rules prohibiting extension of the patent monopoly to unpatented elements are not so readily circumvented." *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 508 (1964) ("*Aro II*").

***Second***, Exafer fails to show any abuse of discretion in the district court's refusal to reopen fact and expert discovery and reset the trial

[1] Emphases in cases and the record are added unless otherwise noted.

date again. Exafer claims it merely sought "a second chance to present a damages theory." Br. 3. But Exafer glaringly omits the district court *already* gave it a "second chance," reopening fact and expert discovery on damages, extending the schedule and vacating the trial date, and granting Exafer leave to serve supplemental damages reports. Appx11. Instead of using its second chance to offer an alternative theory, Exafer *chose* to maintain its unaccused VM royalty base theory in Mr. Blok's second report. The district court did not abuse its discretion in denying Exafer a *third* chance. Where, as here, a patentee "failed to present an alternative case for damages, a district court does not abuse its discretion by declining to give that plaintiff multiple chances to correct deficiencies in its arguments or the record." *Promega Corp. v. Life Techs. Corp.*, 875 F.3d 651, 666 (Fed. Cir. 2017).

***Third***, Exafer provides no basis to disturb the entry of summary judgment. Its appeal turns mainly on threshold rulings about the evidentiary record, reviewed deferentially for abuse of discretion: exclusion of hearsay and the supposed disregard of unspecified documents that Exafer never cited in its opposition and are outside the summary judgment record. The Microsoft documents recited in Exafer's

opening brief here were *not* before the district court on summary judgment except for a *single* document, which the district court considered. Appx33 (noting Exafer "identified and attached" only one document to its opposition).

Exafer fails to show any abuse of discretion in these threshold evidentiary rulings and cannot raise a triable dispute on the resulting record, which Exafer concedes is "severely limited." Br. 26. Exafer again relies on a false premise: that the district court granted summary judgment based on "[a] single *Daubert* motion" (Br. 4) and "solely on the argument that [] Mr. Blok's testimony was excluded" (Br. 52). But the court did *not* grant summary judgment merely because Exafer's damages expert was excluded; it relied on Exafer's "failure to disclose any other damages evidence or theories to Microsoft during discovery," and Exafer's failure to come forward with *any* evidence from which a jury could determine a non-zero damages award. Appx26-27. Exafer never mentions its discovery failures, nor its failure to present evidence of damages in the summary judgment record.

Exafer's argument that the district court violated Section 284's "clear mandate" (Br. 4) contradicts this Court's precedent that "[t]he

statute does not require an award of damages if none are proven that adequately tie a dollar amount to the infringing acts." *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1291 (Fed. Cir. 2020) (affirming zero-damages judgment). The district court distinguished Exafer's cases, including *Apple Inc. v. Motorola, Inc.*, which allows summary judgment when, as here, a patentee fails to preserve any "factual issue regarding whether it is due any non-zero royalty" and advances a damages theory that is "incorrect as a matter of law." 757 F.3d 1286, 1328, 1330 n.9 (Fed. Cir. 2014), *overruled on other grounds*, *Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015).

The deficient record on summary judgment did not result from any error by the district court but stemmed directly from Exafer's failure to preserve or develop any valid damages evidence during fact discovery, expert discovery, or summary judgment briefing. Exafer "deliberately abandon[ed] valid theories of recovery in a singular pursuit of an ultimately invalid damages theory." *TecSec*, 978 F.3d at 1291. The predictable result was "a case completely lacking any evidence on which to base a damages award," which "support[s] a zero royalty award." *Id.*

## STATEMENT OF ISSUES

**I.** Whether the district court abused its discretion in excluding the testimony of Exafer's damages expert, who used revenues from unaccused products as his royalty base.

**II.** Whether the district court abused its discretion in denying Exafer's motion to modify the case schedule by reopening discovery to serve a *third* round of damages expert reports.

**III.A.** Whether the district court abused its discretion in (1) excluding testimony by Microsoft's rebuttal damages expert as hearsay; and (2) not considering documents Exafer never cited in its summary judgment opposition or discovery responses.

**III.B.** Whether Microsoft was entitled to summary judgment after meeting its burden to show the absence of evidence to support damages based on Exafer's discovery failures, and Exafer failed to identify admissible evidence from which a jury could award damages.

## STATEMENT OF THE CASE

### A. Microsoft's accused—and unaccused—Azure products

This case involves certain aspects of Microsoft Azure, which is not a single product but a cloud computing platform spanning more than 200 products and services. Appx1836; Appx1860-1873; Appx1452

(116:4-11) (Bansal); Appx914 (Congdon). Azure's delivery models include Software as a Service (SaaS), Platform as a Service (PaaS) and Infrastructure as a Service (IaaS). Appx1881.

Microsoft's Azure IaaS business is segmented into three distinct service lines: Compute, Storage, and Networking:




Appx829; Br. 10. VMs (far-left above) and virtual networks or "VNets" (leftmost in righthand category) are distinct services in distinct service lines: VMs are a "Compute" service (Appx1851; Appx1862), whereas VNets are a "Networking" service (Appx1854; Appx1869-1870). *See* Appx3057 (21:9-15) (Bansal) ("Azure virtual networks does not include virtual machines," which "is a separate offering").

Exafer alleges that "Microsoft's Azure *network*" infringes two narrow improvement patents related to optimizing network data flows. Appx1; Appx895-896 ¶¶110, 112; Appx968 ¶301; Appx1133 ¶488 (Congdon). Its infringement theory is limited to two infrastructure components of Azure VNets (a Networking service) called "VFP Fastpath" and "SmartNIC Accelerated Networking." Appx4; Appx966-967 ¶¶296-97 (Congdon); Br. 2. In contrast, Exafer does *not* accuse VMs (a Compute service). Appx3255. Nor could it. Exafer's patents do not mention and are unrelated to VMs. Appx60-105.

The accused VFP Fastpath and SmartNIC functionalities have not provided *any* financial benefit to Microsoft and may have actually *increased* costs. Appx4407-4409 (168:14-18: "VFP Fast[p]ath doesn't have a financial benefit to Microsoft."), (169:7-11: "SmartNIC is not proven to have a financial benefit to Microsoft."), (173:11-16: "[I]t's quite possible that there was actually a financial cost.") (Maltz); Appx4414-4417 (44:22-45:4: "I can't say there's any direct financial benefit."), (141:6-25: VFP Fastpath "did not allow us to either serve more [VMs] or … impact the cost to those [VMs] or the hosts.") (Firestone).

### B. Procedural history

#### 1. Exafer failed to disclose any damages theory or damages evidence during fact discovery.

Exafer never disclosed any damages theory or evidence during fact discovery. Federal Rule of Civil Procedure 26(a)(1) required Exafer to provide, "without awaiting a discovery request," "a computation of each category of damages claimed" and to identify "documents or other evidentiary material … on which each computation is based, including materials bearing on the nature and extent of injuries suffered." Fed. R. Civ. P. 26(a)(1)(A)(iii). Rule 26(e) required Exafer to supplement any incomplete disclosures. Fed. R. Civ. P. 26(e)(1)(A).

Yet Exafer's initial disclosures did not provide any damages computation or identify any damages evidence. Exafer simply stated it "is currently unable to provide a computation of damages." Appx3443. Although Exafer added it would "amend its response once provided with the appropriate data" (*id.*), it never did. Appx24-25.

Microsoft served interrogatories requesting that Exafer "Identify and Describe in detail [its] contentions regarding any claim for damages," including "factual and legal bases for [its] computation" and "all relevant Documents and Things." Appx3438. Exafer merely

responded: “Exafer will detail its damages theory in the liability and damages expert reports it intends to serve in this case.” Appx3439. Exafer cited no non-expert damages evidence or theories and never amended this interrogatory response. Appx25-26.

Under Federal Rule of Civil Procedure 30(b)(6), Microsoft sought corporate testimony on facts “concerning any contention that Exafer is entitled to a reasonable royalty in this case, including the factual bases applicable to each of the *Georgia*[-]*Pacific* factors.” Appx3447. Exafer’s designated witness provided no responsive testimony on damages, claiming it was “privileged” (Appx3456-3457 (135:23-139:8)), and refused to identify “any factors” informing the “amount that Exafer is going to ask the jury for at trial” (Appx3457 (138:22-139:8)).

#### 2. Exafer served a first round of expert reports and used unaccused VM revenues for its royalty base.

The first time Exafer disclosed a damages theory or evidence was in Mr. Blok’s opening report, which applied a royalty rate to unaccused, per-hour VM revenues as the royalty base. Appx3425.

Mr. Blok’s purported justification for using VM revenues as his base was testimony by Exafer’s technical expert, Dr. Congdon, who initially assumed—citing no evidence—that “Microsoft was able to

provide approximately Percent [redacted] more virtual machine hours than it would have been able to prior to implementing VFP Fastpath in Azure, an improvement that is attributable entirely to the teachings of the Patents-in-Suit." Appx899. Dr. Congdon later acknowledged that this assumption was unsupported, and the only evidence was that "Microsoft did *not* add more virtual machines to its servers" after adding the accused functionalities. Appx1356; Appx1360; Appx1518 (150:8-151:24) (Congdon); Appx1563; Appx1565.

Despite no evidence that the accused technology led to increased VMs or VM hours, Mr. Blok used the entire market value of Microsoft's unaccused VM revenues "as the starting point for [his] damages calculation." Appx3022 (302:19-22). By "applying a per-hour royalty rate … to the total number of virtual machine hours Microsoft sold," he "calculated reasonable royalty damages owed to Exafer for Microsoft's alleged infringement of the Patents-in-Suit." Appx1212; Appx1268. Mr. Blok confirmed his "royalty base is virtual machine hours" (Appx3025 (328:13-14)), and Exafer similarly admitted—repeatedly—that he used "VM hours as the royalty base." Appx3255; *accord* Appx3255; Appx3259; Appx3261; Appx3264-3265.

Mr. Blok did not claim that the entire market value rule or any convoyed sales theory justified using VM revenues as a royalty base. Rather, he admitted "the entire market value rule does not apply" (Appx3023-3024 (318:23-319:6); Appx1254 ¶107), and he did "not quantif[y]" any "potentially" convoyed sales (Appx2825 ¶82).

#### 3. Without leave of Court, Exafer served a second round of expert reports, disrupting the schedule while reasserting the same damages theory.

After serving expert reports in November 2021, Exafer "took no steps to move this case forward" for nearly a year-and-a-half, which the court warned "may result in dismissal." Appx4432. In May 2023, however, Exafer suddenly moved to reopen fact discovery to take an additional 90-minute deposition of Dr. Maltz, Microsoft's engineering lead for Azure Networking. Appx4434. Dr. Maltz testified, consistent with others, that Microsoft was *un*able to increase VMs or VM hours by implementing VFP Fastpath or SmartNIC, refuting the premise of Exafer's damages theory. Appx1475 (187:19-188:2), Appx1492 (71:7-10), Appx1497 (103:9-24) (Maltz); Appx3051-3052 (140:15-141:25) (Firestone); Appx3058-3059 (110:21-111:20, 166:7-17) (Bansal).

Exafer did not seek leave to supplement its expert reports. Appx4435. Nevertheless, five weeks after deposing Dr. Maltz, Exafer served "supplemental" reports on damages by Dr. Congdon and Mr. Blok. *Id*. Exafer did so "over [Microsoft]'s objections that the supplemental reports were untimely and improper," "after the close of expert discovery, without leave of the court, and just one week before the deadline for dispositive and Rule 702 motions in prejudice to [Microsoft]." *Id.*; *accord* Appx4442.

"Due to the prejudice to [Microsoft] caused by [Exafer]'s untimely and unauthorized submission of supplemental expert reports," the court "gave [Exafer] the choice of either (1) the court striking its supplemental expert reports or (2) allowing the supplemental reports, [reopening expert discovery] and … moving the motion deadlines and trial date." Appx4436. Exafer "opted for the second option," requiring a new round of expert discovery on damages, and "elect[ing] to postpone the motion deadlines and trial date" to be allowed to serve its supplemental reports on damages. *Id.*; Appx4437; *see also* Appx11-12; Appx16; Appx4441-4442.

Despite this second opportunity to present a viable damages theory, Exafer doubled down on its original VM-hours theory. Dr. Congdon acknowledged Dr. Maltz's unrebutted testimony that "Microsoft did *not* add more virtual machines to its servers," but speculated Microsoft "*could* have done so." Appx1356. Mr. Blok parroted this speculation that Microsoft "could" have added VMs (Appx1368) and maintained his VM-hour royalty base (Appx1373), even though Microsoft has "not directly used the benefit it received to implement an incremental increase in [VM] hours" (Appx1370). *See* Appx3032 (31:6-12) (Blok). Dr. Congdon insisted that increased VM hours can be used "to determine the value" of the accused technology anyway, because in his experience companies do whatever is "most profitable." Appx1360-1361 ¶¶29, 31-32. Mr. Blok said this made damages based on increased VM hours "conservative," since the value of whatever benefits Microsoft *did* choose to achieve "(e.g., infrastructure efficiencies and corresponding cost savings)" "would necessarily exceed" the value of increased VM hours. Appx1370-1371 ¶¶12-13.

Mr. Blok admitted he did "not provide an alternative damage[s] opinion on a different assessment of benefits, other than providing additional VM hours and [VMs]." Appx1557 (345:21-24).

#### 4. Microsoft's expert only rebutted Exafer's expert and offered no alternate damages calculation.

Microsoft's rebuttal damages expert, Mr. Martinez, did not offer any alternative damages model either. His reports were explicitly limited to rebutting Mr. Blok (Appx4106; Appx4112 ¶7; Appx4162), and Mr. Martinez confirmed he did not "provide[] any opinion … regarding the amount of reasonable royalties" or "what Microsoft would have agreed to pay in a hypothetical negotiation," but instead "only provide[d] criticisms of Mr. Blok's analysis and opinions" and "was just asked to rebut the analysis of Mr. Blok" (Appx4422-4423 (8:18-9:17)). Mr. Martinez's only opinion on the accused technology's value was that, in Exafer's counsel's words, it had *no* "financial benefit to Microsoft *at all, whatsoever, none, zip*." Appx4425 (122:1-18).

### C. The district court's orders

#### 1. The district court excluded Exafer's damages testimony based on undisputed law and facts.

Microsoft moved to exclude Mr. Blok's damages opinions under Federal Rule of Evidence 702, arguing that "Exafer's damages model is

fundamentally flawed because it uses unaccused VMs as the royalty base," contrary to *Enplas*, 909 F.3d 398; *AstraZeneca*, 782 F.3d 1324; and *Aro II*, 377 U.S. 476. Appx5; Appx836.

Exafer's response ignored this argument and did not distinguish or cite any of these cases. Appx1910-1930. As the magistrate judge found: "Exafer does not directly respond to the cases cited by Microsoft holding that it is improper for unaccused technology to form the royalty base"; "Exafer cited no case holding that the royalty base could entirely consist of unaccused technology"; and Exafer did "not distinguish *Enplas* or any of the many cases that Microsoft cited on this point." Appx5-6. Because Exafer "failed to meet its burden to show that Mr. Blok's damages theory is based on a sufficiently reliable methodology," the magistrate judge excluded his opinions. *Id.*

In objections to the magistrate judge's order, Exafer repeatedly admitted that Mr. Blok used "VM hours as the royalty base." Appx3255; *accord* Appx3255; Appx3259; Appx3261; Appx3264-3265. Exafer also admitted "VMs are not themselves accused of infringing." Appx3255. For the first time, Exafer addressed *Enplas* in its objections, but not *AstraZeneca* or *Aro II*. Appx3252-3267. Exafer did not object to

the wholesale exclusion of Mr. Blok's opinions except in a concluding footnote. Appx3267 n.2.

The district court affirmed the magistrate judge. Appx10. The court agreed Exafer "cited no case holding that the royalty base could entirely consist of unaccused technology." Appx8-9. Because it was undisputed "Mr. Blok attempted to use VM hours—which are not accused of infringement—as the royalty base," the court found no clear error in Mr. Blok's exclusion. Appx9.

**2. The district court denied Exafer's motion to reopen discovery and serve a third round of expert reports.**

After the court excluded Mr. Blok, Exafer waited five weeks until the day before dispositive motions were due to seek wide-ranging changes to the schedule: Exafer moved "to reset the trial date, re-open fact and expert discovery, authorize Exafer to serve ten additional requests for production and five interrogatories, take two 30(b)(6) fact depositions (one technical and the other financial), and grant the parties leave to file their respective expert reports and conduct expert depositions limited to the supplemental reports." Appx3316. Exafer did not attach or describe any proposed discovery requests.

In denying Exafer's motion, the district court observed Exafer had already "filed two untimely and unauthorized supplemental expert reports." Appx11 (quotation omitted). The court found "Exafer fails to show that there is good cause to modify the scheduling order and re-open fact and expert discovery," making discretionary findings under all four factors of the Fifth Circuit's governing test. Appx13-16.

#### 3. The district court granted summary judgment after Exafer failed to raise a triable dispute.

Based on Exafer's case-specific conduct, Microsoft moved for summary judgment of no remedy.[2] Relying on Exafer's "failure to disclose any other damages evidence or theories to Microsoft during discovery" beyond Mr. Blok's excluded testimony, the district court found "Microsoft has made the initial showing that there is no evidence to support that Exafer's reasonable royalty, upon a finding of infringement, should be more than zero." Appx26-27.

The court then considered "whether Exafer has raised a genuine issue of fact as to whether its reasonable royalty … is greater than zero." Appx27. The only materials Exafer cited in its opposition are

[2] Microsoft also moved for summary judgment of noninfringement, which the district court did not reach. Appx23.

discussed in Section E of its statement of the case (Br. 26-28) and appear in the range Appx3560 to Appx4372. These materials include only a single Microsoft document. Appx33. Anything else cited in Exafer's brief is not part of the summary judgment record. The court considered all alleged evidence Exafer raised in opposition, made discretionary evidentiary rulings, and concluded there was no "evidence in the record that a jury could use to arrive at a non-speculative reasonable royalty based on Microsoft's alleged cost savings." Appx34.

Exafer did not dispute that summary judgment on damages was case-dispositive, and the court entered the parties' agreed form of judgment dismissing Exafer's claims with prejudice. Appx4480-4481; Appx4483; Appx36.

## SUMMARY OF ARGUMENT

**I.** Exafer fails to show any abuse of discretion in the exclusion of Mr. Blok's damages opinions, which Exafer admitted used "VM hours as the royalty base," even though "VMs are not themselves accused of infringing." Appx3255. As the district court correctly found, Mr. Blok's opinions violated longstanding precedent that "[t]he royalty base for

reasonable royalty damages cannot include activities that do not constitute patent infringement." *Enplas*, 909 F.3d at 411.

Exafer's appeal rests on the false premise that the court "appl[ied] a categorical bar to considering non-infringing activities in a reasonable royalty analysis." Br. 30. Exafer ignores the court's explicit finding excluding Mr. Blok because he "uses VM hours as his *royalty base*" (Appx8)—*not* for merely "considering non-infringing activities" (Br. 30). For the same reasons, Exafer's cited cases are inapposite. As it did below, Exafer "cite[s] no case holding that the royalty base could entirely consist of unaccused technology" (Appx9), which would upend longstanding precedent.

Nor did the district court abuse its discretion in excluding Mr. Blok's testimony "in its entirety." Br. 30. Exafer waived any objection to wholesale exclusion—mentioning it only in a footnote below (Appx3267 n.2)—and Mr. Blok's "*Georgia-Pacific* analysis" (Br. 30) simply advanced the same unaccused VM royalty-base theory (Appx1226-1231), which tainted his opinions entirely.

**II.** Exafer fails to show any abuse of discretion in the denial of its motion to reopen discovery again. Exafer does not address the

relevant test or dispute the district court's discretionary finding that Exafer failed to show diligence, which is dispositive. Appx14-15. Nor does Exafer mention that it had already been granted leave to re-open discovery and serve its supplemental expert reports on damages, disrupting the schedule and prejudicing Microsoft. Appx11-12. Exafer sought a *third* chance but never identified what additional discovery it needed or why it did not pursue such discovery sooner.

**III.A.** Exafer fails to show any abuse of discretion in the district court's threshold rulings on the summary judgment record. First, the court properly excluded testimony by Mr. Martinez, whom Microsoft offered only as a *rebuttal* expert to Mr. Blok. Following Mr. Blok's exclusion, Mr. Martinez had nothing to rebut, and his pretrial testimony as a litigation expert is hearsay.

Second, the court properly declined to consider unidentified documents that Exafer never attached or cited in its summary judgment papers. Exafer does not dispute the district court's finding that "the only document" Exafer identified when opposing summary judgment was a single slide that Exafer cited in a footnote without explaining its relevance. Appx33; Appx3541 n.5; Appx4075.

**III.B.** Given Exafer's failure to develop or preserve any admissible damages theory or evidence, Microsoft is entitled to summary judgment. Exafer does not dispute the district court's findings regarding its repeated discovery failures on damages, which satisfied Microsoft's initial burden on summary judgment. Appx24-27. Exafer then failed to meet its own burden to come forward with evidence to support any non-speculative, non-zero damages award. Instead, the only relevant evidence was Microsoft's unrebutted fact testimony that the accused network infrastructure components had *no* financial benefit to Microsoft. *Supra* 8; *infra* 69-70.

Exafer's argument that Section 284 "does not permit summary judgment based on alleged lack of evidence of a reasonable royalty" (Br. 31) ignores that "[t]he statute does not require an award of damages if none are proven." *TecSec*, 978 F.3d at 1291. Exafer's cited cases involved properly preserved, unexcluded evidence supporting a non-zero royalty, which does not exist here. The sole damages theory that Exafer advanced was "incorrect as a matter of law," which is "enough to justify summary judgment" here. *Apple*, 757 F.3d at 1330 n.9.

## STANDARD OF REVIEW

***Exclusion of expert testimony.*** This Court applies regional circuit law to procedural issues not unique to patent law, including "decisions to exclude expert testimony" on damages. *MLC Intell. Prop., LLC v. Micron Tech., Inc.*, 10 F.4th 1358, 1367 (Fed. Cir. 2021).

The Fifth Circuit "review[s] a district court's decision to admit or exclude expert testimony for an abuse of discretion, accepting that district courts enjoy wide latitude in determining the admissibility of expert testimony, and the discretion of the trial judge and his or her decision will not be disturbed on appeal *unless manifestly erroneous*." *Kim v. Am. Honda Motor Co.*, 86 F.4th 150, 158-59 (5th Cir. 2023) (quotations omitted; emphasis in original). "Manifest error is one that is plain and indisputable, and that amounts to a complete disregard of the controlling law." *Id.* (quotations omitted).

***Reopening discovery.*** A scheduling order may be modified "only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "Whether or not the requirements of Rule 16(b) have been met is a procedural issue not pertaining to the patent laws, and therefore

regional circuit law applies to this question." *Slip Track Sys., Inc. v. Metal-Lite, Inc.*, 304 F.3d 1256, 1270 (Fed. Cir. 2002).

The Fifth Circuit reviews decisions under Rule 16(b), including on reopening discovery, for abuse of discretion. *Marathon Fin. Ins., Inc., RRG v. Ford Motor Co.*, 591 F.3d 458, 469-70 (5th Cir. 2009). "The standard of review poses a high bar; a district court's discretion in discovery matters will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse," and the appellate "court will disregard a district court's discovery error unless that error affected the substantial rights of the parties." *Id.* (quotations omitted).

***Summary judgment.*** This Court "review[s] a grant of summary judgment in accordance with the law of the regional circuit, here the Fifth Circuit." *Profectus Tech. LLC v. Huawei Techs. Co.*, 823 F.3d 1375, 1379 (Fed. Cir. 2016). "An appeal of a summary judgment presenting evidentiary issues raises two levels of inquiry." *Balboa Cap. Corp. v. Okoji Home Visits MHT, L.L.C.*, 111 F.4th 536, 546 (5th Cir. 2024). "First, [the Court] review[s] the district court's evidentiary rulings for abuse of discretion." *Id.* "Once the summary judgment

record is defined, [the Court] review[s] de novo whether summary judgment was appropriately granted." *Id.* (quotation omitted).

"Although on summary judgment the record is reviewed de novo, th[e] [Court] will not consider evidence or arguments that were not presented to the district court for its consideration in ruling on the motion." *Am. Fam. Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 896 (5th Cir. 2013) (alterations omitted). The Court "may affirm the district court's decision on any basis presented to the district court." *Id.*

## ARGUMENT

### I. The district court properly excluded Mr. Blok's opinions.

Exafer fails to show any abuse of discretion in the exclusion of Mr. Blok's damages opinions, let alone "[m]anifest error" that is "plain and indisputable." *Kim*, 86 F.4th at 158-59. As this Court has recognized, "the applicable abuse of discretion standard of review [for exclusions of damages expert testimony] is highly deferential." *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 523 (Fed. Cir. 2012).

#### A. Longstanding precedent precludes a patentee from including noninfringing products in its royalty base.

In *Enplas*, this Court reaffirmed the fundamental principle that "[*t*]*he royalty base for reasonable royalty damages cannot include*

*activities that do not constitute patent infringement*, as patent damages are limited to those 'adequate to compensate for the infringement.'" 909 F.3d at 411 (quoting *AstraZeneca*, 782 F.3d at 1343) (quoting 35 U.S.C. § 284)). A patentee, therefore, cannot base reasonable royalties on sales of unaccused products, "because acts that do not constitute patent infringement cannot provide a proper basis for recovery of damages under section 284." *Enplas*, 909 F.3d at 411-12.

This principle prevents a patent owner from expanding its patent monopoly to unpatented products by confining the royalty base to products within the scope of the patent grant, regardless of other real-world considerations. In *Enplas*, for example, the patentee argued that under a "pragmatic approach" to the hypothetical negotiation, the licensee would "agree to a premium 'freedom to operate' license" on unaccused products "to avoid the need to test and negotiate licenses for additional or future potentially infringing [products]." *Id*. at 409. Similarly, in *AstraZeneca*, rational licensees would pay royalties to market a generic drug during the regulatory pediatric exclusivity period following patent expiry. 782 F.3d at 1341-42. In both cases, it did not matter whether real-world licensees would pay such royalties. What

mattered was that the royalty base included sales that did not infringe—and thus impermissibly extended beyond "damages adequate to compensate for the infringement." 35 U.S.C. § 284.

That the defendant gains a *profit* from using the invention—e.g., by selling more unpatented goods and services—does not change the result. Characterizing profits from sales of unpatented products as an "incremental benefit" of the patented invention, as Exafer does here (Br. 37), misapplies the law of apportionment. The Supreme Court addressed this directly in *Aro II*, holding that "[t]he rules prohibiting extension of the patent monopoly to unpatented elements are not so readily circumvented." 377 U.S. at 508. As the Court explained, Congress limited the remedy in Section 284 to "damages." *Id.* at 504-05. Before 1946, the statute's precursor allowed patentees to recover both "damages" *and* the infringer's "profits." *Id.* at 505 (quotation omitted). In 1946, however, "the statute was changed … to eliminate the recovery of profits as such and allow recovery of damages only." *Id.* Thus, patentees now receive only "compensation for the pecuniary loss … suffered *from the infringement*, without regard to the question

whether the defendant has gained or lost by his unlawful acts." *Id.* at 507 (quotation omitted).

As recognized in *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 136 (1969), "there are established limits which the patentee must not exceed in employing the leverage of his patent"—including attempts to restrict "another article of commerce not within the scope of his patent monopoly." Patentees thus cannot "garner as royalties a percentage share of the licensee's receipts from sales of [unpatented] products," which would "extend the monopoly of his patent to derive a benefit not attributable to use of the patent's teachings." *Id.* "The patentee is protected as to his invention, but may not use his patent rights to exact tribute for other articles" or "extend … economic control to unpatented products." *United States v. Loew's, Inc.*, 371 U.S. 38, 46 (1962). Because there is "no basis in the statutory monopoly" to require "a percentage royalty on merchandise not employing the discovery which the claims of the patent define," "conditioning the grant of patent licenses upon the payment of royalties on unpatented products" constitutes "patent misuse." *Zenith*, 395 U.S. at 140.

### B. Mr. Blok's damages opinions are inadmissible because his proposed royalty base consists entirely of unpatented VM product revenue.

The district court's exclusion of Mr. Blok's damages opinions is a straightforward application of well-settled precedent. Mr. Blok explicitly "calculated reasonable royalty damages owed to Exafer for Microsoft's alleged infringement of the Patents-in-Suit" by "applying a per-hour royalty rate … to the total number of [VM] hours Microsoft sold." Appx1212; Appx1268. It is undisputed "VMs are not themselves accused of infringing." Appx3255. Mr. Blok's opinions therefore violate precedent that "[t]he royalty base for reasonable royalty damages cannot include activities that do not constitute patent infringement." *AstraZeneca*, 782 F.3d at 1343.

Exafer now falsely claims that "Mr. Blok's royalty was not a traditional running royalty with a royalty base of revenue of sales and royalty rate." Br. 22. This argument is patently wrong: Mr. Blok admitted he used the entire market value of Microsoft's unaccused VM revenues "as the starting point for [his] damages calculation." Appx3022 (302:19-22). He divided Microsoft's total VM revenues by the average VM price per-hour to arrive at an estimate of total VM hours

sold. Appx1243-1244; Appx3025 (328:16-330:17). Mr. Blok then applied "a per-hour royalty rate" to "the total number of [VM] hours Microsoft sold." Appx1212; Appx1268. Exafer and Mr. Blok repeatedly admitted below that Mr. Blok used "VM hours as the royalty base." Appx3255; *accord* Appx3255; Appx3259; Appx3261; Appx3264-3265; Appx3025 (328:13-14) (Blok). Reversing Mr. Blok's math, he simply applied a royalty rate to Microsoft's total VM revenues.

Regardless, in *Enplas*, this Court rejected a similar attempt to recharacterize the use of unaccused sales as a royalty base. "Regardless of the characterization by [the patentee]'s expert, damages calculated by applying a royalty to sales of non-accused [products] cannot support a jury's verdict on damages." 909 F.3d at 412. Likewise, Mr. Blok's application of a royalty rate to sales of unaccused VMs renders his opinions incorrect as a matter of law and inadmissible under Rule 702.

### C. Exafer fails to show any legal error or abuse of discretion in the exclusion of Mr. Blok's opinions.

#### 1. Exafer's cited caselaw is consistent with the district court's decision, which did not categorically exclude *any* consideration of noninfringing activity but only barred Exafer from relying on such activity for its royalty *base*.

Exafer's principal challenge to the district court's exclusion order rests on a false premise. Exafer repeatedly argues the court entered an "overbroad ruling that consideration of *any* non-infringing product or activities is prohibited in a reasonable royalty analysis." Br. 39; *see also* Br. 33, 40. The court did no such thing. It simply "took issue with the fact that Mr. Blok uses VM hours as his *royalty base* for calculating damages, which is impermissible because Microsoft's VMs are not, and do not contain any, accused technology." Appx8. In contrast, the court allowed Dr. Congdon to discuss unaccused VMs "because he does not opine that VMs should serve as the royalty base." Appx6; Appx9-10.

Thus, Exafer's argument that "no categorical bar exists prohibiting the consideration of non-infringing activities" (Br. 40) is a strawman because the district court imposed no such "categorical bar." For the same reasons, Exafer's cited cases (Br. 40-43), which did not

address using noninfringing product revenues as the royalty base, are either inapposite or affirmatively *support* exclusion.

***First***, Exafer cites *Brumfield, Trustee for Ascent Trust v. IBG LLC*, 97 F.4th 854 (Fed. Cir. 2024), which supports exclusion. The case *affirmed* the exclusion of expert testimony on damages based on acts that did not constitute infringement under Section 271(a) and *reaffirmed AstraZeneca*'s holding that "the royalty base for reasonable royalty damages cannot include activities that do not constitute patent infringement." *Id*. at 880, 876. Ignoring *Brumfield*'s holding, Exafer relies on dicta about when patentees might seek "to increase th[e] amount [of damages] by pointing to foreign conduct that is not itself infringing"—i.e., if the patentee "show[s] why that foreign conduct increases the value of the domestic infringement itself … while respecting the apportionment limit that excludes values beyond that of practicing the patent." *Id*. at 877.

Nothing in *Brumfield* suggests that the *royalty base* can include sales of noninfringing products. On the contrary, the case affirmatively says it cannot. *Id*. at 876. The Court excluded the patentee's expert testimony that included foreign sales in the royalty base because the

general, domestic research-and-development activities she relied on were not acts of infringement under Section 271(a). *Id.* at 880. The Court made clear that "the focus of § 284" is on "the infringement" and excluded the patentee's expert "at least because [she] did not focus on 'the infringement.' *That failure called for* [] *exclusion*." *Id.* at 878-79.

*Brumfield* also cites this Court's precedent in *Carnegie Mellon University v. Marvell Technology Group, Ltd.*, which holds that patentees may seek damages for foreign activities involving a product "when and only when" an underlying act of infringement "*for that unit* (e.g., sale) is proved to be present." 807 F.3d 1283, 1306 (Fed. Cir. 2015). That is because Section 271(a) "states a clear definition of what conduct Congress intended to reach—making *or* using *or* selling in the United States *or* importing into the United States, even if one or more of those activities also occur abroad." *Id.* Thus, a patentee may only include foreign unit sales in its royalty base *if those units already infringed* by some domestic act for those specific units (e.g., the units sold abroad were made or used in the United States).

Accordingly, this Court's precedent on damages associated with foreign sales does not help Exafer because it is undisputed that VMs do

not infringe under *any* of Section 271(a)'s listed activities. Because Exafer's royalty base "does not start from an act of 'infringement,'" it is analogous to the royalty base excluded in *Brumfield*. 97 F.4th at 880.

***Second***, Exafer cites *Apple*, 757 F.3d 1286, and *i4i Ltd. Partnership v. Microsoft Corp.*, 598 F.3d 831 (Fed. Cir. 2010), for the proposition that experts may use unaccused products "as a benchmark to value the patented invention." Br. 41. That is irrelevant. The problem with Mr. Blok's opinions is not that he used an unaccused product as a benchmark (e.g., as an input to determine a royalty *rate*), but that his royalty *base* consists entirely of noninfringing product revenues. *Cf. i4i*, 598 F.3d at 853 (expert "chose an appropriate 'benchmark'" to calculate "a baseline royalty *rate*," which he applied to a royalty *base* of "products *actually used in an infringing manner*").

***Third***, in a footnote (Br. 41 n.7), Exafer cites this Court's precedent on convoyed sales in *Rite-Hite Corp. v. Kelley Co. Inc.*, 56 F.3d 1538 (Fed. Cir. 1995), which supports exclusion. In the lost-profits context, the Court vacated a damages award because the patentee "failed to establish that [unpatented products] were eligible to be included in the damage computation." *Id.* at 1549. The Court further

explained that convoyed sales are a specific application of "the entire market value rule [] in situations in which the patented and unpatented components were analogous to a single functioning unit." *Id.* at 1550.

Here, however, no one contends VMs are convoyed sales for the accused functionalities, which are minor parts of the infrastructure in a different service line. Mr. Blok admitted "the entire market value rule does not apply" (Appx1254 ¶107), and he did "not quantif[y]" any "potentially" convoyed sales (Appx2825 ¶82). Exafer thus waived any convoyed sales argument. Likewise, on appeal, Exafer's "argument raised in a footnote … [i]s waived as not properly raised." *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006) (citation omitted). As in *Enplas*, "the convoyed sales doctrine does not apply here, nor does [Exafer] rely on it." 909 F.3d at 412 n.3.

***Fourth***, Exafer cites cases recognizing that "a hypothetical license may appropriately be based on consideration of the 'costs and availability of non-infringing alternatives' and the potential infringer's 'cost savings.'" Br. 41. But that is irrelevant because it is undisputed Mr. Blok *did not use* a cost approach. Indeed, one of Exafer's main

arguments is that the district court should have granted leave to serve a *third* expert report to calculate alleged "cost savings." Br. 46-50.

That parties may value patented technology by its incremental cost savings compared to noninfringing alternatives has nothing to do with whether Exafer can apply a proposed royalty rate to a royalty base of unaccused product revenues. As before the district court, "Exafer cite[s] no case holding that the royalty base could entirely consist of unaccused technology." Appx5; Appx9. Exafer thus fails to show any abuse of discretion in the district court's exclusion order.

**2. Exafer's reliance on allegedly "real-life" considerations lacks any factual or legal basis.**

Apart from citing inapposite cases, Exafer repeatedly argues that its noninfringing royalty base reflects "real-life" or "real-world" negotiating positions. Br. 44; *see also* Br. 35-37. Exafer's argument lacks merit, both factually and legally.

Factually, there is nothing "real" about Mr. Blok's rationale for using VM hours as a royalty base. There is no evidence anyone—Exafer, Microsoft or anyone else—ever entered or considered a *per-hour* running royalty for *any* patent license. All Microsoft's witnesses consistently testified Microsoft was *not* able to add VMs or increase VM

hours as a result of implementing the accused technology. Appx1497 (103:9-24), Appx1475 (187:19-188:2), Appx1492 (71:7-10) (Maltz); Appx3051-3052 (140:15-141:25) (Firestone); Appx3058-3059 (110:21-111:20, 166:7-17) (Bansal).

Nonetheless, Mr. Blok relied on Dr. Congdon, who ignored the above testimony and opined that "Microsoft *was* able to provide approximately [redacted] more virtual machine hours than it would have been able to prior to implementing VFP Fastpath in Azure." Appx899. This statement was untrue, and Dr. Congdon was forced to recant and acknowledge in his supplemental report that "Microsoft did *not* add more virtual machines to its servers." Appx1356. Instead of offering an alternative model based on cost savings, Dr. Congdon and Mr. Blok doubled down on the VM royalty-base model, speculating that since Microsoft "could" have increased VMs and VM hours (even though it did not), whatever Microsoft actually did "must" be even more valuable and profitable—an altered, speculative, and unsupported set of facts made up to suit their conclusions. *Id.*; Appx1368; Appx1370.

Those opinions do not reflect "real-life" or "real-world" facts (Br. 44) but are admittedly counterfactual. Far from supporting Mr. Blok's

testimony, Exafer's reliance on fabricated VM-hour increases that never actually happened is an independent basis to exclude. *See Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996) (expert testimony "not based upon the facts in the record but on altered facts and speculation designed to bolster [party's] position" properly excluded); *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014) (evidence "must be reliable and tangible, not conjectural or speculative"); Appx837-839.

Legally, even if Mr. Blok's VM royalty base *did* reflect "real-world" facts (it does not), it would still violate the prohibition against including unaccused product sales in the royalty base, which contains no exception for "real-world" negotiations. It did not matter whether the parties in *Enplas* would have included unaccused products in a freedom-to-operate license. 909 F.3d at 409. Nor did it matter whether the parties in *AstraZeneca* would have negotiated payments during the regulatory exclusivity period. 782 F.3d at 1341-42. The problem in both cases was not that the damages theories deviated from "real-world" facts but that they reached beyond damages "adequate to compensate for the infringement." 35 U.S.C. § 284.

### 3. Exafer's argument that unaccused VMs are "used with" VNets is irrelevant and does not permit damages based on unaccused products.

The notion that VMs purportedly "use[]" data flowing through the accused accelerated networking components (Br. 38) is irrelevant. For starters, Dr. Congdon and Mr. Blok did not attempt to apportion between VM hours that "use" the accused accelerated networking infrastructure and those that do not. Both testified that actual "use" was irrelevant to their opinions. Appx1546-1547 (268:4-10, 268:25-269:10, 273:10-274:2) (Congdon); Appx1555 (286:4-20) (Blok).

Instead, Exafer's damages model simply assumes, contrary to all facts, that 100% of VMs are sending and receiving data using the accused VNet technology 100% of the time, since the networking-infrastructure capability "is there, regardless of it's used." Appx1547 (273:23-274:2) (Congdon). Yet the record was undisputed that only "a very small fraction" of Azure VMs are network-intensive, and some may never send network traffic at all. Appx1459 (214:3-8) (Bansal); Appx1483 (187:3-7) (Maltz). Moreover, many classes of VMs do not support *accelerated* networking; on others, it is disabled by default. *See*

Appx1905-1907. Exafer's experts made no attempt to model damages based on VMs' "use" of the accused networking functionalities.

Regardless, alleging that an unpatented product is "used with" a patented product still does not permit including the unpatented product in the royalty *base*. In any multi-component product or multi-product platform, components are "used with" other components and products that operate together as a functional unit, yet a patentee must still "in every case … apportion … damages between the patented feature and the unpatented features." *Garretson v. Clark,* 111 U.S. 120, 121 (1884). Allowing such a royalty would "be at war with virtually every policy consideration" in patent law. *Aro II*, 377 U.S. at 510.

It is no answer that the accused functionalities are not sold as standalone products and, therefore, do not generate their own revenue." Br. 38. That does not allow Exafer to base royalties on unpatented (and substantially more lucrative) products. There is no "necessity-based exception" to patent damages precedent, which applies equally when defendants do "not track the prices, revenues, or profits associated with individual [accused] components." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 69-70 (Fed. Cir. 2012).

In apportionment cases, for example, this Court has rejected the excuse that the defendant "does not actually charge separately for" the accused functionality as a basis to include unpatented technology in the royalty base. *VirnetX*, 767 F.3d at 1329. Similarly, a patentee "cannot simply hide behind [a defendant]'s sales model to avoid the task of apportionment." *Id.* Using VM hours as a royalty base is even more egregious than most violations of the entire market value rule, because here Exafer does not allege *any* component of VMs infringes. The flaw in Mr. Blok's royalty base thus goes beyond failing to apportion—his base includes *only* noninfringing technology.

Exafer tries to minimize that glaring flaw by falsely arguing "[t]he accused system was generally the Azure platform," yet Exafer admits in the same sentence that the only allegedly infringing components are "VFP Fastpath and SmartNIC," which are components of virtual networks, not VMs. Br. 38. Microsoft Azure is not a product, but a cloud computing platform with over 200 different products and services. Appx1836; Appx1452 (116:4-11) (Bansal); Appx914 (Congdon). And Dr. Congdon opined throughout his infringement report, for every asserted

claim, that "Microsoft's Azure *network*" infringed, not the Azure platform generally. *E.g.*, Appx968 ¶301; Appx1133 ¶488.

Thus, to the extent Exafer is trying to argue that the Azure platform generally is the smallest saleable unit (it is not), that still does not allow Exafer to use *unaccused* product revenues in its royalty base. Even when a product *is* the smallest saleable patent-practicing unit, a patentee cannot include unpatented components in the royalty base without proving the "entire market value rule" applies. *VirnetX*, 767 F.3d at 1326-28. Here, Mr. Blok admitted "the entire market value rule does not apply." Appx3023-3024 (318:23-319:6); Appx1254 ¶107. Thus, Exafer has no basis to include unpatented *components* in its royalty base under any theory, let alone a different, unpatented *product*.

#### 4. Exafer's objection that the district court "entirely" excluded Mr. Blok's opinions is both waived and fails to show abuse of discretion.

Exafer's cursory argument that the district court erred in excluding Mr. Blok's opinions "entirely" (Br. 45-46) is both waived and fails to show any abuse of discretion.

Exafer's objections to the magistrate judge's exclusion order did not properly raise this issue but included only a footnote under the

signature block noting that the order "excluded Mr. Blok's entire report." Appx3267 n.2. Likewise, Exafer's opposition before the magistrate judge only argued against "entirely" excluding Mr. Blok's opinions in a footnote. Appx1922 n.3. Both this Court and the Fifth Circuit have repeatedly held that "arguments raised in footnotes are not preserved"—the issue is thus waived. *SmithKline Beecham*, 439 F.3d at 1320; *accord Arbuckle Mountain Ranch of Texas, Inc. v. Chesapeake Energy Corp.*, 810 F.3d 335, 339 n.4 (5th Cir. 2016) ("Arguments subordinated in a footnote are insufficiently addressed in the body of the brief, and thus are waived.") (quotations omitted).

Even if Exafer had not waived the argument (it has), Exafer makes no attempt to meet its burden under Federal Rule of Evidence 702 to demonstrate admissibility of any portion of Mr. Blok's opinions. It cites 85 paragraphs of Mr. Blok's report with the conclusory statement that they discuss the *Georgia-Pacific* factors and "provid[e] qualified economic opinions regarding, e.g., profitability." Br. 45 (citing Appx1226-1267 (¶¶43-122, 128-134)). These include six paragraphs in Mr. Blok's report on how the parties allegedly would split the

"incremental revenues and profits" attributable to the patents-in-suit. Br. 45 (citing Appx1265-1267 ¶¶128-134).[3]

Exafer's conclusory citation fails to meet its burden to show reversible error and demonstrate admissibility, and it is unclear what specifically Exafer contends is admissible, or why. Mr. Blok admitted he did "not provide an alternative damage[s] opinion on a different assessment of benefits, other than providing additional VM hours and [VMs]." Appx1557 (345:14-24). And his *Georgia-Pacific* analysis, apart from summarizing legal standards and basic assumptions like dates (Appx1226-1231), either discounts each factor as immaterial (Factors 1-7, 12, 14) or advances the same VM-hour royalty base theory that was excluded (Factors 8-11, 13, 15). Appx1236-1263; *see also*, *e.g.*, Appx1242-1245 ¶¶85-91 (Factor 8: describing profitability and commercial success of VMs, *not* the accused functionality); Appx1251-1252 ¶¶103-04 (Factor 11: quantifying Microsoft's "use of the invention" in terms of VM hours, *not* the accused functionality).

[3] Exafer states—incorrectly—that "[t]hese other opinions by Mr. Blok were never addressed (or challenged) on the merits." Br. 45. But Microsoft *did* challenge Exafer's profit-splitting opinions as arbitrary. Appx839-842. The magistrate judge did not need to reach the issue because Mr. Blok's improper royalty base was dispositive. Appx6.

Similarly, the only "incremental revenues and profits" described in Mr. Blok's report are for unaccused VM hours, and the sole purpose of his proposed profit split is to calculate a royalty on VM hours. Appx1264 ¶127; Appx1267-1268 ¶¶135-36. Thus, Mr. Blok's profit-splitting opinions depend entirely on his excluded royalty-base theory.

This Court has repeatedly affirmed orders excluding damages experts from testifying entirely where, as here, the expert's damages calculation was unreliable. *See ePlus*, 700 F.3d at 523 (affirming total exclusion of expert's testimony where his "analytical method was flawed and unreliable," which "preclude[d] [the patentee] from presenting any evidence of damages at trial"); *Info-Hold, Inc. v. Muzak LLC*, 783 F.3d 1365, 1371 (Fed. Cir. 2015) (affirming total exclusion of expert's testimony where his "damages analysis was [] deficient"); *MicroStrategy Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344, 1353, 1356 (Fed. Cir. 2005) (affirming total exclusion of expert report "due to the use of a flawed methodology" and holding district court "was well within its discretion to prevent [expert] from testifying").

Having found Mr. Blok's analysis flawed and unreliable, the district court had "ample justification" to exclude Mr. Blok's testimony

entirely, and "the applicable abuse of discretion standard of review is highly deferential." *See ePlus*, 700 F.3d at 523.[4] The exclusion of Mr. Blok's opinions should thus be affirmed.

## II. Exafer fails to show any abuse of discretion in the district court's denial of Exafer's motion to reopen discovery.

The Court should also affirm the district court's denial of Exafer's motion to reopen discovery, which sought a *third* chance to present a damages theory. Exafer does not even address the test for modifying case schedules to reopen discovery, which requires "good cause." Fed. R. Civ. P. 16(b)(4). The Fifth Circuit considers four factors: "(1) the explanation for the failure to timely [comply with the scheduling order]; (2) the importance of the [modification]; (3) potential prejudice in allowing the [modification]; and (4) the availability of a continuance to cure such prejudice." Appx13 (alterations original) (quoting *Springboards to Educ., Inc. v. Houston Indep. Sch. Dist.*, 912 F.3d 805,

[4] Exafer's cited cases (Br. 46) are inapposite, with case-specific facts not present here. *See Omega Patents, LLC v. CalAmp Corp.,* 13 F.4th 1361, 1375 (Fed. Cir. 2021) (misinterpreting mandate); *Certain Underwriters at Lloyd's, London v. Axon Pressure Prods. Inc.*, 951 F.3d 248, 269 (5th Cir. 2020) (no reasons stated for court's decision).

819 (5th Cir. 2019)). The district court found against Exafer on all four factors. Appx13-16. Exafer fails to show any abuse of discretion.

### A. Exafer does not challenge the discretionary finding that it failed to explain any inability to comply with the scheduling order, which alone is dispositive.

First, the district court found "Exafer does not provide any explanation for why it failed to timely comply with the scheduling order." Appx14. Under Fifth Circuit law, a party seeking to modify a schedule must "show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 348 (5th Cir. 2008). Exafer provided *no* explanation below for failing to meet the original deadlines and still provides no explanation on appeal.

As the district court found, Exafer's desire to present another damages theory now does not explain its failure: "Parties regularly fully develop alternative damages theories within the Court's discovery deadlines." Appx14. Mr. Blok considered a cost-savings model, but deliberately chose not to quantify it: "I identified *two* benefits … and I have quantified *one* of those benefits." Appx3486 (190:25-191:2). The district court thus found "Exafer has failed to show that it was diligent

during discovery or unable to comply with the Court's deadlines." Appx15. Exafer does not challenge this finding, which suffices to affirm. *Fahim*, 551 F.3d at 348.

Exafer vaguely suggests "[a] *second* opportunity made sense" given its "reasonable, good-faith attempt" to estimate damages. Br. 47. But Exafer *already received* a "second opportunity." Appx11-12. Given the choice of having its supplemental reports stricken without disrupting the case schedule or being allowed to keep those reports but requiring the court to vacate the trial date, reopen expert discovery, and modify the remaining deadlines, Exafer *chose* the latter. Appx4436. Exafer's motion sought a *third* chance.

Nor did Exafer's first two attempts reflect "a reasonable, good-faith attempt." Br. 47. Rather than advancing a cost-savings model after conceding the accused technology did *not* lead to increased VM hours, Exafer maintained its legally and factually invalid theory as a "conservative" proxy for whatever infrastructure efficiencies or cost savings might have occurred. Appx1370 ¶12. Exafer did so despite its theory contradicting long-standing precedent (*supra* 25-30), *knowing*

the theory was factually inaccurate, and never disclosing the theory or any related facts during discovery (*supra* 9-10).

When a patentee "fail[s] to present an alternative case for damages, a district court does not abuse its discretion by declining to give that plaintiff multiple chances to correct deficiencies in its arguments or the record." *Promega*, 875 F.3d at 666. Here, Exafer contends it already had "abundant" evidence for its purported cost-savings theory and could have presented it by reusing "much of the same evidence." Br. 49, 47. Exafer admittedly *chose* not to use the evidence it had or present the alternative theory it considered.

Purported "inherent difficulties in estimating damages" (Br. 46) do not help Exafer. Even when calculating damages is "exceedingly difficult and error-prone," there is no "necessity-based exception" to this Court's precedents. *LaserDynamics*, 694 F.3d at 70. Nor was there any difficulty here: The law excluding unaccused products from the royalty base is long-established, well-settled, and easily applied.

Exafer cites *Rembrandt Social Media, LP v. Facebook, Inc.*, 561 F. App'x 909 (Fed. Cir. 2014), but that case involved the more complex question of calculating "value apportioned to the invention." *Id.* at 912.

On that question, the Court noted "a *single* opportunity" is not "clearly or always enough" (Exafer here had *two* opportunities) but concluded "*a district court may well decide that it is*" and *denied* review of an exclusion order. *Id.* at 913. *Rembrandt* thus supports the district court's exercise of discretion in denying Exafer's motion.

### B. The district court did not abuse its discretion in rejecting Exafer's vague allegations of "importance" for unspecified discovery requests.

Second, the district court found Exafer "fails to highlight why this additional discovery is important." Appx15. As the court found—and Exafer does not dispute—Exafer's motion did "not specify what it seeks to recover from Microsoft that has not already been handed over during the original discovery period." *Id.* Instead, Exafer argued "most of what it needs is already in the record, which only weakens Exafer's argument." *Id.* Exafer now invokes the "critical importance" of more discovery (Br. 48) but still never articulates *what* it seeks to discover that it lacked or *why* it matters. Again, Exafer contends it already had "abundant" evidence (Br. 49) that it *chose* not to use.

Even if Exafer could demonstrate importance (it cannot), that would not change the outcome. In *Fahim*, the Fifth Circuit agreed this

"second factor … weighed in [the movant]'s favor because the requested amendment was clearly important" but still affirmed the district court "because [the movant] offered no explanation for [its] untimely request" under the first factor. 551 F.3d at 348. "A district court has broad discretion to preserve the integrity and purpose of the pretrial order," which is not outweighed by importance. *Id.* (quotation omitted); *accord Barrett v. Atl. Richfield Co.*, 95 F.3d 375, 381-82 (5th Cir. 1996) ("the claimed importance … merely underscores the need for Plaintiffs to have complied with the court's deadlines"); *Geiserman v. MacDonald*, 893 F.2d 787, 792 (5th Cir. 1990) (importance "cannot singularly override … scheduling orders").

### C. The district court did not abuse its discretion in finding Exafer's request prejudicial.

Third, the district court found "there would be prejudice against Microsoft if the Court were to re-open fact and expert discovery and reset the trial." Appx16. Exafer does not seriously challenge this finding but merely states "Microsoft would have had ample time to consider [Exafer's] additional [damages] analysis." Br. 47. As the district court found, however, Microsoft "would still be forced to invest time and resources into a new round of discovery and motions practice."

Appx16. Exafer does not (and cannot) dispute this finding, which demonstrates prejudice. *See Rios v. City of Conroe*, 674 F. App'x 366, 372 (5th Cir. 2016) (plaintiff-appellant "has not presented any evidence that the district court abused its discretion when it found … amendment would prejudice [defendant-appellee] in the form of additional discovery expenses, attorney's fees, and time").

### D. The district court did not abuse its discretion in finding a continuance would increase prejudice.

Fourth, the district court found "a continuance will not cure any prejudice" but "would *cause* prejudice to Microsoft." Appx16. Exafer shows no abuse of discretion. Exafer merely declares, without explanation, that "a continuance would have sufficed to cure any prejudice." Br. 49. Exafer is wrong, and the district court correctly recognized that another continuance would increase Microsoft's litigation costs. *See Rios*, 674 F. App'x at 372 (affirming that prejudice from litigation cost "could not be cured by a continuance").

Exafer relies on *EEOC v. General Dynamics Corp.*, 999 F.2d 113 (5th Cir. 1993), to argue the court should have granted a continuance instead of the "sanction" of excluding Mr. Blok's testimony (Br. 48-50), but the court did *not* exclude Mr. Blok as a "sanction"—it excluded him

because Exafer failed to meet its burden under Rule 702. Likewise, the court did not deny Exafer's motion to reopen discovery as a "sanction" but because Exafer failed to show good cause under Rule 16(b)(4). That these rulings left Exafer without a damages case was a problem of Exafer's own making: In two rounds of damages reports, Exafer *chose* to preserve *only* its legally invalid VM royalty-base theory.

Exafer thus fails to show any abuse of discretion in the district court's findings that "all four factors weigh against a showing of good cause to re-open discovery and reset the trial date." Appx17.

## III. The district court correctly granted summary judgment.

Exafer fails to show reversible error in the entry of summary judgment. Under Fifth Circuit law, Exafer's "appeal of a summary judgment presenting evidentiary issues raises two levels of inquiry." *Balboa Cap.*, 111 F.4th at 546. The Court first "review[s] the district court's evidentiary rulings for abuse of discretion." *Id.* "Once the summary judgment record is defined," the Court "review[s] de novo whether summary judgment was appropriately granted." *Id.*

Exafer fails to show any abuse of discretion in the district court's evidentiary rulings (*infra*, Part A), and the resulting record raises no

triable dispute. Exafer failed to come forward with evidence from which a jury could award a non-speculative, non-zero reasonable royalty. It did not identify or attach *any* alleged evidence of cost savings or other financial benefit in its summary judgment opposition, and Microsoft's witnesses provided unrebutted testimony that the accused network infrastructure components had *no* financial value—supporting a zero-damages award. *Infra*, Part B.

### A. Exafer fails to show any abuse of discretion in the district court's evidentiary rulings.

#### 1. The district court did not abuse its discretion in finding that Mr. Martinez's rebuttal expert opinions are inadmissible hearsay.

Exafer challenges the district court's evidentiary ruling that testimony by Microsoft's rebuttal damages expert, Mr. Martinez, is inadmissible hearsay. Br. 56-60. Below, Exafer relied only on Federal Rule of Evidence 801(d)(2)(C) for authorized admissions as the sole hearsay exclusion. Appx3545. The district court rejected Exafer's argument under Fifth Circuit law (Appx31-32), which provides that "circumstances where the testimony of an expert witness can serve as an adverse admission against the presenting party … must be narrowly

construed." *Fox v. Taylor Diving & Salvage Co.*, 694 F.2d 1349, 1355 (5th Cir. 1983). Exafer shows no abuse of discretion.

***First***, Exafer invokes a new hearsay exception on appeal, arguing Mr. Martinez's statements are exempted under Rule 804(b)(6) because of Microsoft's "chicanery" in "pull[ing] Mr. Martinez as a witness and call[ing] him unavailable" in its reply. Br. 57. This argument is baseless. Rule 804(b)(6) applies when a party "*wrongfully* caused—or acquiesced in *wrongfully* causing—the declarant's unavailability." Fed. R. Evid. 804(b)(6). The rule is reserved for "*abhorrent* behavior which strikes at the heart of the system of justice itself." *Id.*, Advisory Committee Notes (quotation omitted). Microsoft did not cause Mr. Martinez's unavailability, let alone through "abhorrent behavior" threatening "the system of justice itself."

Exafer ignores that Mr. Martinez did not offer an affirmative damages opinion, analysis, or calculation. Microsoft only offered Mr. Martinez as a *rebuttal* expert to Mr. Blok. Appx30; Appx4381; Appx4106 ("rebuttal" report); Appx4162 (supplemental "rebuttal" report); Appx4112 ¶7 ("I have been retained … to review, evaluate, and rebut the analyses and opinions … of Justin Blok…."); Appx4422-4423

(8:18-9:17) (Martinez did not "provide[] any opinion in this case regarding the amount of reasonable royalties," did not "determine what Microsoft would have agreed to pay in a hypothetical negotiation," "only provide[d] criticisms of Mr. Blok's analysis and opinions," and "was just asked to rebut the analysis of Mr. Blok").

After Mr. Blok's exclusion, Mr. Martinez had nothing to rebut, and his pretrial opinions were moot. *See* Fed. R. Civ. P. 26, Advisory Committee Notes (rebuttal testimony "used solely to contradict or rebut the testimony that may be presented by another party's expert"); *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1222 (5th Cir. 1995), *overruled on other grounds*, *Rachid v. Jack in The Box, Inc.*, 376 F.3d 305, 312 n.10 (5th Cir. 2004) (excluding rebuttal expert where opponent "elected not to call" its expert, so there was "nothing to rebut").

Exafer knew Mr. Martinez was only a rebuttal witness to Mr. Blok and knew his testimony was hearsay, as shown by its reliance on Rule 801(d)(2)(C). Appx3545. Exafer cannot accuse Microsoft of misconduct simply because Microsoft only offered Mr. Martinez as a rebuttal witness whose testimony was mooted by the exclusion of Mr. Blok.

***Second***, the district court correctly found Rule 801(d)(2)(C) does not apply to litigation experts. Appx31-32. Exafer relies on *Fox*, which warned that experts' adoptive admissions "must be narrowly construed." 694 F.2d at 1355. *Fox* did not decide admissibility under Rule 801(d)(2)(C) but instead dealt with a narrow estoppel issue caused by a party's failure to correct expert testimony that contradicted an element of its claim. 694 F.2d at 1354-56. Exafer also cites *Collins v. Wayne Corp.*, which involved an investigative agent hired "to report his conclusions" directly to a party *before* litigation—not a litigation expert under Rule 26(b). 621 F.2d 777, 780-82 (5th Cir. 1980).

Exafer ignores more recent precedent *rejecting* the notion that Rule 801(d)(2)(C) applies to litigation experts. In *HTC Corp. v. Telefonaktiebolaget LM Ericsson*, the Fifth Circuit recognized that "expert witnesses are supposed to testify impartially," and because "an expert witness is not subject to the control of the party opponent …, the expert witness cannot be deemed an agent." 12 F.4th 476, 489-90 (5th Cir. 2021) (quotation omitted). Likewise, Mr. Martinez was an expert witness disclosed under Rule 26(b)—not an agent under Microsoft's control—so Rule 801(d)(2)(C) does not apply.

**CONFIDENTIAL MATERIAL OMITTED**

***Third***, Exafer argues the district court failed to consider whether Mr. Martinez's testimony was admissible as an adopted admission under Federal Rule of Evidence 801(d)(2)(B), based vaguely on "the totality of the circumstances" because "Microsoft's pre-trial *Daubert* motion [] *expressly adopted* Mr. Martinez's opinion." Br. 59. Exafer similarly argues Microsoft is "judicially estopped" from disputing admissibility based on its *Daubert* motion. Br. 62. These arguments are both waived (Exafer never raised them below) and meritless. Microsoft's *Daubert* motion never even *mentions* Mr. Martinez, nor cites his report. Appx824-845. The motion sought only to exclude Mr. Blok's opinions, not admit Mr. Martinez's opinions.

Contrary to Exafer's arguments, Microsoft's motion and Mr. Martinez did *not* cite Networking Services revenues as an alternative royalty base or "measure of a reasonable royalty." Br. 60. Nor did Mr. Martinez ever opine that "the accused technology contributed [redacted]" of this revenue, as Exafer incorrectly argues. Br. 62; *accord* Br. 27, 59. He cited documents attributing [redacted] of Networking Services revenues *to SDN* (Software Defined Networking), which is an entire category of Networking Services offerings that includes multiple other products,

not just VNets, and certainly not just VFP or "the accused technologies."[5] Appx4173 ¶23 n.47. Microsoft cited these total Networking Services revenues to illustrate how *Mr. Blok* failed to use "the smallest saleable patent-practicing unit" and ignored Networking Services revenues "in favor of the much larger unpatented Virtual Machine revenues that drastically inflate damages." Appx843; *accord* Appx3012; Appx4173-4174 ¶¶22-24. Mr. Martinez's opinions are in a section titled "*Rebuttal and Critique of Mr. Blok's* Supplemental Opinions" (Appx4171), which criticized Mr. Blok's failure to conduct a proper analysis of the patented technology's value "or Lack Thereof" (Appx4172)—without offering any alternative damages theory.

If anyone is estopped, it is Exafer, whose arguments on appeal contradict the positions it took below. In opposing Microsoft's *Daubert* motion, Exafer argued that Microsoft's citation of Networking Services revenues was "[b]ased solely on *attorney argument* … *without* any expert testimony." Appx1912 (first emphasis in original). Exafer then filed its own *Daubert* motion arguing that Mr. Martinez's alleged

[5] The accused Fastpath and SmartNIC technologies are sub-components of VFP, which itself is just one component of VNets.

"opinions regarding Networking services revenue … should be excluded" (Appx4457) and are "unsupported and unreliable" (Appx4473). Exafer cannot move to exclude Mr. Martinez, then complain he is no longer a witness. *Cf. Key Pharms. v. Hercon Labs. Corp.*, 161 F.3d 709, 715 (Fed. Cir. 1998) (this Court "look[s] with extreme disfavor" on appellants disputing their own positions).

Exafer also contradicts its counsel's characterizations of Mr. Martinez's opinions. Mr. Martinez repeatedly agreed with Exafer's counsel that he was not offering "any opinion in this case regarding the amount of reasonable royalties." Appx4422 (8:18-23); *accord* Appx4423-4424 (9:13-17, 13:9-14). Exafer's counsel also pointed to Mr. Martinez's opinion that the accused technology has no financial benefit "at all" (Appx4125 ¶42), which counsel characterized as an opinion that the accused technology has no "financial benefit to Microsoft *at all, whatsoever, none, zip*" (Appx4425 (122:1-18)).

Thus, apart from Exafer's failure to show abuse of discretion, its characterization of Mr. Martinez's opinions confirms that any alleged error would be harmless because those opinions *support* a "zero royalty" on summary judgment. *Apple*, 757 F.3d at 1328.

### 2. The district court did not misapply Rule 56(c) or abuse its discretion by disregarding unspecified documents Exafer did not cite in its opposition.

Exafer also argues incorrectly that the district court misapplied Fifth Circuit precedent regarding the presentation of evidence under Rule 56. Br. 59. Exafer vaguely refers to "financial documents" and Rule 30(b)(6) testimony underlying Mr. Martinez's report. Br. 60-62.

As to Dr. Maltz's Rule 30(b)(6) testimony, the district court *did* consider all testimony that Exafer attached below. Appx29-30. Exafer does not identify any testimony that the court failed to consider.

As to alleged "financial documents," Exafer identified no such documents in opposing summary judgment and cannot show any abuse of discretion for not considering them. The district court found—and Exafer does not dispute—that "the *only* document that Exafer identified and attached to its response" was a single "slide presentation." Appx33. Exafer cited a single page of this one document in a footnote with no explanation (Appx3541 n.5; Appx4075) and attached it to an attorney declaration identifying it only by Bates number (Appx3561 ¶6). Exafer did *not* cite or attach any documents underlying Mr. Martinez's report, nor did it point the court to anywhere in the record where they could be

found. The only materials Exafer cited in its opposition are in the range of Appx3560 to Appx4372. All other materials cited in Exafer's brief, including any documents cited by Mr. Martinez, are outside the summary judgment record, and the district court could not have abused its discretion by not considering them.

Exafer cites *Lee v. Offshore Logistical & Transport, LLC,* 859 F.3d 353, 355 (5th Cir. 2017) for the proposition that although "the substance or content" of evidence must be admissible, "the material may be presented in a form that would not, in itself, be admissible at trial." Br. 59-60. According to Exafer, *Lee* mandates that a district court—*sua sponte*—"*must* consider whether the contents of the evidence may be presented in admissible form at trial." *Id.* (emphases altered). Not so.

First, *Lee* simply recognizes that courts "*may* consider" the content or substance of inadmissible materials, making clear that doing so is discretionary. 859 F.3d at 355. Second, *Lee* recognizes a court may do so "where *the party submitting the evidence show*[*s*] that it will be possible to put the information … into an admissible form" and "explain[s] the admissible form that is anticipated." *Id.* (citations omitted). "The burden is on *the proponent* to show that the material is

admissible as presented or to explain the admissible form that is anticipated." *Id.* (citing Fed. R. Civ. P. 56—Advisory Committee Notes). In distinguishing *Lee*, the Fifth Circuit has held that a "district court d[oes] *not* err by failing to determine *sua sponte* whether [evidence] was capable of admission in a different form," where the appellant "never previously suggested alternate ways by which the [evidence] might be admitted at trial." *Balboa Cap*., 111 F.4th at 547.

As in *Balboa*, Exafer failed to meet its burden. It never identified any specific documents, never argued it would present those documents in admissible form, never identified how it anticipated doing so, never identified a sponsoring witness, and never made any other showing that would allow the district court to consider them. The court noted that "[t]hroughout its brief, Exafer refers to 'Microsoft's internal documents,' 'technical and financial documents,' 'contemporaneous documents,' 'Microsoft's documents,' and 'documents that Microsoft produced,'" but only "identified and attached" *one* document. Appx33. Any other "unspecified documents" cannot raise a triable dispute. *Id.*

"The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in

which that evidence supports his or her claim. Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citation omitted). The Fifth Circuit "will not consider evidence or arguments that were not presented to the district court for its consideration in ruling on [a summary judgment] motion." *Am. Fam. Life*, 714 F.3d at 896. "Materials not presented to the district court for consideration of a motion for summary judgment are *never* properly before the reviewing court on appeal from the judgment granting the motion." *Munoz v. Int'l All. of Theatrical Stage Emps. & Moving Picture Mach. Operators of U.S. & Canada*, 563 F.2d 205, 209 (5th Cir. 1977). Exafer thus cannot rely on documents or testimony it did not present or identify in admissible form in opposing summary judgment.

### B. Exafer's conduct resulted in a record devoid of damages evidence, warranting summary judgment.

Under the record that Exafer presented, summary judgment of zero damages was proper. Federal Rule of Civil Procedure 56(a) requires that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." The movant's burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). There is "no … requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323.

If the movant meets its initial burden, the burden shifts to the nonmoving party "of producing in turn evidence that would support a jury verdict"—"the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986).

"In patent cases, the burden of proving damages falls on the patentee, and the patentee must show his damages by evidence." *Promega*, 875 F.3d at 660 (cleaned up). "Damages must not be left to conjecture by the jury"—they "must be proved, and not guessed at." *Id.* (quotation omitted). Here, Microsoft met its burden of showing the absence of evidence supporting a jury verdict of non-zero damages by pointing to the absence of any damages evidence in Exafer's Rule 26

disclosures, interrogatory response, and 30(b)(6) testimony, and Exafer failed to come forward with evidence to "raise[] a factual issue regarding whether it is due any non-zero royalty." *Apple*, 757 F.3d at 1328.

#### 1. Microsoft met its initial burden by pointing to Exafer's failure to preserve any damages evidence or theory during discovery.

Exafer's appeal rests on the mischaracterization that "Microsoft's motion for summary judgment of absence of remedy was based solely on the argument that because Mr. Blok's testimony was excluded, Exafer lacked non-speculative evidence to prove the amount of damages." Br. 52. That is false. Microsoft's motion acknowledged "there is no legal requirement to rely on expert testimony to prove damages in every case." Appx3418. Likewise, the district court made clear it was "not granting summary judgment based … on the exclusion of Mr. Blok." Appx33-34. Instead, Microsoft argued—and the district court found—that Microsoft met its burden by pointing to Exafer's "failure to disclose any other damages evidence or theories to Microsoft during discovery." Appx26-27; Appx3419-3422; Appx3425-3429.

As the district court found (Appx24-27), Exafer (i) never identified damages evidence in initial disclosures (Appx3443); (ii) never identified

damages evidence in interrogatory responses (Appx3439); (iii) and never identified damages evidence in corporate testimony (Appx3456-3457 (135:23-139:8)). *Supra* 9-10. Exafer does not dispute or even mention its discovery failures. *See SmithKline*, 439 F.3d at 1319 ("arguments not raised in the opening brief are waived").

The district court did not err in finding that Microsoft met its initial burden by pointing to Exafer's repeated discovery failures to show the absence of evidence supporting Exafer's damages case. *See MLC*, 10 F.4th at 1372 (rejecting patentee's "argument that it need not disclose factual underpinnings and evidence underlying its damages theory prior to expert discovery"); *MicroStrategy*, 429 F.3d at 1356 ("The district court also acted within its discretion in excluding MicroStrategy's non-expert damages theories for failure to supplement discovery interrogatories.").

#### 2. Exafer failed to come forward with evidence that would support a non-zero damages award.

Because Microsoft met its initial burden showing the absence of evidence, the burden shifted to Exafer to "produc[e] in turn evidence that would support a jury verdict" of non-zero damages. *Anderson*, 477 U.S. at 256-57; *Apple*, 757 F.3d at 1328. The only evidence Exafer

presented is cited in Part E of its statement of the case. Br. 26-28. As Exafer concedes, "the extent of admissible evidence for Exafer's opposition and reasonable royalty was severely limited." Br. 26. As shown below, Exafer fails to show that this "severely limited" evidence could support *any* damages award. If anything, Microsoft's unrebutted testimony confirms that summary judgment was proper because the patented technology had *no* financial benefit to Microsoft.

***Dr. Congdon's technical opinions.*** First, Exafer cites Dr. Congdon's speculation that the accused technology saved CPU cycles. Br. 26. But Exafer cites no testimony by Dr. Congdon that could support *any* quantifiable value—"cost savings" or otherwise—for that alleged technical benefit. Nor does Exafer dispute the district court's finding that "Dr. Congdon has admitted that he is not qualified to opine on a proper damages theory." Appx29. In Dr. Congdon's words: "My job, again, was to show infringement, *not to do the financial or the damages team's job*, which was to come up with a number of that. *That's not my area of expertise*." Appx4402 (299:4-7); *accord* Appx4395 (118:16-20) ("[I]t's not my responsibility to come with the specific damages number…."); Appx4400 (237:8-12) ("[T]he damages team, the

financial experts are the ones responsible for creating a damages case. I'm just providing technical background….").

Thus, Dr. Congdon disclaimed any opinion on alleged financial benefits, admitting he was not qualified to opine on them.

***Dr. Maltz's 30(b)(6) testimony.*** Exafer cites similar testimony by Dr. Maltz on CPU-cycle savings (Br. 26-27) but does not address the district court's finding that "Exafer has not identified anything in Dr. Maltz's testimony that would save a jury from pure speculation as to what Microsoft's alleged cost savings are." Appx30. Dr. Maltz's only relevant testimony was that the accused technology "*doesn't* have a financial benefit to Microsoft" and may "actually [have] a financial *cost*." Appx4407 (168:14-18); Appx4409 (173:11-16); *see also* Appx4408 (169:7-11) (accused technology is "not proven to have a financial benefit to Microsoft"). Microsoft's other technical witness, Mr. Firestone, corroborated Dr. Maltz's testimony that the accused technology has no "direct financial benefit" and "did not reduce the cost" to Microsoft. Appx4414-4417 (44:22-45:4, 141:6-25).

Thus, while Microsoft bore no burden to produce evidence *negating* Exafer's damages (*Celotex*, 477 U.S. at 325), Exafer's

argument that "there was *no evidence* that this benefit had zero value" (Br. 53) is false—Microsoft produced unrebutted evidence that the accused technology provided no financial benefit, which "supports a zero royalty award." *Apple*, 757 F.3d at 1328.

***Mr. Martinez's rebuttal opinions.*** Exafer relies on Mr. Martinez's opinions (Br. 27-28, Br. 58-63), but as discussed (*supra* 54-60), (i) the district court properly excluded Mr. Martinez's opinions as hearsay (Appx32); (ii) Exafer itself argued against their admissibility (Appx4457; Appx4473); (iii) Exafer did not identify or attach any alleged documents or testimony underlying Mr. Martinez's opinions or explain how it would present them in admissible form; and (iv) even if admitted, Mr. Martinez's testimony would support summary judgment because, in Exafer's words, his opinion was that the patented technology had *no* value "to Microsoft *at all*, *whatsoever, none, zip*" (Appx4425 (122:1-18)).

***Dr. Olivier's technical opinions.*** Lastly, Exafer cites testimony by Microsoft's technical expert, Dr. Olivier. Br. 28. But Exafer overstates the cited testimony, which merely acknowledges what an unidentified "document says" or speculates that he "would *imagine* [Microsoft] would *like to*" increase VMs. Appx4207-4209. Exafer does

not allege that this testimony reflects "cost savings" or any other financial benefit, and it does not.

Exafer thus failed to raise any triable question on damages, even apart from its complete failure to disclose any non-expert evidence during discovery. Summary judgment was therefore proper.

#### 3. Section 284 does not preclude summary judgment when, as here, the patentee fails to preserve admissible evidence of damages.

Instead of any serious attempt to raise a triable question, Exafer makes the sweeping legal argument that Section 284 "*precludes* dismissing a case on summary judgment based on an alleged lack of evidence to assess a reasonable royalty." Br. 51. Exafer's argument contradicts this Court's precedent, which holds that Section 284 "does not require an award of damages if none are proven that adequately tie a dollar amount to the infringing acts." *TecSec*, 978 F.3d at 1291. This Court has upheld a zero-damages judgment where damages would be "ultimately speculative and insufficiently grounded in evidence." *Id.* at 1292; *accord Devex Corp. v. Gen. Motors Corp.*, 667 F.2d 347, 363 (3d Cir. 1981) (affirming zero damages: "[Section 284] requires the award of a reasonable royalty, but to argue that this requirement exists even in

the absence of any evidence from which a court may derive a reasonable royalty goes beyond the possible meaning of the statute.”).

This Court has recognized two grounds for entering judgment of no damages: (1) “a patent owner may waive its right to a damages award when it deliberately abandons valid theories of recovery in a singular pursuit of an ultimately invalid damages theory” (*TecSec*, 978 F.3d at 1291 (quoting *Promega*, 875 F.3d at 666)); and (2) “there can be an award of no damages where ‘none were proven’” (*id.* (quoting *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 509-10 (Fed. Cir. 1990)). Both apply here: (1) despite multiple opportunities, Exafer disclosed *no* alternative to its VM-hour royalty base theory during fact or expert discovery (*supra* 9-15); and (2) Exafer identified *no* admissible evidence sufficient to support any jury verdict of damages (*supra* 18-19, 67-71). Either ground suffices to affirm.

Exafer argues these grounds do not apply at summary judgment (Br. 54), but its own caselaw confirms courts may award summary judgment in cases “completely lacking any evidence on which to base a damages award” or where the patentee pursues a theory that is “incorrect as a matter of law,” as Exafer did here. *Apple*, 757 F.3d at

1328, 1330 n.9. To be sure, "a patentee fail[ing] to show that its royalty estimate is correct does not, by itself, justify awarding a royalty of zero at summary judgment" (*id.* at 1328), but the district court here did "not grant[] summary judgment based on Exafer's failure to provide a *correct* royalty estimate" (Appx33-34). Exafer lost because it provided *no royalty estimate* beyond its excluded, legally incorrect expert testimony and preserved *no evidence* for estimating any other. On this record, Exafer raised no "factual issue regarding whether [it] is due any non-zero royalty." Appx27.

Exafer cites case-specific results in *Apple*, *Info-Hold*, and *Dow*, but those cases involved patentees that—unlike Exafer—preserved alternative evidence and theories supporting a reasonable royalty. *See Info-Hold*, 783 F.3d at 1372 (finding "other record evidence which the district court could use as a basis for determining a reasonable royalty," including unchallenged testimony that a royalty rate "would be 1 and 2 percent"); *Apple*, 757 F.3d at 1329-30 (patentee "presented admissible evidence" of damages, including unexcluded testimony on "a $52 million royalty"); *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1268 (Fed. Cir. 2013) (using unexcluded testimony on "comparable license");

*Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1382 n.4 (Fed. Cir. 2003) (record included "license agreement" that "carr[ied] considerable weight in calculating a reasonable royalty rate").

Finally, Exafer offers no basis to *increase* the zero-damages award, even to "nominal" damages. Br. 55-56. Exafer cites *Lindemann*, but that case *affirmed* a grant of nominal damages over the patentee's objections, favorably citing caselaw that awarded "zero damages" and holding Section 284's mandate "does not mean that a patentee who puts on little or no satisfactory evidence of a reasonable royalty can successfully appeal on the ground that the amount awarded by the court is not 'reasonable' and therefore contravenes section 284." *Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co., Harris Press & Shear Div.*, 895 F.2d 1403, 1407 (Fed. Cir. 1990).[6]

[6] In a footnote, Exafer argues it was entitled to pursue "[a] liability finding" even *without* damages. Br. 55 n.15. This argument is waived—both because Exafer raises it in a footnote on appeal, and because Exafer never raised it below. *SmithKline Beecham*, 439 F.3d at 1320. During summary judgment briefing, Exafer never disputed Microsoft's position that summary judgment of no damages was case-dispositive. *See* Appx3429-3431; Appx3538-3557; Appx4377.

## CONCLUSION

Each ruling on appeal resulted from Exafer's strategic decisions—withholding all damages evidence in fact discovery, repeatedly advancing a single invalid theory in expert discovery, and preserving no material disputes on summary judgment. The district court committed no abuse of discretion or reversible error in holding Exafer to its decisions. The judgment should be affirmed.

Respectfully submitted,

/s/ Kelly C. Hunsaker

KELLY C. HUNSAKER
MICHAEL R. RUECKHEIM
MATTHEW R. MCCULLOUGH
Winston & Strawn LLP
255 Shoreline Drive
Redwood City, CA 94065
(650) 858-6500
khunsaker@winston.com
mrueckheim@winston.com
mrmcullough@winston.com

EIMERIC REIG-PLESSIS
Winston & Strawn LLP
101 California Street
San Francisco, CA 94111
(415) 591-6800
ereigplessis@winston.com

*Counsel for Defendant-Appellee Microsoft Corporation*

February 6, 2025

**CERTIFICATE OF COMPLIANCE**
**WITH TYPE-VOLUME LIMITATIONS**

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because the filing has been prepared using a proportionally-spaced typeface and includes 13,998 words.

/s/ Kelly C. Hunsaker
KELLY C. HUNSAKER
*Counsel for Defendant-Appellee*

February 6, 2025

## CERTIFICATE OF CONFIDENTIALITY

The foregoing document contains two unique words (including numbers) marked confidential. This number does not exceed the maximum of 15 words permitted by Fed. Cir. R. 25.1(d)(1)(A).

/s/ Kelly C. Hunsaker
KELLY C. HUNSAKER
*Counsel for Defendant-Appellee*

February 6, 2025