**No. 2024-2296**

**UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**

EXAFER, LTD., *Plaintiff-Appellant*

v.

MICROSOFT CORPORATION, *Defendant-Appellee,*

Appeal from the United States District Court for the Western District of Texas
No. 1:20-CV-131-RP, Judge Robert Pitman

# NON-CONFIDENTIAL REPLY BRIEF OF PLAINTIFF-APPELLANT

March 13, 2025

Ronald M. Daignault*
Scott R. Samay*
Jason S. Charkow*
Elizabeth Bernard*
DAIGNAULT IYER LLP
8229 Boone Boulevard, Ste 450
Vienna, VA 22182
rdaignault@daignaultiyer.com
ssamay@daignaultiyer.com
jcharkow@daignaultiyer.com
ebernard@daignaultiyer.com
(917) 838-9795
**Not admitted in Virginia*

*Counsel for Plaintiff-Appellant Exafer, Ltd.*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 24-2296

**Short Case Caption** Exafer Ltd. v. Microsoft Corp.

**Filing Party/Entity** Exafer Ltd.

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 09/13/2024

Signature: /s/ Ronald M. Daignault

Name: Ronald M. Daignault

**FORM 9. Certificate of Interest**

**Form 9 (p. 2)**
**March 2023**

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Exafer Ltd. | None | None |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Daignault Iyer LLP<br>Chandran B. Iyer | Daignault Iyer LLP<br>Shailendra Maheshwari | Daignault Iyer LLP<br>Oded Burger |
| Daignault Iyer LLP<br>Hoda Rifai-Bashjawish | Daignault Iyer LLP<br>Stephanie R. Mandir | Daignault Iyer LLP<br>Austin Ciuffo |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☑ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| None | | |
| | | |

# TABLE OF CONTENTS

Certificate of Interest ........................................................................................ i

Table of Contents ................................................................................................ ii

Confidential Material Omitted ........................................................................... iii

Table of Authorities ............................................................................................ iv

Table of Abbreviations...................................................................................... viii

INTRODUCTION ..................................................................................................1

ARGUMENT .........................................................................................................2

A. The District Court Erred in Excluding Mr. Blok's Opinions as a Matter of Patent Law. ........................................................................2

1. *Enplas* Does Not Preclude a Reasonable Royalty Based on the Infringement and Use of the Patented Technology. ...................3

2. This Court's Precedent Demonstrates the District Court's Interpretation of *Enplas* is Overbroad. ......................................7

3. Microsoft Wrongly Focuses on What "Actually" Happened Rather than the Hypothetical Negotiation. ...............................11

4. Microsoft's Methodology Confirms That VMs Are a Proper Royalty Base. .........................................................................12

B. The District Court Abused Its Discretion in Excluding Mr. Blok's Opinions Entirely. .............................................................................14

1. Microsoft Misstates Mr. Blok's Royalty Calculation..............14

2. The District Court Had No Basis to Exclude Mr. Blok's Royalty Calculation and *Georgia-Pacific* Analysis. ................16

C. The District Court Abused Its Discretion in Denying Any Supplemental Discovery. .....................................................................19

D. The District Court Erred in Granting Summary Judgment Based on Absence of Remedy.........................................................................22

1. Section 284 Precludes Microsoft's Summary Judgment. .........23

2. Exafer's Non-Zero Royalty Evidence Precludes Summary Judgment. ..........................................................................25

3. The District Court Failed to Consider Admissible Evidence of the Amount of Damages. .........................................................26

a. The District Court Wrongly Declared Mr. Martinez's Opinions "Inadmissible Hearsay." ................................27

b. The District Court Misapplied Rule 56(c)'s Process......29

CONCLUSION.............................................................................................30

Certificate of Compliance.............................................................................32

Certificate of Service ....................................................................................33

**CONFIDENTIAL MATERIAL OMITTED**

Pursuant to Federal Circuit Rule 25.1(e) and the stipulated Protective Order (AppxI-XXXVI), two versions of this brief are being filed with the Court: a confidential version that notes the material marked confidential by Microsoft in the district court proceedings, and a non-confidential version containing appropriate redactions. In the non-confidential version of this brief, pages 12, 15, 16, 26, and 28 omit material describing Microsoft's confidential information.

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aqua Shield v. Inter Pool Cover Team*,
774 F.3d 766 (Fed. Cir. 2014) ....................5, 10, 11

*Arbuckle Mountain Ranch of Texas, Inc. v. Chesapeake Energy Corp.*,
810 F.3d 335 (5th Cir. 2016) ....................17

*Aro Mfg. Co. v. Convertible Top Replacement Co.*,
377 U.S. 476 (1964)....................4, 6

*AstraZeneca AB v. Apotex Corp.*,
782 F.3d 1324 (Fed. Cir. 2015) ....................3, 6, 8

*Brumfield v. IBG LLC*,
97 F.4th 854 (Fed. Cir. 2024) ....................7, 8, 9

*In re C.F. Bean L.L.C.*,
841 F.3d 365 (5th Cir. 2016) ....................20, 21

*Certain Underwriters at Lloyd's v. Axon Pressure Prods.*,
951 F.3d 248 (5th Cir. 2020) ....................17

*Collins v. Wayne Corp.*,
621 F.2d 777 (5th Cir. 1980) ....................27

*Dow Chem. Co. v. Mee Indus.*,
341 F.3d 1370 (Fed. Cir. 2003) ....................23

*EEOC v. Gen. Dynamics Corp.*,
999 F.2d 113 (5th Cir. 1993) ....................22

*Enplas Display Device Corp. v. Seoul Semiconductor Co.*,
909 F.3d 398 (Fed. Cir. 2018) ....................3, 6, 7, 8

*Exmark Mfg. Co. v Briggs & Stratton Power Prods. Grp., LLC*,
879 F.3d 1332 (Fed. Cir. 2018) ....................11

*Finalrod IP v. John Crane, Inc.*,
838 F. App'x 562 (Fed. Cir. 2021) ....................17

*Hanson v. Alpine Valley Ski Area, Inc.*,
718 F.2d 1075 (Fed. Cir. 1983) ....................10

*Hoover Group, Inc. v. Custom Metalcraft, Inc.*,
66 F.3d 299 (Fed. Cir. 1995) ....................8, 9

*HTC Corp. v. Telefonaktiebolaget LM Ericsson*,
12 F.4th 476 (5th Cir. 2021) ....................27

*i4i Ltd. P'ship v. Microsoft Corp.*,
598 F.3d 831 (Fed. Cir. 2010) ....................12, 14, 22

*Interactive Pictures Corp. v. Infinite Pictures, Inc.*,
274 F.3d 1371 (Fed. Cir. 2001) ....................11

*IPA Techs., Inc. v. Microsoft Corp.*,
2024 U.S. Dist. LEXIS 80212 (D. Del. May 2, 2024) ....................21

*Key Pharm. v. Hercon Labs. Corp.*,
161 F.3d 709 (Fed. Cir. 1998) ....................28

*Kim v. Am. Honda Motor Co.*,
86 F.4th 150 (5th Cir. 2023) ....................3

*Lee v. Offshore Logistical and Transp., L.L.C.*,
859 F.3d 353 (5th Cir. 2017) ....................29, 30

*Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co.*,
895 F.2d 1403 (Fed. Cir. 1990) ....................5, 26

*Lucent Techs., Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009) ....................6

*New Hampshire v. Maine*,
532 U.S. 742 (2001)....................28

*Promega Corp. v. Life Techs. Corp.*,
875 F.3d 651 (Fed. Cir. 2017) ....................20, 23

*Rembrandt Soc. Media, LP v. Facebook, Inc.*,
561 F. App'x. 909 (Fed. Cir. 2014) ....................20, 25

*Residents of Gordon Plaza, Inc. v. Cantrell*,
25 F.4th 288 (5th Cir. 2022) ....................26

*Rite-Hite Corp. v. Kelley Co.*,
56 F.3d 1538 (Fed. Cir. 1995) ....................25

*SmithKline Beecham Corp. v. Apotex Corp.*,
439 F.3d 1312 (Fed. Cir. 2006) ....................17

*Sulzer Textil A.G. v. Picanol N.V.*,
358 F.3d 1356 (Fed. Cir. 2004) ....................2

*TecSec, Inc. v. Adobe Inc.*,
978 F.3d 1278 (Fed. Cir. 2020) ....................23, 24

*Vais Arms, Inc. v. Vais*,
383 F.3d 287 (5th Cir. 2004) ....................27

*Warsaw Orthopedic, Inc. v. NuVasive, Inc.*,
778 F.3d 1365 (Fed. Cir. 2015), *vacated on other grounds*, 577 U.S. 1099 (2016)....................9

*WesternGeco LLC v. ION Geophysical Corp.*,
585 U.S. 407 (2018)....................5, 7, 9

*Zenith Radio Corp. v. Hazeltine*,
395 U.S. 100 (1969)....................4, 6

**Statutes**

35 U.S.C. §284 ....................*passim*

**Other Authorities**

FED. R. CIV. P. 30(b)(6)....................13

FED. R. CIV. P. 56(c)(1)(A) ....................29

FED. R. CIV. P. 56(c)(2)....................30

FED. R. CIV. P. 56(e)(1)....................30

FED. R. EVID. 801(d)(2)(A) ........................................................................ 30

FED. R. EVID. 702 ........................................................................ *passim*

FED. R. EVID. 801(d)(2)(B) ........................................................................ 27

FED. R. EVID. 804(b)(6) ........................................................................ 27

# TABLE OF ABBREVIATIONS

| Term | Description |
|---|---|
| ’733 patent | U.S. Patent No. 8,325,733 |
| ’335 patent | U.S. Patent No. 8,971,335 |
| Br. | Exafer’s Opening (Blue) Brief |
| CPU | Central Processing Unit |
| COGS | Costs of Goods Sold |
| Exafer | Plaintiff-Appellant Exafer, Ltd. |
| Microsoft | Defendant-Appellee Microsoft Corporation |
| NIC | Network Interface Card |
| Opp. | Microsoft’s Opposition (Red) Brief |
| SDN | Software Defined Network |
| SOTC | Statement of the Case |
| VFP | Virtual Filtering Platform |
| VM | Virtual Machine |

## INTRODUCTION

In most patent cases, the absence of an infringer's valuation of the patented technology creates challenges in valuing that technology at the hypothetical negotiation. This case, however, is one where an alleged infringer actually *did* value the benefit delivered by the asserted patents. Microsoft knew that adopting the patented technology would result in valuable computer-processing efficiencies. And, in contemporaneous business documents, Microsoft valued those benefits by considering the additional VM hours it could offer because of the increased efficiency. Exafer's expert adopted that real-world methodology, but his opinion was excluded in its *entirety*.

Though virtual machines (VMs) were not accused of infringing, Microsoft's use of the accused hardware/software is technically and economically connected to them—data to/from Microsoft's VMs are processed by an infringing act. This Court's precedent plainly allows for the consideration of causally-connected products. If it did not, there would be no available royalty base for accused products (as here) that are *used but not sold*.

Microsoft ostensibly realizes the overreach of the exclusion. Microsoft now suggests the district court did not prevent consideration of non-accused activities but only prohibited the "royalty base" from including non-accused products. But again, there is no blanket prohibition against using causally-related products. If the opinion

was that limited, there was no basis to exclude the entire report which contained damages calculations (and other opinions) that did *not* use VMs as a base.

This appeal presents significant legal issues regarding §284 and patent damages law. Instead of addressing the core issues here, Microsoft resorts to mudslinging and mischaracterizing the record to paint Exafer as a bad actor. This is a transparent effort to obscure the record showing that Microsoft's *own* engineers valued the infringing use at the time of the hypothetical negotiation in the same way Exafer's expert did. Exafer's damages opinions were entirely consistent with this Court's precedent and the fundamental tenets of damages law. The district court's orders should be reversed, and this case should be remanded for trial.

## ARGUMENT

### A. The District Court Erred in Excluding Mr. Blok's Opinions as a Matter of Patent Law.

Microsoft applies the wrong standard of review. The issue presented is whether the reasonable royalty base can include non-infringing products for the royalty to be "adequate to compensate for the infringement." This issue is unique to §284/patent law, and the Court should review the district court's Rule 702 exclusion *de novo*. *See Sulzer Textil A.G. v. Picanol N.V.*, 358 F.3d 1356, 1363 (Fed. Cir. 2004) ("[W]here a district court rules, as a matter of patent law, that a party is precluded

from introducing evidence, we apply Federal Circuit law and review the district court's ruling *de novo*.").[1]

### 1. *Enplas* Does Not Preclude a Reasonable Royalty Based on the Infringement and Use of the Patented Technology.

Microsoft and the district court advance an overbroad interpretation of *Enplas*. *Enplas* (and *AstraZeneca*) does not stand for a sweeping rule prohibiting a damages theory from consideration of any non-infringing product in the analysis or the royalty base.

In *Enplas*, the patentee accused certain lenses of infringement. *See Enplas Display Device Corp. v. Seoul Semiconductor Co*., 909 F.3d 398, 411-12 (Fed. Cir. 2018). In addition, the patentee included separate and functionally-unrelated lenses in the royalty base that were not accused products. *Id.* These lenses were not linked to infringement in any way, and there was no evidence that the infringer valued its use of the patented invention by the sales of these lenses. The expert simply sought to expand the royalty base so that the infringer would have "freedom to operate." *Id*.

A similar situation was presented in *AstraZeneca*—the patentee sought to add damages after the patent expired. *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1343-44 (Fed. Cir. 2015). In both cases, this Court confronted theories that included

[1] Applying abuse of discretion would not change the result. *See Kim v. Am. Honda Motor Co*., 86 F.4th 150, 158-59 (5th Cir. 2023) ("Manifest error is one that is plain and indisputable, and that amounts to a complete *disregard of the controlling law*.") (citation omitted; emphasis added unless noted).

damages for products unconnected to *any* alleged infringement and outside the bounds of the hypothetical negotiation. In that particularized context, this Court found that non-infringing products could not be in the royalty base because they reached beyond damages "adequate to compensate for *the infringement*." 35 U.S.C. §284. *No* infringing acts provided a *basis* for the recovery sought in those cases.

But neither case addressed the issue raised here. Microsoft's Azure platform implements Exafer's inventions to send data to/from VMs. *See* Br.12-22. That use results in increased computing efficiency (less CPUs are required), which is the *basis* for Exafer's claimed damages. *Id*. Because Microsoft itself valued the benefits obtained from infringement by the incremental VMs the increased efficiency allowed, Exafer's damages expert used that same methodology. That opinion was entirely consistent with core damages principles both the Supreme Court and this Court have articulated and should not have been precluded.

The Supreme Court has stressed the importance of compensating patentees for the benefits attributable to *the infringement*. *Aro Mfg. Co. v. Convertible Top Replacement Co*., 377 U.S. 476, 507 (1964) ("*Aro II*") (damages constitute "compensation for the pecuniary loss [patentee] has suffered from the infringement") (citation omitted); *see also Zenith Radio Corp. v. Hazeltine*, 395 U.S. 100, 136 (1969) (patentee cannot "extend the monopoly of his patent to derive a benefit not attributable to use of the patent's teachings"). The Supreme Court also

cautioned against "conflat[ing] legal injury with the damages arising from that injury." *WesternGeco LLC v. ION Geophysical Corp.*, 585 U.S. 407, 417 (2018).

This Court has thus recognized that, while only infringing acts provide a proper basis for recovery, the measure of that recovery must be adequate to compensate for "the infringement." *See Lindemann Maschinenfabrik GmbH v. Am. Hoist & Derrick Co.,* 895 F.2d 1403, 1406 (Fed. Cir. 1990) (the "fact of damage" is different from "damages," the compensation appropriate for the harm). The foundational principle in calculating damages is that the royalty should be "the value of what was taken—the value of the use of *the patented technology*." *Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 770 (Fed. Cir. 2014) (citation omitted).

The hypothetical negotiation *must* turn on the amount Microsoft would agree to pay to engage in "the infringement" and assess the *incremental* value caused by use of the invention. *See Aqua Shield*, 774 F.3d at 770 ("[A] reasonable royalty is the amount that a person, desiring to manufacture, use, or sell a patented article, as a business proposition, would be willing to pay as a royalty and yet be able to make, use, or sell the patented article, in the market, at a reasonable profit.") (cleaned up). Thus, Microsoft would be willing to pay a royalty up to the increase in profits resulting from the cost savings and/or increased sales attributable to using the patented technology.

In determining this amount, this Court has held that the analysis is fact-

specific, flexible, and designed to encompass real-world considerations. *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324-25 (Fed. Cir. 2009) ("The hypothetical negotiation tries, as best as possible, to recreate the *ex ante* licensing negotiation scenario."). Here, there is no "real-world" consideration more appropriate than Microsoft's contemporaneous business valuation of its use of the infringing technology.

Exafer is not expanding its patent monopoly but is valuing Microsoft's *infringement* by the incremental benefit Microsoft obtained. *Aro II* and *Zenith* are consistent with allowing a royalty calculation and base to include non-infringing products for this valuation—both recognize the patentee is entitled to complete compensation for the infringement and use of the patented technology. At its core, Microsoft's argument—and the district court's adoption of it—confuses the *basis* for damages with the *measure* of damages. More importantly, Microsoft's argument violates fundamental tenets of damages law. *Enplas* and *AstraZeneca* must be interpreted consistent with those tenets.

By statute, a patentee shall be awarded not "less than a reasonable royalty for the use made of the invention by the infringer." 35 U.S.C. §284. Theories reliably valuing the use of the invention—like Exafer's here—should not be prohibited. The lower court's Rule 702 exclusion is erroneous under long-standing patent law.

### 2. This Court's Precedent Demonstrates the District Court's Interpretation of *Enplas* is Overbroad.

Microsoft is wrong when it argues the cases Exafer cited do not address using VM hours/revenue in the royalty base. Opp.31-32. Federal Circuit law allows for consideration of non-infringing activities in calculating a reasonable royalty adequate to compensate for the *infringement*, including in the royalty base.

*First*, Microsoft overlooks the primary holding of *Brumfield v. IBG LLC,* 97 F.4th 854 (Fed. Cir. 2024). On review, this Court clarified the law, and *held* the Supreme Court's framework in *WesternGeco* controls. *Id*. at 875-76 ("We hold, therefore, that the Court's framework in *WesternGeco* . . . must apply to a reasonable-royalty case."). Under this framework, this Court explained that patent damages are intended to award "complete compensation" for the *infringement*. *Id*. at 872-73. And though foreign conduct does not itself infringe, it *may* impact the value of domestic infringement and damages a patentee *may* claim (for example, because the infringement "enables and is needed to enable otherwise-unavailable profits from conduct abroad"). *Id*. at 877.

To show damages, the patentee needed to *tie* the foreign harm (*e.g*., non-infringing sales) to the *actual* infringement (*e.g*., domestic sales). *Id*. at 878 ("The requirement of the foregoing framework that is dispositive here is that 'the infringement'—the focus of §284, as the Court in *WesternGeco* repeatedly stressed—have the needed causal relationship to the foreign conduct for which

recovery is sought.”). Though the patentee’s expert failed to do so in that particular instance, this Court held that patent damages were recoverable for non-infringing foreign sales with a causal connection to the infringement. *Id*. at 877.

To reach this holding, this Court relied upon the “foundational principle” that “the royalty due for patent infringement should be the value of what was taken—the value of the use of *the patented technology*.” *Id*. at 876 (citing *AstraZeneca*, 782 F.3d at 1344) (emphasis in original). In citing *AstraZeneca*, this Court did not rule that the royalty base cannot include non-infringing sales but instead recognized that the hypothetical negotiation must turn on the amount the infringer would agree to pay to engage in the acts constituting “the infringement.” *Brumfield*, 97 F.4th at 877 (citing 35 U.S.C. §284).

Thus, when activity cannot have *any* connection to “infringement” because it is before the patent issued (*Hoover Group, Inc. v. Custom Metalcraft, Inc.*, 66 F.3d 299, 304 (Fed. Cir. 1995)), or after the patent expired (*AstraZeneca*), it is outside the bounds of damages. Likewise, when a product is not tied to the infringement (*Enplas*), it is beyond the scope of damages. But under *Brumfield,* the reasonable royalty *can* consider the value of non-infringing sales to the infringement and *can* include sales of non-infringing products (*e.g*., foreign sales) in the royalty base when there is a causal connection to infringement. Exafer’s royalty “starts from an act of infringement,” (use of the infringing VFP and SmartNIC technology), and ties the

VMs to the infringement because the VMs use the infringing technology to enable increased sales and profits.[2]

*Second*, in *Apple Inc. v. Motorola, Inc*. (which Microsoft does not address), the expert used a non-infringing benchmark to value infringing features. 757 F.3d 1286, 1319 (Fed. Cir. 2014). This Court confirmed "there are multiple reasonable methods for calculating a royalty, and directly estimating the value a consumer places on the infringing feature is not a requirement of admissibility." *Id*.

*Third*, Microsoft attempts to distinguish *RiteHite* by its facts (Opp.34-35), but it remains a long-standing *principle* in patent law that non-infringing products are relevant when sufficiently *related* to an infringing product. *See Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 778 F.3d 1365, 1375 (Fed. Cir. 2015) ("A convoyed sale is a sale of a product that is not patented, but is sufficiently related to the patented product such that the patentee may recover lost profits for lost sales."), *vacated on other grounds*, 577 U.S. 1099 (2016).

*Fourth*, Microsoft tries to sidestep that cost-savings methodologies are widely accepted by claiming that Mr. Blok's theory is not a cost-savings approach because Exafer also sought discovery on a different cost savings approach. Opp.35-36. But

---

[2] Microsoft's reliance on *Carnegie Mellon* is inapposite. Opp.33. *Carnegie Mellon* pre-dated *WesternGeco*. *Brumfield*, 97 F.4th at 877 (*Carnegie Mellon* found "sales abroad were 'strongly enough tied to its domestic infringement as a causation matter to have been part of the hypothetical-negotiation agreement,' before moving on to apply" standards now superseded by *WesternGeco*).

as Exafer made clear in its Blue Brief (*see* Br.41-42.n.8), Mr. Blok spells out cost-savings—Microsoft saves on costs associated with greater CPU usage by using Exafer's more efficient invention. Microsoft documented its planned use of CPU savings to add more VMs. Br.12-22. The next-best non-infringing alternative would be forgoing use of the patented inventions, thus, not freeing-up CPU cycles and forgoing selling more VM hours.

Mr. Blok's theory did *not* apply a "royalty rate to a royalty base of unaccused product revenues" (Opp.36). *See infra*. It measured the increased revenue generated from use of the more-efficient infringing technology and split the related profits between the parties (thus sharing the value of savings associated with using the invention). This type of analysis is wholly appropriate. *See Aqua Shield*, 774 F.3d at 770 ("[T]he core economic question is what the infringer, in a hypothetical pre-infringement negotiation under hypothetical conditions, would have *anticipated* the profit-making potential of use of the patented technology to be, compared to using non-infringing alternatives.") (emphasis in original); *Hanson v. Alpine Valley Ski Area, Inc.,* 718 F.2d 1075, 1077 (Fed. Cir. 1983) (basing reasonable royalty on the portion of annual cost savings attributable to use of the patent).

These cases demonstrate there is no rule against consideration of non-infringing activities in the analysis, including in the royalty base, for valuing the *infringement*, if properly predicated. The district court's exclusion order misapplied

this foundational patent law and is erroneous.

#### 3. Microsoft Wrongly Focuses on What "Actually" Happened Rather than the Hypothetical Negotiation.

It is axiomatic that the hypothetical negotiation "must be hypothesized as of the time infringement began." *Interactive Pictures Corp. v. Infinite Pictures, Inc.,* 274 F.3d 1371, 1384 (Fed. Cir. 2001). "Real-life" evidence of Microsoft's internal business prognostications demonstrated how its *own* engineers valued its use of the infringing technology at the relevant time. *See* Br.12-22. Dr. Congdon and Mr. Blok properly relied on this evidence. *See Aqua Shield*, 774 F.3d at 772 (evidence of "business prognostications" may be used in the hypothetical negotiation analysis); *see also Exmark Mfg. Co. v Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1349 (Fed. Cir. 2018) (use of lawn mower sales as the royalty base reflects the real-world bargaining that occurs). That Microsoft claims it was later unable to increase VM density—supported only by litigation-inspired testimony, *see* Opp.36-37—is not the analysis. Microsoft does not—and cannot—dispute the evidence from its own engineers at the relevant time that valued Microsoft's infringement as Mr. Blok did.

And Microsoft's challenge to the facts underlying Mr. Blok's opinion is not an issue on appeal and is not a basis for a Rule 702 objection. Opp.37-38. Exafer's experts did not rely on "fabricated VM-hour increases that never actually happened." *Id*. Factually, Microsoft's sales of VMs increased *dramatically* after Microsoft

implemented the infringing technology. Appx1244(¶90(Msft CBI [redacted]% increase)). *Pre-litigation*, Microsoft's engineers even anticipated they would increase following Microsoft's infringement. Questions regarding which facts are most relevant or reliable to calculating a reasonable royalty are "for the jury." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 856 (Fed. Cir. 2010).

Microsoft improperly seeks to replace "real-world" evidence at the time of the hypothetical negotiation with what it fed its witnesses later as what purportedly "actually" happened. Opp.36-38. Any suggestion that the "real-world" evidence here is like *Enplas*'s "freedom to operate" or *AstraZeneca*'s "regulatory exclusivity period" is nonsensical. *See id*. Mr. Blok properly relies on contemporaneous evidence of Microsoft's valuation of its *infringement* and does not reach beyond damages "adequate to compensate for the infringement."

**4. Microsoft's Methodology Confirms That VMs Are a Proper Royalty Base.**

Microsoft's next argument again quarrels with impertinent facts. Opp.39-42. Microsoft may dispute the *amount* of use and apportionment, but these are not issues on appeal and ultimately are for the jury. *See i4i*, 598 F.3d at 856. Indeed, Microsoft grossly misstates Mr. Blok's damages calculation, which does not involve "100% of VMs" (Opp.39), but focused on incremental VM hours attributable to Microsoft's infringing use. *See infra*.

Microsoft does not dispute that VMs use the infringing VFP and SmartNIC

technology, including for sending network traffic. *See* Opp.39-42; *see also* Br.10-12. This is significant. In its Rule 702 motion, Microsoft told the district court the proper way to measure damages was by looking at the Azure services that *use* the infringing technology. Appx0827, Appx0831; *see also* Br.43.n.9, 62-63.

Microsoft conceded that revenue from services that *use* the infringing VFP and SmartNIC technology *is* the measure of financial value. As Microsoft's Rule 30(b)(6) deponent testified:

> The way we would evaluate the financial value to Microsoft of VFP would be the revenue we receive for the set of services that we offer, using VFP.

Appx1482(163:9-12). Microsoft argued "Networking Services" revenue was the appropriate measure of damages because these services use the infringing VFP technology. *See* Appx0827, Appx0831, Appx3011-3012. But Microsoft's expert admitted that VMs also use VFP (Appx2296(23:5-24)) just like Networking Services. Microsoft does not challenge this fact. *See* Opp.39-42. Thus, by Microsoft's *own* methodology, VM revenue is a proper measure of the financial value of the infringement to Microsoft.

Microsoft's quibble is that Mr. Blok pointed to the allegedly "substantially more lucrative" VM service rather than Networking Services to which Microsoft

pointed. *See* Opp.40. But both use VFP.[3] Microsoft and Exafer therefore both rely on services using VFP and simply chose different services. The methodology Mr. Blok employed is *Microsoft's* methodology, (*i.e.*, evaluate the financial value by services (VMs) that use the infringing technology) but with different *facts*—an issue for the jury. *See i4i*, 598 F.3d at 856.[4] Exafer is entitled to damages under §284, and Mr. Blok's theory is a reasonable and reliable way of measuring the value of infringing technology without its own revenue stream.

### B. The District Court Abused Its Discretion in Excluding Mr. Blok's Opinions Entirely.

Microsoft argues the district court did not set a categorical bar on the consideration of any non-accused activities in a reasonable royalty analysis. Opp.1-2. But if the district court "simply 'took issue with the fact that Mr. Blok uses VM hours as his *royalty base* for calculating damages'" (Opp.31 (citing Appx8)), then the district court had no basis to exclude Mr. Blok's entire report.

#### 1. Microsoft Misstates Mr. Blok's Royalty Calculation.

Mr. Blok's calculation did not include a traditional royalty base and rate, and Mr. Blok did not *calculate* damages using "VM hours as the royalty base." Opp.2.

---

[3] Microsoft misleadingly suggests that "VNets (a Networking service)" was accused of infringement. *See* Opp.8, 39. VNets, like VMs, were not accused of infringement.

[4] Microsoft never identifies any other "answer" or alternative damages methodology for infringing technology lacking a revenue stream. *See* Opp.39-42.

And despite Microsoft's claim (Opp.29-30), Mr. Blok never applied a royalty rate to total VM revenues. Indeed, Microsoft does not identify any such royalty rate. *See id*. Mr. Blok did not opine that Exafer could recover damages based on Microsoft's total VM revenues. Instead, he quantified the benefits of Microsoft's infringing use by looking to the *incremental* VM hours attributable to that use.

Mr. Blok's damages calculation rests on the undisputed evidence that, at the time of the hypothetical negotiation, Microsoft valued its infringement as the ability to provide more VM hours than it would without implementing the infringing technology. *See* Br.12-22. To calculate this incremental value, Mr. Blok divided VM revenue by the publicly-available price to arrive at total VM hours. Appx1242-1244(¶¶87-89), Appx1258-1259(¶117), Appx1301-1307(Exhibits 6-8). Mr. Blok then calculated the additional "but for" VM hours Microsoft could provide due to the infringing use based on Dr. Congdon's analysis. Appx1259-1260(¶118), Appx1298-1299(Exhibit 4.1). Applying the average price-per-hour and the gross profit margin that Microsoft is estimated to have realized from the incremental VM hours, Mr. Blok determined that Microsoft realized an *incremental* benefit of $[redacted] million attributable to its use of the infringing technology. Appx1259-1260(¶118).

Mr. Blok opined that the parties would have agreed to a 39.5/60.5% profit split in Microsoft's favor during the hypothetical negotiation. Appx1263-1267(¶¶123-135). This profit split results in Mr. Blok's opinion of $[redacted] million in

damages for 2014-2020. Appx1268(¶136). His damages figure was *not calculated* by applying any rate to any base—it was simply a measure of Exafer's share of the incremental profits Microsoft enjoyed. Mr. Blok noted that, when *expressed* relative to total VM hours, his damages figure equated to an effective reasonable royalty of no less than $Msft Internal CBI [redacted] per VM hour. *See id.*

Mr. Blok thus simply *expressed* his damages figure as a fixed royalty per VM-hour by *allocating* that value *across* Microsoft's overall use of VMs. *See* Appx1254(¶108). Exafer consistently made this clear during motion practice, but Microsoft consistently ignores it. *See* Appx3253 ("Mr. Blok's damages analysis does *not* seek to encompass revenue for unaccused products. Instead, Mr. Blok seeks to value the benefits of the infringing technology.") (emphasis in original); Br.22.

### 2. The District Court Had No Basis to Exclude Mr. Blok's Royalty Calculation and *Georgia-Pacific* Analysis.

Microsoft calls Exafer's argument that the district court erred in excluding Mr. Blok's opinions entirely "cursory" (Opp.42) but fails to see the irony. Microsoft provided *no* Rule 702 objections to support wholesale exclusion of Mr. Blok's opinions. Appx0820-0847. The district court provided *no* basis for excluding all of Mr. Blok's opinions. The magistrate judge's opinion discussed only Mr. Blok's per VM-hour rate and expressly declined to reach any other issues. Appx0005-0006. The district court adopted that ruling on the basis that VM hours could not be in the royalty base. Appx0008-0010. Microsoft's objections and the district court's basis

for excluding Mr. Blok's opinions *entirely* are *nonexistent.*

Exafer's appeal is not waived. *First*, a district court cannot simply overreach and grant wholesale exclusion without explanation. This Court cannot properly address such exclusion without an articulated decision. *See Certain Underwriters at Lloyd's v. Axon Pressure Prods*., 951 F.3d 248, 269 (5th Cir. 2020) ("When a district court fails to give reasons for its decision to exclude expert testimony, a reviewing court has no way of knowing whether that gatekeeping responsibility has been adequately performed."). In such circumstances, a remand is appropriate. *See Finalrod IP v. John Crane, Inc*., 838 F. App'x 562, 563 (Fed. Cir. 2021) (citing *Certain Underwriters,* 951 F.3d at 269-70).

*Second*, Exafer's opposition to exclusion of Mr. Blok's entire opinions was not raised solely in a footnote, but throughout its briefing opposing *any* exclusion under Rule 702. *See* Appx1911-1930, Appx3253-3267. Yet, the district court did not provide a basis for *any* exclusion beyond the allegedly-barred "VM-hour as the royalty base," including the exclusion of Mr. Blok's damages calculations and *Georgia-Pacific* analysis. Appx0009. And Microsoft's cases at most address footnotes in opening *appeal* briefs. *See SmithKline Beecham Corp. v. Apotex Cor*p., 439 F.3d 1312, 1320 (Fed. Cir. 2006); *Arbuckle Mountain Ranch of Texas, Inc. v. Chesapeake Energy Corp.,* 810 F.3d 335, 339 n.4 (5th Cir. 2016).

Exafer does not have a burden to preemptively address Rule 702 objections

that were *not* raised below, and Microsoft's opposition demonstrates the reversible error. The objections Microsoft raised did not reach all of Mr. Blok's damages opinions. *See* Appx0820-0847. But now, for the *first time*, Microsoft raises purported objections to Mr. Blok's *Georgia-Pacific* opinion (*see* Opp.43-45). *None* of these were raised below and are waived. Microsoft never argued (and the district court never found) that Mr. Blok's entire analysis advanced the VM-hour royalty base and Microsoft does not cite to *any* such argument below.

A Rule 702 objection is not an automatic exclusion of *all* opinions; Microsoft's cases do not support any such rule. In *ePlus, Inc. v. Lawson Software, Inc.,* there was no indication of a challenge to the bases for total exclusion. *See* 700 F.3d 509, 523 (Fed. Cir. 2012). In *Info-Hold, Inc. v. Muzak LLC,* plaintiff did not appeal the bases for exclusion of the report. 783 F.3d 1365, 1371 (Fed. Cir. 2015). And *MicroStrategy Inc. v. Bus. Objects, S.A*. involved damages analyses on business torts, an entirely different methodology from *Georgia-Pacific*. *See* 429 F.3d 1344, 1353-56 (Fed. Cir. 2005).

The district court made *no* finding that Mr. Blok's *entire* analysis is "flawed and unreliable." Opp.45-46. That the district court rejected Microsoft's motion regarding Dr. Congdon because "he does not opine that VMs should serve as the royalty base" and allowed his opinions (Appx0006), demonstrates the district court did not have a basis to exclude all of Mr. Blok's opinions.

### C. The District Court Abused Its Discretion in Denying Any Supplemental Discovery.

Microsoft rests on the false claim that Exafer's discovery motion sought a "*third* chance to present a damages theory." Opp.46. Microsoft's expert reports relied on off-the-record conversations with Dr. Maltz nearly *sixty* times; the district court found a compelling need for Exafer to depose him about these belated conversations. *See* Appx3542-3543. Exafer supplemented its expert reports following this deposition, *prior* to any Rule 702 objection. This supplement was *not* an opportunity to present a new damages theory but instead accounted for belated fact discovery. *See* Appx4435.

Microsoft is wrong that Exafer did not address "good cause" or the Rule 16 factors. Opp.46; *see also* Br.46-50. Exafer addressed each factor under Fifth Circuit law (Appx3307-3319), including providing an explanation for failing to meet the original deadlines—the need for supplemental discovery arose only after the Rule 702 order excluding Mr. Blok's opinions *entirely*. *See id*. It was *not* simply because Exafer "desire[d] to present another damages theory." Opp.47. Microsoft outright miscites Mr. Blok's testimony. Mr. Blok did *not* "deliberately [choose] not to quantify" another cost-savings model (*id*.)—Mr. Blok confirmed that Microsoft did *not* produce information for the second cost-savings model. Appx3486(191:17-192:2). By rejecting these explanations, the district court failed to consider Exafer's §284 arguments and the complexity of patent damages. Appx0014-0015. A second

opportunity (which Exafer did *not* have) made sense because Exafer made a reasonable, good-faith attempt to estimate damages. *See Rembrandt Soc. Media, LP v. Facebook, Inc.,* 561 F. App'x. 909, 912-913 (Fed. Cir. 2014).[5]

Microsoft's citation to *Promega Corp. v. Life Techs. Corp.,* 875 F.3d 651 (Fed. Cir. 2017) demonstrates the district court's abuse of discretion. *See* Opp.49. *Promega* involved the deliberate failure to present an alternative damages case *at trial*. 875 F.3d at 666 ("When a plaintiff deliberately takes a risk by relying at trial exclusively on a damages theory that ultimately proves unsuccessful … a district court does not abuse its discretion by declining to give that plaintiff multiple chances to correct deficiencies in its arguments or the record."). Exafer did not deliberately take a risk at trial or seek a re-trial—Exafer sought the ability to prepare a theory *for* trial after the district court excluded Microsoft's own valuation methodology and Exafer's damages opinions in their *entirety* without basis.

Importantly, the district court made *no* finding of bad faith. *See* Appx0014-0017; *see also In re C.F. Bean L.L.C.*, 841 F.3d 365, 373 (5th Cir. 2016) (factor weighed in favor of reversal where no finding of bad faith). District courts routinely allow for at least supplemental expert reports when a Rule 702 motion leaves a good-

[5] *Rembrandt* recognized the complexity in the "rules" regarding the royalty base. 561 F. App'x. at 910-913. Notably, *Rembrandt* declined an *interlocutory* review of a Rule 702 order and sent it back to the district court for trial on liability. *Id.*

faith patentee without a damages expert. *See* Br.46.n.10.[6] That the *same* Rule 702 arguments Microsoft prevailed on here *failed* in another district court shows that Exafer made a reasonable, good-faith attempt to estimate damages. *See IPA Techs., Inc. v. Microsoft Corp*., 2024 U.S. Dist. LEXIS 80212, at *3-6 (D. Del. May 2, 2024). Patent damages is not "easily applied" law as Microsoft argues. Opp.49.

And Microsoft does not dispute the wholesale denial of Exafer's request for supplemental discovery led to summary judgment. *See* Opp.50-51. Microsoft cites *Fahim v. Marriott Hotel Services*, but *Fahim* did not involve a ruling that led to dismissal *with prejudice*. 551 F.3d 344, 348 (5th Cir. 2008) (rejecting motion to add new claim to the complaint). And since *Fahim* (and other Microsoft cases, Opp.51-52), the Fifth Circuit has found that a continuance, *not* exclusion, is the "preferred means" of dealing with new evidence after discovery has closed. *See C.F. Bean*, 841 F.3d at 373-74 (finding abuse of discretion in district court's exclusion of expert testimony). Tellingly, Microsoft does not address *C.F. Bean*, which overturned exclusion of a supplemental expert report as untimely because it led to summary judgment. *Id*. ("We have reversed the district court in several other cases where the excluded testimony is similarly essential.").

Microsoft's claims of prejudice from a continuance fail on this record. Exafer

---

[6] Microsoft's citation to *LaserDynamics, Inc. v. Quanta Computer, Inc*., is inapposite (Opp.49)—a new trial on damages was granted in that case. 694 F.3d 51, 69-70 (Fed. Cir. 2012).

disputes this finding by the district court (Br.46-50)—*Microsoft* (not Exafer) twice asked (and received) continuances of the trial date before Exafer's request. *See* Appx0016-0017 (district court incorrectly stating the first trial-date reset was due to "Exafer's technical expert"). And Microsoft requested a 45-day extension in this Court. Microsoft cannot argue that a continuance for Exafer is prejudicial in light of the several continuances it obtained in this case.

The Fifth Circuit views a continuance as the "preferred" option. *EEOC v. Gen. Dynamics Corp.*, 999 F.2d 113, 116 (5th Cir. 1993). The denial of supplemental discovery led to summary judgment based on purported lack of damages evidence—the ultimate *sanction*. The Fifth Circuit has found, absent *bad faith,* such a sanction is unduly harsh. *Gen. Dynamics*, 999 F.2d at 117. No bad faith was found (or alleged) here, and the district court abused its discretion in denying supplemental discovery.

### D. The District Court Erred in Granting Summary Judgment Based on Absence of Remedy.

Microsoft's summary judgment rested on *dicta* from *Apple v. Motorola*. Appx3413 (citing *Apple,* 757 F.3d at 1328). But the *holding* of *Apple* precludes a grant of summary judgment of no remedy unless there is *no* dispute that zero is the *only* reasonable royalty. Microsoft failed to meet that burden. Exafer also presented triable fact issues to defeat summary judgment that the district court failed to consider, warranting reversal and remand.

### 1. Section 284 Precludes Microsoft's Summary Judgment.

Microsoft argues it met its "burden of showing the absence of evidence supporting a jury verdict of non-zero damages by pointing to the absence of any damages evidence," and Exafer failed to come forward with evidence. Opp.65-66. But Exafer *did* come forward with evidence to raise factual issues regarding whether it is due a non-zero royalty (*see infra*). Microsoft's motion failed at the outset because Microsoft misstated its burden.

35 U.S.C. §284 is unequivocal—the district court must award damages in an amount "no less than a reasonable royalty" when infringement is found. *See Dow Chem. Co. v. Mee Indus.,* 341 F.3d 1370, 1381 (Fed. Cir. 2003). Section 284 requires that when damages are not found by a jury, the court *shall* assess them. The only cases Microsoft identifies in the history of this Court that confirmed a zero royalty happened when patentees deliberately abandoned theories or failed to present evidence *at trial* and *waived* the right to damages. *See Promega*, 875 F.3d at 660; *TecSec, Inc. v. Adobe Inc*., 978 F.3d 1278, 1291 (Fed. Cir. 2020).

But at "summary judgment . . . a judge may only award a zero royalty for infringement if there is no genuine issue of material fact that zero is the only reasonable royalty." *Apple,* 757 F.3d at 1328. If a factual issue exists regarding whether the patentee is due *any* non-zero royalty, the district court *must* deny summary judgment. *Id.*; *Info-Hold,* 783 F.3d at 1371-72. At summary judgment, the

royalty *amount*—the issue for the *jury* after finding infringement—cannot be resolved in accordance with this Court's precedent unless the evidence demonstrates that *zero is the only answer*.

Microsoft *never* argued there was no factual issue regarding whether Exafer is due *any* non-zero royalty. Microsoft did not present *any* argument or evidence that Exafer's patented inventions had no value or that the parties would agree to a zero royalty. Microsoft only argued (as it does on appeal) that Exafer allegedly lacked evidence to prove the non-zero *amount* of damages. But this is not a basis for summary judgment. *See Apple,* 757 F.3d at 1329 (reversing summary judgment where defendant failed to meet its burden of showing that the "record is uncontroverted that zero is the only reasonable royalty").

Microsoft cites *no* case upholding summary judgment of no remedy, because a zero royalty is highly *unlikely* to be the answer in a patent case. *See TecSec*, 978 F.3d at 1291. Microsoft relies solely on *dicta* from *Apple* and cases that merely stand for the proposition that if a patentee deliberately takes a risk *at trial*, and *waives* the right to damages, a ruling of zero damages may be proper. Exafer never waived damages, and under this Court's *holding* in *Apple,* a lack of evidence in the record at summary judgment does not support a finding that zero is a reasonable royalty. 757 F.3d at 1328 ("[A] fact finder may award no damages only when the record

supports a zero royalty award.").[7]

**2. Exafer's Non-Zero Royalty Evidence Precludes Summary Judgment.**

Microsoft now argues that the patented technology has no financial benefit (Opp.68-71), but that is not what Microsoft argued below nor what its internal documents revealed as to the value of the infringing VFP Fastpath and SmartNIC. And it is not the standard for the hypothetical negotiation to support a non-zero royalty. *See Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1555 (Fed. Cir. 1995) ("[W]hat an infringer would prefer to pay is not the test for damages.").

Exafer presented evidence that a reasonable royalty had value in this case, and Exafer would have recovered at least *some* damages in the hypothetical negotiation. Br.52-53. The district court acknowledged the extensive evidence of the technical benefit to Microsoft from its use of the infringing technology. Appx0026-0033. To the extent Microsoft now claims it presented "unrebutted evidence" that these technical benefits provided no financial benefit (Opp.69-70) and supports "zero royalty," this argument (which strains credulity) should not be considered. Microsoft *never* argued below that the record supports a zero-royalty award. *See* Appx3413-

[7] Microsoft's claim that Exafer waived its argument that it is entitled to pursue liability without damages is nonsensical (Opp.74.n6)—this was a basis for Exafer's opposition as stated in the first sentence of its brief. *See* Appx3538. Damages should never be case-dispositive and liability should be tried. *See Rembrandt*, 561 F. App'x. at 910-913.

3432, Appx4373-4387.

In fact, the testimony Microsoft cites was attached to its *reply brief*. *See* Appx4373-4391 (attaching Appx4392-4426); *see also Residents of Gordon Plaza, Inc. v. Cantrell*, 25 F.4th 288, 296 (5th Cir. 2022). But even this new argument confirms the fact issues regarding the non-zero value of Microsoft's infringement preclude summary judgment. For example, Dr. Maltz confirmed the value of using the infringing technology:

Msft Internal CBI [redacted]

Appx4407(168:4-13); *see also* Appx4408(170:14-19).[8]

Exafer raised a factual issue regarding whether it is due a non-zero royalty; summary judgment should have been denied. *Apple*, 757 F.3d at 1328 ("[I]f a patentee raises a factual issues regarding whether it is due any non-zero royalty, summary judgment must be denied."); *see also Lindemann*, 895 F.2d at 1407 (affirming award of nominal damages).

**3. The District Court Failed to Consider Admissible Evidence of the Amount of Damages.**

The district court failed to consider admissible evidence on the *amount* of

---

[8] Microsoft also *never* argued that Mr. Martinez's testimony would support summary judgment. *See* Opp.70. Microsoft disclaimed having *any* burden to demonstrate the reasonable royalty is zero. Appx4383.

damages and erred in dismissing this case based on an alleged lack of evidence.

**a. The District Court Wrongly Declared Mr. Martinez's Opinions "Inadmissible Hearsay."**

*First*, Microsoft does not deny that it declared Mr. Martinez an unavailable witness in its reply brief *solely* to defeat Exafer's opposition to its summary judgment motion. Opp.54-56. Such conduct is "abhorrent behavior which strikes at the heart of the system of justice itself." *See* Rule 804(b)(6) Advisory Committee Notes (citing *United States v. Mastrangelo*, 693 F.2d 269, 272-73 (2d Cir. 1982) (misconduct if a witness' silence is procured by defendant's chicanery)).

*Second*, in the Fifth Circuit, expert testimony serves as a party admission "where the expert's statements or reports were prepared for the very case in which admission was sought." *HTC Corp. v. Telefonaktiebolaget LM Ericsson*, 12 F.4th 476, 489-90 (5th Cir. 2021). In *HTC*, the court found Ericsson's expert testimony in *another* case was hearsay. *See id*. But Mr. Martinez "was performing the function that [Microsoft] had employed him to perform" in this case. *Collins v. Wayne Corp.*, 621 F.2d 777, 782 (5th Cir. 1980). Mr. Martinez's statements are not hearsay.

*Third*, Exafer's argument that the district court failed to consider whether Mr. Martinez's statements were admissible under Rule 801(d)(2)(B) is not waived. Opp.58. Microsoft fails to address that it made Mr. Martinez unavailable in its reply brief and the district court deprived Exafer of the opportunity to be heard. *See Vais Arms, Inc. v. Vais*, 383 F.3d 287, 292 (5th Cir. 2004); Appx0057.

Microsoft claimed that "Networking Services" were the relevant measure of a reasonable royalty in its Rule 702 briefing, to convince the district court Mr. Blok's damages theory was inadmissible. *E.g.*, Appx0831 ("Instead, Dr. Maltz testified that to understand the financial value of VFP, Microsoft would look at the revenue generated from the set of Networking Services that use VFP."). Microsoft adopted this position from Mr. Martinez's report served a month earlier. Appx4172-74. Mr. Martinez opined that "the services that should be analyzed to evaluate the value of VFP" (*i.e.*, "ExpressRoute and SDN (VNet & SLB) services") contributed to around [redacted]% of the Networking revenue as of July 2016, and this is the "more relevant measure of the value to Microsoft for using" the infringing technology. *See id.* Microsoft adopted that same position in its briefing. *See* Opp.59.

But instead of addressing its own estoppel or Exafer's caselaw, Microsoft points the finger at Exafer. Opp.59-60. Microsoft, however, was successful and benefited from its arguments, Exafer did not. *See New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001) (a court must have accepted the initial position). Microsoft cannot dispute its successful use of evidence should preclude it from erasing that evidence on appeal. *See Key Pharm. v. Hercon Labs. Corp.*, 161 F.3d 709, 715 (Fed. Cir. 1998) ("The impropriety of asserting a position which the trial court adopts and then complaining about it on appeal should be obvious on its face.").

Microsoft's new, self-serving argument that Mr. Martinez's opinions support

a "zero royalty" demonstrates that summary judgment was erroneous. Opp.60. Exafer never characterized Mr. Martinez's opinions as a "zero royalty" (nor did Mr. Martinez). Indeed, Microsoft cites deposition questioning *before* Mr. Martinez's supplemental report based on "Networking Services."[9] Mr. Martinez's opinions create a triable issue of fact.

**b. The District Court Misapplied Rule 56(c)'s Process.**

A district court must consider whether the *contents* of the evidence on summary judgment *may be* presented in admissible form at trial. *Lee v. Offshore Logistical and Transp., L.L.C.*, 859 F.3d 353, 355-56 (5th Cir. 2017); *see also* Br.59-60. The district court did not consider the Dr. Maltz testimony Exafer identified in Mr. Martinez's report. *Compare*, *e.g.*, Appx0029-0030 (considering testimony about technical benefits) *with* Appx3545-3547 (testimony in Mr. Martinez's report). And Microsoft misconstrues Rule 56(c) (Opp.61-64)—Exafer can oppose by "*citing* to particular parts of materials in the record." FED. R. CIV. P. 56(c)(1)(A). Exafer cited several paragraphs from Mr. Martinez's report that identify Dr. Maltz's testimony and Microsoft's financial information, including copying tables in the *body* of Exafer's opposition brief. *See* Appx3545-3548 (citing, *e.g.*, ¶¶18-24, Appx4172-4174).

---

[9] Opp.60, 70 (citing Appx4422-4425 (June 29, 2023 deposition)). Mr. Martinez's supplemental report is dated September 1, 2023. *See* Appx4161-4184.

And Exafer is not arguing Rule 56(c)'s process is *sua sponte*. Opp.62. Rule 56(c) mandates a multi-step process that Microsoft and the district court failed to follow. If Microsoft believes the materials cited "*cannot be* presented in a form that would be admissible in evidence," it must file an objection. FED. R. CIV. P. 56(c)(2). It did not. Appx4381-4382. And the Rule contemplates that Exafer should have the ability to address Microsoft's objections if the district court finds the objection meritorious. FED. R. CIV. P. 56(e)(1).

Exafer never had this opportunity. Microsoft does not address this nor disputes the evidence Exafer identified is not hearsay. *See* FED. R. EVID. 801(d)(2)(A). There was no required sifting through the record for this evidence—it was cited in Exafer's brief. The district court should have considered whether this evidence could be presented in an admissible form and allowed Exafer to be heard. *See Lee*, 859 F.3d at 354-56 (vacating where "district court did not make a finding that the report could not be placed in admissible form").

**CONCLUSION**

For these reasons, and those in Exafer's Blue Brief, Exafer respectfully requests this Court to reverse the district court's orders, vacate final judgment, and remand the case for trial, pending any required supplemental discovery.

Dated: March 13, 2025

Respectfully submitted,

*/s/ Ronald M. Daignault*
Ronald M. Daignault*
Scott R. Samay*
Jason S. Charkow*
Elizabeth Bernard*
DAIGNAULT IYER LLP
8229 Boone Boulevard, Ste 450
Vienna, VA 22182
rdaignault@daignaultiyer.com
ssamay@daignaultiyer.com
jcharkow@daignaultiyer.com
ebernard@daignaultiyer.com
(917) 838-9795
**Not admitted in Virginia*

*Counsel for Plaintiff-Appellant*

FORM 31. Certificate of Confidential Material

Form 31
July 2020

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF CONFIDENTIAL MATERIAL

**Case Number:** 2024-2296

**Short Case Caption:** Exafer Ltd v. Microsoft Corporatoin

**Instructions:** When computing a confidential word count, Fed. Cir. R. 25.1(d)(1)(C) applies the following exclusions:

- Only count each unique word or number once (repeated uses of the same word do not count more than once).
- For a responsive filing, do not count words marked confidential for the first time in the preceding filing.

The limitations of Fed. Cir. R. 25.1(d)(1) do not apply to appendices; attachments; exhibits; and addenda. *See* Fed. Cir. R. 25.1(d)(1)(D).

The foregoing document contains 48 words number of unique words (including numbers) marked confidential.

☐ This number does not exceed the maximum of 15 words permitted by Fed. Cir. R. 25.1(d)(1)(A).

☐ This number does not exceed the maximum of 50 words permitted by Fed. Cir. R. 25.1(d)(1)(B) for cases under 19 U.S.C. § 1516a or 28 U.S.C. § 1491(b).

☑ This number exceeds the maximum permitted by Federal Circuit Rule 25.1(d)(1), and the filing is accompanied by a motion to waive the confidentiality requirements.

Date: 03/13/2025

Signature: /s/ Ronald M. Daignault

Name: Ronald M. Daignault

## CERTIFICATE OF COMPLIANCE

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because the filing has been prepared using a proportionally spaced typeface and includes 6,996 words, excluding the parts of the brief exempted by the Rules.

Dated: March 13, 2025

*/s/ Ronald M. Daignault*
Ronald M. Daignault

**CERTIFICATE OF SERVICE**

I certify that I electronically filed the foregoing document using the Court's CM/ECF filing system on March 13, 2025, which will send notifications to all counsel registered to receive electronic notices. Counsel of record will also be served via electronic mail.

Dated: March 13, 2024

*/s/ Ronald M. Daignault*
Ronald M. Daignault