# United States Court of Appeals for the Federal Circuit

---

**EXAFER LTD,**
*Plaintiff-Appellant*

**v.**

**MICROSOFT CORPORATION,**
*Defendant-Appellee*

---

2024-2296

---

Appeal from the United States District Court for the Western District of Texas in No. 1:20-cv-00131-RP, Judge Robert L. Pitman.

---

Decided: March 6, 2026

---

ELIZABETH BERNARD, Daignault Iyer LLP, Vienna, VA, argued for plaintiff-appellant. Also represented by RONALD M. DAIGNAULT, JASON SCOTT CHARKOW, SCOTT R. SAMAY.

KELLY CATHERINE HUNSAKER, Winston & Strawn LLP, Redwood City, CA, argued for defendant-appellee. Also represented by MATTHEW R. MCCULLOUGH, MICHAEL RUECKHEIM; EIMERIC REIG-PLESSIS, San Francisco, CA; KATHERINE VIDAL, Washington, DC.

---

Before MOORE, *Chief Judge*, TARANTO and STOLL, *Circuit Judges*.

MOORE, *Chief Judge*.

Exafer Ltd. (Exafer) appeals orders from the United States District Court for the Western District of Texas (1) excluding Exafer's expert report on damages, (2) denying Exafer's motion to reopen fact and expert discovery, and (3) granting Microsoft Corporation's (Microsoft) motion for summary judgment based on absence of a remedy. For the following reasons, we reverse the district court's exclusion of Exafer's damages expert report and vacate the district court's orders denying Exafer's motion to reopen fact and expert discovery and granting summary judgment based on absence of a remedy.

## BACKGROUND

Exafer owns U.S. Patent Nos. 8,325,733 and 8,971,335 (asserted patents), which relate to systems and methods for optimizing communication paths between virtual network devices by controlling data forwarding rules at intelligent switches. '733 patent at 1:16–20, 2:60–67; '335 patent at Abstract, 3:61–4:22. Claim 26 of the '733 patent recites:

> 26. A method for forwarding frames of a flow via a layer 2 forwarder and manipulator (L2FM), the method comprising:
>
> > a. identifying, at the L2FM, one or more first frames of a new flow;
> >
> > b. obtaining forward control information for frames of the new flow, wherein the forward control information includes re-writing of at least one field in an original header of the frames of the new flow, wherein obtaining forward control information is done out of band;

> > c. changing the at least one field in an original header of the frames of the new flow according to the obtained forward control information; and
> >
> > d. forwarding the frames of the new flow according to the forward control information;
> >
> > wherein at least portion of the control information is obtained from a remote-admission-and-information controller (RAIC).

Claim 26 of the ’335 patent recites:

> 26. A method to optimize information delivery between a first node on a first network and a second node on the same or different network, the delivery being made through a networked system in which one or more paths between the first node and the second node are known and, through a Transmitting Device Set with Promiscuous and Re-writing Capabilities (TDSPRC) that receives and retransmits all frames of the first network and the same or different network, and the method comprising:
>
> > collecting topology information related to three or more different Open System Interconnection (OSI) model layers from a plurality of network devices working in networks that belong to different OSI layers;
> >
> > identifying alternate paths, based at least in part on the collected topology information related to three or more different OSI layers, between the first node and the second node;
> >
> > creating a collective virtual network (CVN) including the known paths and the alternate paths, for a particular flow, identify an optimal path in the CVN instead of a known path between the first node and the second node; and

> modifying the data frames of the particular flow to be compatible with a network technology employed by the identified optimal path, wherein the modification is implemented by the TDSPRC and the TDSPRC is not a member in at least one of the networks.

Exafer sued Microsoft, accusing Microsoft's Azure Platform, and specifically the Azure Smart Network Interface Cards (SmartNICs) and Virtual Filtering Platform (VFP) Fastpath technology (Accused Features), of infringing the asserted patents. J.A. 453–505. Exafer served expert reports from its technical expert, Dr. Paul Congdon, and damages expert, Mr. Justin Blok, quantifying the technical and financial benefits of Microsoft's alleged infringement. J.A. 849–1206; J.A. 1208–1309; J.A. 1347–63; J.A. 1365–77.

Microsoft filed a *Daubert* motion to exclude all of Mr. Blok's opinions and Dr. Congdon's opinions related to damages under Federal Rule of Evidence 702. J.A. 820–46. The district court granted Microsoft's motion as to Mr. Blok's opinions because he used unaccused virtual machines (VMs) as the royalty base for his damages estimate, but the district court denied the motion as to Dr. Congdon's opinions. J.A. 7–10; *see also* J.A. 1–6. Exafer then moved to reopen fact and expert discovery to present an alternative damages theory. J.A. 3307–20. The district court denied Exafer's motion. J.A. 11–17. Microsoft moved for summary judgment based on absence of a remedy. J.A. 3413–32. The district court granted Microsoft's motion and entered final judgment against Exafer. J.A. 18–35; J.A. 36. Exafer appeals the district court's orders excluding Mr. Blok's testimony, denying Exafer's motion to reopen fact and expert discovery, and granting Microsoft's motion for summary judgment for absence of a remedy. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

We review issues not unique to patent law under the law of the regional circuit, here, the Fifth Circuit. *Optis Cellular Tech., LLC v. Apple Inc.*, 139 F.4th 1363, 1383 (Fed. Cir. 2025). The Fifth Circuit reviews evidentiary rulings for abuse of discretion. *Reitz v. Woods*, 85 F.4th 780, 787 (5th Cir. 2023). A district court abuses its discretion if its decision is based on an erroneous view of the law or a clearly erroneous assessment of the evidence. *Id.*

Exafer argues the district court erred in excluding Mr. Blok's damages opinions because Exafer's damages theory based on VMs per hour (VM-hours) (i.e., Microsoft's VM pricing rate) reliably reflected how Microsoft valued the Accused Features at the time of the hypothetical negotiation. Exafer Br. 34–44; *see also LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 76 (Fed. Cir. 2012) (explaining that the hypothetical negotiation framework "seeks to discern the value of the patented technology to the parties in the marketplace when infringement began"). In Exafer's view, the district court misapplied *Enplas Display Device Corp. v. Seoul Semiconductor Co.*, 909 F.3d 398 (Fed. Cir. 2018) to improperly create a "categorical bar to considering non-infringing activities in a reasonable royalty analysis." Exafer Br. 30. We agree.

The magistrate judge found *Enplas* "[m]ost closely on point" with the facts of this case because, like the damages expert in *Enplas* who improperly incorporated "activities that do not constitute patent infringement" in the royalty base by including "*potentially* infringing products," Exafer improperly used "VMs—which are not accused of infringement—as the royalty base to determine damages." J.A. 5–6 (citing 909 F.3d at 409–11). The district judge agreed and thus excluded Mr. Blok's testimony, stating that "*Enplas* is directly applicable to this case as it involved the Federal Circuit vacating a damages award that was

based on activities that did not constitute patent infringement." J.A. 9 (citing 909 F.3d at 411).

*Enplas*, however, does not support the district court's overbroad exclusion of Mr. Blok's damages testimony. In *Enplas*, the unaccused, potentially infringing products the plaintiff included in its royalty base had no causal connection to the accused infringing products such that the royalty base improperly "include[d] activities that do not constitute patent infringement." 909 F.3d at 409–12 (quoting *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1343–44 (Fed. Cir. 2015)). Here, however, Microsoft's own documents demonstrate that Mr. Blok's VM-hour royalty base was based on a causal connection between the Accused Features of the Azure Platform and VMs. Dr. Congdon opined that implementation of the Accused Features in the Azure Platform allowed Microsoft to reduce the central processing unit (CPU) usage in Azure servers, freeing up CPU cores to host additional VMs. J.A. 896–900 (¶¶ 113–26). He based this opinion on (1) an internal Microsoft presentation about development and testing of the Accused Features showing VFP Fastpath provided a 50% improvement in VFP CPUs, J.A 1969; and (2) an internal estimate showing Microsoft's use of SmartNIC provided 300% CPU improvement, J.A. 1588–90. Dr. Congdon opined that about one-third of this CPU improvement from SmartNIC was attributable to the asserted patents and that the entire CPU improvement from VFP Fastpath was attributable to the asserted patents. J.A. 899–90 (¶¶ 124–25). Mr. Blok used Dr. Congdon's opinions on how Microsoft perceived the Accused Features' technical benefits within the Azure Platform to value the Accused Features at the time of the hypothetical negotiation in terms of the additional VMs Microsoft would be able to host on its servers. J.A. 1245–60 (¶¶ 92–119). Mr. Blok's methodology for estimating a reasonable royalty did not improperly include activities that do not amount to patent infringement. Instead, Mr. Blok accounted for the causal connection

between the Accused Features and VMs in his valuation of the Accused Features.

Microsoft argues the district court properly relied on *Enplas* in excluding Mr. Blok's damages opinions involving the "application of a royalty rate to sales of unaccused VMs," because it "prevents [Exafer] from expanding its patent monopoly to unpatented products." Microsoft Br. 25–30. *Enplas*, however, does not prescribe the *per se* rule Microsoft attributes to it. A reasonable royalty is not necessarily unreliable under Rule 702 because it uses a royalty base associated with an unaccused product. The facts associated with the alleged infringing activity must be assessed on a case-by-case basis to determine how the parties would value the accused technology during the hypothetical negotiation. *See Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1366 (Fed. Cir. 2008) ("The correct measure of damages is a highly case-specific and fact-specific analysis."), *amended on other grounds by*, 557 F.3d 1377 (Fed. Cir. 2009). For example, damages theories for claims directed to methods of manufacture commonly use the unaccused product made from the claimed method as the royalty base. *Cf. Amgen Inc. v. Hospira, Inc.*, 944 F.3d 1327, 1341–42 (Fed. Cir. 2019) (determining jury's damages award was supported by substantial evidence based on damages expert's testimony estimating a reasonable royalty for a claimed method of manufacture from sales of the unaccused manufactured drug substance).

The facts here illustrate the methodological soundness of Mr. Blok's damages theory based on the technology at issue. The asserted patents are directed to improving efficiency and optimization of data flows within virtual networks. J.A. 895–97 (¶¶ 108–17); '733 patent at Abstract; '335 patent at Abstract. In particular, the '733 patent claims recite systems and methods for forwarding frames of a data flow according to flow-forwarding rules, '733 patent at 3:51–4:29, 13:1–16:54, and the '335 patent claims recite systems and methods of optimizing network traffic

paths across different abstraction layers, ’335 patent at 3:61–4:22, 23:54–26:54. Exafer identified the Accused Features operating within the Azure Platform as infringing the asserted patents. J.A.484–503 (¶¶ 136–79). Dr. Congdon opined that the network optimization and efficiency improvements achieved by the claimed inventions “would translate to, among other benefits, the ability to operate more virtual machines on a single CPU or host (i.e., increasing virtual machine density). Accordingly, by increasing virtual machine density, Microsoft would be able to sell more virtual machines without the need for additional network infrastructure.” J.A. 897 (¶ 117). Mr. Blok’s VM-hour royalty base captured this incremental benefit of being able to offer additional VMs due to operation of the Accused Features within the Azure Platform. J.A. 1255–60 (¶¶ 111–19). Based on (1) Dr. Congdon’s estimate that implementation of the Accused Features would result in Microsoft being able to offer 100% more VM-hours from implementing SmartNIC and 50% more VM-hours from implementing VFP Fastpath; (2) the number of VM-hours Microsoft provided during the relevant time period; and (3) estimated average price per hour and gross profit margin from VMs, Mr. Blok calculated an incremental benefit attributable to the claimed inventions of $534.3 million or $0.0625 per VM-hour during the damages period. J.A. 1256–60 (¶¶ 113–19). This methodology is tethered to the patented invention and does not expand Exafer’s patent monopoly to unpatented technology. Mr. Blok’s testimony therefore satisfies the admissibility standards of Rule 702.

The district court abused its discretion in excluding Mr. Blok’s damages opinions as unreliable under Rule 702 for using VMs as its royalty base. We therefore reverse the district court’s order excluding his expert opinions.

## CONCLUSION

We have considered Microsoft's remaining arguments and find them unpersuasive. We reverse the district court's order excluding Mr. Blok's damages opinions, vacate as moot the district court's order denying Exafer's motion to reopen fact and expert discovery, and vacate the district court's grant of summary judgment based on absence of a remedy. We remand for further proceedings consistent with this opinion.

**REVERSED-IN-PART, VACATED-IN PART, AND REMANDED**

## COSTS

Costs to Exafer.