**No. 2024-2296**

# United States Court of Appeals
# for the Federal Circuit

————————

**EXAFER LTD.,**
*Plaintiff-Appellant*

v.

**MICROSOFT CORPORATION,**
*Defendant-Appellee*

————————

Appeal from the United States District Court for the Western District of Texas, No. 1:20-cv-131-RP, Judge Robert Pitman

————————

**COMBINED PETITION FOR PANEL REHEARING AND REHEARING EN BANC**

————————

EIMERIC REIG-PLESSIS
Winston & Strawn LLP
101 California Street
San Francisco, CA 94111
(415) 591-6800
ereigplessis@winston.com

KELLY C. HUNSAKER
MATTHEW R. MCCULLOUGH
Winston & Strawn LLP
255 Shoreline Drive
Redwood City, CA 94065
(650) 858-6500
khunsaker@winston.com
mrmcullough@winston.com

*Counsel for Defendant-Appellee Microsoft Corporation*

## CERTIFICATE OF INTEREST

Undersigned counsel certifies that the following information is

accurate and complete to the best of counsel's knowledge:

1. **Represented Entities.** Fed. Cir. R. 47.4(a)(1): "The full name of every entity represented in the case by the counsel filing the certificate."

    Microsoft Corporation

2. **Real Party in Interest.** Fed. Cir. R. 47.4(a)(2): "For each entity, the name of every real party in interest, if that entity is not the real party in interest."

    Microsoft Corporation

3. **Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3): "For each entity, that entity's parent corporation(s) and every publicly held corporation that owns ten percent (10%) or more of its stock."

    None

4. **Legal Representatives.** Fed. Cir. R. 47.4(a)(4): "The names of all law firms, partners, and associates that have not entered an appearance in the appeal, and (A) appeared for the entity in the lower tribunal; or (B) are expected to appear for the entity in this court."

| *Winston & Strawn:* | M. Brett Johnson | Vivek V. Krishnan* |
|---|---|---|
| Thomas M. Melsheimer* | Qi (Peter) Tong* | Carson Swope |
| Samantha M. Lerner | | |
| *No longer affiliated with Winston & Strawn LLP | | |

| Shelton Coburn LLP: | Sidley Austin LLP: | |
|---|---|---|
| Barry Kenneth Shelton | Aimee P. Fagan** | |
| | **Now affiliated with Winston & Strawn LLP | |

5. **Related Cases.** Fed. Cir. R. 47.4(a)(5): "An indication as to whether there are any related or prior cases, other than the originating case number(s), that meet the criteria under Federal Circuit Rule 47.5."

No

6. **Organizational Victims and Bankruptcy Cases.** Fed. Cir. R. 47.4(a)(6): "All information required by Federal Rule of Appellate Procedure 26.1(b) and (c) that identifies organizational victims in criminal cases and debtors and trustees in bankruptcy cases."

Not applicable

/s/ Kelly C. Hunsaker
KELLY C. HUNSAKER
*Counsel for Defendant-Appellee*

May 6, 2026

ii

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ...................................................................i

STATEMENT OF COUNSEL.................................................................vii

INTRODUCTION....................................................................................1

STATEMENT OF THE CASE ................................................................3

ARGUMENT ..........................................................................................7

I.  The panel's "causal connection" standard conflicts with Section 284 and this court's proximate-cause precedent. ...............7

    A.  The panel's "causal connection" standard is legally insufficient—Section 284 requires proximate cause between royalties and use made of the invention. .................8

    B.  The panel's error is dispositive here because Exafer's damages model is admittedly "irrespective" of use of the patented invention. ......................................................13

    C.  The district court's exclusion should be affirmed on any correct ground. .........................................................16

II.  The panel usurped the district court's gatekeeping role under Rule 702 by affirmatively finding admissibility rather than remanding...........................................................17

    A.  The proper remedy was remand, not an affirmative admissibility finding. .........................................................17

    B.  The panel credited only Exafer's evidence, ignoring admissions and uncontested facts presented by Microsoft.........................................................18

    C.  The district court did not reach additional grounds for exclusion that remain pending. .........................................20

## TABLE OF CONTENTS (continued)

**Page**

CONCLUSION .................................................................................21

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME
LIMITATIONS .............................................................................23

ADDENDUM

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amgen Inc. v. Hospira, Inc.*,
944 F.3d 1327 (Fed. Cir. 2019) .......................................................... 12

*Anza v. Ideal Steel Supply Corp.*,
547 U.S. 451 (2006) ........................................................................... 10

*Aro Mfg. Co. v. Convertible Top Replacement Co.*,
377 U.S. 476 (1964) ............................................................................. 8

*AstraZeneca AB v. Apotex Corp.*,
782 F.3d 1324 (Fed. Cir. 2015) .......................................................... 12

*Brumfield, Tr. for Ascent Tr. v. IBG LLC*,
97 F.4th 854 (Fed. Cir. 2024) .................................................... *passim*

*Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*,
807 F.3d 1283 (Fed. Cir. 2015) ............................................. 12, 13, 16

*Dowagiac Mfg. Co. v. Minnesota Moline Plow Co.*,
235 U.S. 641 (1915) ........................................................................... 11

*EcoFactor, Inc. v. Google LLC*,
137 F.4th 1333 (Fed. Cir. 2025) (en banc) .............................. 2, 17, 21

*Enplas Display Device Corp. v. Seoul Semiconductor Co.*,
909 F.3d 398 (Fed. Cir. 2018) .................................................. *passim*

*Garretson v. Clark*,
111 U.S. 120 (1884) ....................................................................... 8, 16

*George v. SI Grp., Inc.*,
36 F.4th 611 (5th Cir. 2022) ............................................................. 18

*Holmes v. Sec. Inv. Prot. Corp.*,
503 U.S. 258 (1992) ........................................................................... 10

# TABLE OF AUTHORITIES (continued)

**Page(s)**

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
  694 F.3d 51 (Fed. Cir. 2012) ..................................................................9

*Niazi Licensing Corp. v. St. Jude Medical S.C., Inc.*,
  30 F.4th 1339 (2022) .......................................................... 11, 14, 15

*Seymour v. McCormick*,
  57 U.S. 480 (1854) ..................................................................................8

*Wells v. SmithKline Beecham Corp.*,
  601 F.3d 375 (5th Cir. 2010) ............................................................. 16

*WesternGeco LLC v. ION Geophysical Corp.*,
  585 U.S. 407 (2018) .......................................................... 1, 9, 12, 16

## Statutes

35 U.S.C. § 271 .................................................................... 9, 12, 13, 16

35 U.S.C. § 284 ................................................................................ *passim*

## Other Authorities

Fed. R. Evid. 702 ........................................................................... *passim*

## STATEMENT OF COUNSEL

A.  Based on my professional judgment, I believe the panel decision is contrary to the following decisions of the Supreme Court of the United States or the precedents of this Court: *WesternGeco LLC v. ION Geophysical Corp.*, 585 U.S. 407 (2018); *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006); *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476 (1964) ("*Aro II*"); *Garretson v. Clark*, 111 U.S. 120 (1884); *Brumfield, Tr. for Ascent Tr. v. IBG LLC*, 97 F.4th 854 (Fed. Cir. 2024); *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 807 F.3d 1283 (Fed. Cir. 2015); *Niazi Licensing Corp. v. St. Jude Medical S.C., Inc.,* 30 F.4th 1339, 1357 (2022); *EcoFactor, Inc. v. Google LLC*, 137 F.4th 1333 (Fed. Cir. 2025) (en banc).

B.   Based on my professional judgment, I believe this appeal requires an answer to the following precedent-setting question of exceptional importance:

> Whether § 284 requires that damages based on non-infringing product sales as a measure of a reasonable royalty be proximately tied to the use made of the patented invention, or whether a generalized "causal connection" between the patented and unpatented products is sufficient?

/s/ Kelly C. Hunsaker
KELLY C. HUNSAKER
*Counsel for Defendant-Appellee*

May 6, 2026

viii

## INTRODUCTION

Microsoft respectfully seeks rehearing of the panel's decision reversing exclusion of Exafer's damages expert, Mr. Blok, and finding his damages methodology reliable and admissible. Mr. Blok applied a running royalty to 100% of Microsoft's unaccused, non-infringing VM product sales "irrespective" of actual use of the accused features. Yet the panel found this sufficiently reliable because Mr. Blok "accounted for the causal connection between the Accused Features and VMs." Op. 6–7. But Section 284 and precedent require *proximate* causation—a direct causal nexus between royalties and "the use made of the invention by the infringer"—not the bare "causal connection" between two products that the panel applied. As a matter of law and statutory interpretation, a methodology measuring damages "irrespective" of use of the patented features cannot reliably satisfy a statute limited to royalties "for the use made of the invention."

The panel's decision raises questions of exceptional importance. The Supreme Court and this Court recognize that "proximate cause[] could limit or preclude damages in particular cases," and that open "questions about the proper approach" remain unresolved. *WesternGeco*

1

*LLC v. ION Geophysical Corp.,* 585 U.S. 407, 417 (2018); *Brumfield, Tr. for Ascent Tr. v. IBG LLC,* 97 F.4th 854, 878 (Fed. Cir. 2024). By collapsing the distinction between bare causal connection and proximate cause, the panel's decision threatens to fundamentally reshape reasonable royalty law, permitting patentees to claim damages on vast categories of non-infringing products and transforming Section 284 into a vehicle for systematic overcompensation far beyond the value of the patented invention. A precedential opinion endorsing damages measured "irrespective" of use of the invention cannot stand. The Court should grant rehearing en banc to address the standard of proximate cause under 35 U.S.C. § 284 when a patent holder seeks royalties on non-infringing product sales as a measure of damages for infringement.

Independently, the panel erred by resolving admissibility itself rather than remanding to the district court. The panel made an affirmative Rule 702 finding on a contested record—crediting Exafer's evidence while ignoring its experts' admissions that their model was "irrespective" of use—and bypassed additional grounds for exclusion the district court never reached. Under *EcoFactor*, the trial court's gatekeeping role is paramount, and the panel improperly usurped it.

2

## STATEMENT OF THE CASE

Microsoft's Azure Platform is a vast cloud computing ecosystem comprised of over 200 different products and services.  Appx1836, Appx1452.  One such product is Virtual Networks (VNets) in the Azure Networking line of business.  Appx1854.  Another is Virtual Machines (VMs) in the Azure Compute line of business.  Appx1851.  Exafer asserted two patents directed to methods performed by network switches for optimizing communication paths for network packets.  Op. 2–3.  Exafer accused two VNet sub-components of infringement: SmartNIC and VFP Fastpath.  Op. 4.  Exafer did not accuse VMs of infringement.  Appx4.

Nonetheless, Mr. Blok's damages methodology applied a per-hour royalty to 100% of non-infringing VM-hours sold by Microsoft.  Op. 6.  Mr. Blok conceded "the entire market value rule does not apply in this case."  Appx3023–24 (318:23–319:6).  Instead, Mr. Blok premised his VM royalty base on projected CPU savings from the Accused Features and "how Microsoft *perceived* [those] technical benefits . . . *at the time of the hypothetical negotiation* in terms of the additional VMs Microsoft *would be able* to host on its servers." Op. 6; Appx899–900.

Importantly, however, Mr. Blok admitted he identified no evidence the Accused Features *actually* caused Microsoft to sell more VM-hours: "***I'm not aware of – of anything produced by Microsoft showing, you know, an increase in virtual machine hours.***" Appx3032 (31:10–12). Mr. Blok further admitted that whether the Accused Features are *actually* used did not even matter to his analysis:

> Q: But whether or not they are ***actually used*** by the virtual machines, ***whether or not an increase in virtual machine hours actually occurred***, does not vary your damages calculation; is that correct?
>
> . . .
>
> THE WITNESS: As I set here today, ***it does not impact my analysis*** . . .

Appx1555 (285:21—286:20).

Multiplying the speculation, Mr. Blok relied on Dr. Congdon, Exafer's technical expert, who estimated 50–100% CPU savings from early "forward-looking" projections (Appx3051–52), that he then bluntly extrapolated to 50–100% more VM-hours Microsoft "would have been able to [provide]." Appx899–900. Despite uncontested evidence the Accused Features did not lead to more VM-hours, were rarely used, disabled by default, and unsupported by many classes of VMs (Appx1360–61, Appx1370–71, Appx1459, Appx1475, Appx1483,

4

Appx1492, Appx1497, Appx1563–69, Appx1904–07, Appx3058–59, Appx4362–63), Dr. Congdon assumed 100% utilization of the Accused Features by all VMs at all times "irrespective" of actual use, because:

> "it's part of the infrastructure . . . *so its irrespective of if it's used or not* . . . . The benefit is there, *regardless of if it's used.*"

Appx1547 (273:10–274:2); Appx1518 (151:12–24); Appx1546 (268:4–10, 268:25–269:13, 270:2–12).

Thus, both Exafer's experts admitted their measure of damages was not based on causation-in-fact, actual increased VMs, or *use* of the Accused Features, but on their mere *presence* in the shared infrastructure.

## SUMMARY OF DISTRICT COURT PROCEEDINGS

Microsoft moved under Rule 702 to exclude Mr. Blok's testimony. Relying on *Enplas Display Device Corp. v. Seoul Semiconductor Co.,* 909 F.3d 398 (Fed. Cir. 2018), the district court held Exafer failed to show Mr. Blok's VM-hour methodology was reliable, because in *Enplas* this Court held "the royalty base for reasonable royalty damages cannot include activities that do not constitute patent infringement." Appx6. Later, upon showing Exafer had not developed *any* other damages

evidence sufficient to support a non-speculative non-zero royalty, the district court granted summary judgment of no remedy. Appx18. Exafer appealed.

**SUMMARY OF PANEL DECISION & RELIEF REQUESTED**

The panel reversed the exclusion order and vacated summary judgment. It held *Enplas* does not create a *per se* rule proscribing application of a royalty rate to unaccused VMs, and found Mr. Blok's methodology reliable and admissible under Rule 702 because he "accounted for the causal connection between the Accused Features and VMs in his valuation of the Accused Features." Op. 6–8.

Microsoft does not reargue *Enplas* here or advance a categorical bar against royalties applied to unpatented product sales. Instead, Microsoft takes issue with the panel's bare "causal connection" test between two products, one accused and one not, as sufficient for admissibility under Rule 702. Under § 284, the proper *standard* is "proximate cause"; the proper *connection* is between the acts of infringement and royalties; and the proper *measure* is "for the use made of the invention." As a matter of law and statutory interpretation, reasonable royalties measured

6

"irrespective" of use of the patented invention cannot meet this requirement.

The district court's decision is correct, even if its reasoning based on *Enplas* alone was not. Under the proper causation standard, Mr. Blok's methodology measuring damages "irrespective" of use is facially unreliable and contrary to law. The panel's decision should be reversed and the district court's exclusion order reinstated.

## ARGUMENT

I.  **The panel's "causal connection" standard conflicts with Section 284 and this court's proximate-cause precedent.**

The panel's bare "causal connection" standard cannot be squared with controlling law or long-standing principles of apportionment foundational to patent damages law. In modern technology platforms, causal connections between any given feature and other products in the same ecosystem are ubiquitous, a baseline reality of interconnected systems, not a meaningful limiting principle. Absent clarification of the causation standard, the panel's opinion undermines decades of patent damages law and exposes virtually every major technology platform to limitless damages exposure for minor improvements rarely used, threatening billions of dollars in innovation investment across industries

7

that drive the American economy.  The en banc Court must hold the line so the "rules prohibiting extension of the patent monopoly to unpatented elements are not so readily circumvented."  *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 508 (1964) ("*Aro II*").

A. **The panel's "causal connection" standard is legally insufficient—Section 284 requires proximate cause between royalties and use made of the invention.**

The rule of apportionment is the foundational constraint on patent damages.  The Supreme Court has long held a patentee must "in every case" apportion damages "between the patented feature and the unpatented features," and "such evidence must be reliable and tangible, and not conjectural or speculative."  *Garretson v. Clark*, 111 U.S. 120, 121 (1884); *see also Seymour v. McCormick*, 57 U.S. 480, 490 (1854).  This requirement embodies § 284's proximate-cause limitation: damages must "compensate for the infringement" and "the use made of the invention," establishing a presumption against unpatented products in the royalty base.

Recognized exceptions to this presumption are narrow.  The most commonly articulated is the entire market value rule, permitting unpatented components only where the patented feature drives demand

for the entire product. *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012). The panel's decision effectively recognizes a second exception: non-infringing product sales as a measure of damages for infringement. Op. 7. Microsoft does not contend such a measure is categorically unavailable, but it *must* be constrained by proximate-cause principles governing all damages under § 284. The panel's "causal connection" standard fails to supply that constraint.

**Section 284 requires proximate cause, not an undefined "causal connection."** Upon a finding of infringement, a patent owner may recover "damages adequate to compensate *for the infringement*, but in no event less than a reasonable royalty *for the use made of the invention* by the infringer." 35 U.S.C. § 284. "'[T]he infringement' is the focus of this statute," which requires determining "the type of infringement that occurred" under § 271. *WesternGeco*, 585 U.S. at 417. The Supreme Court cautioned "proximate cause[] could limit or preclude damages in particular cases," *id.* n.3, and this Court has since identified open "questions about the proper approach to determining [damages], based on 'other doctrines, such as proximate cause.'" *Brumfield*, 97 F.4th at 878.

9

Patent damages are limited by proximate cause, which "requires but-for causation plus more, including the absence of remoteness," *id.* at 877, and "some *direct relation* between the injury asserted and the injurious conduct alleged," *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992). The panel's standard, requiring only some "causal connection" between Accused Features and the royalty base, fails to apply these principles.

The panel declared a causal chain based on two independent events: (1) implementing the Accused Features reduced CPU usage, and (2) Microsoft "*would be able*" to use freed-up CPUs to host additional VMs. Op. 6. But this two-step summary papers over enormous intervening complexity: from network optimization to selling more VMs requires dozens of independent steps, decisions, and contingencies. Even assuming infringement proximately caused CPU savings, it does not follow it would also be the proximate cause of *selling more VMs. See Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 458 (2006) (no proximate cause where "the cause of [plaintiff's] asserted harms . . . is a set of actions (offering lower prices) entirely distinct from the alleged [violation] (defrauding the State)"). This case is on all fours: any additional VM

sales would result from independent business decisions on how to allocate available CPUs, actions distinct from any acts of infringement.

**The correct causal nexus is between "use made of the invention" and royalties—not between two products.** The panel framed the required "causal connection" as the relationship between Accused Features and VMs. Op. 6. That is the wrong relationship. Section 284 limits reasonable royalty damages "for *the infringement*" only "*for the use made of the invention*," which requires considering "the *extent of the use* involved." *Brumfield*, 97 F.4th at 876 (quoting *Dowagiac Mfg. Co. v. Minnesota Moline Plow Co.*, 235 U.S. 641, 648 (1915)). Mere capability cannot support damages: *actual* use is required. *Niazi Licensing Corp. v. St. Jude Medical S.C., Inc.,* 30 F.4th 1339, 1357 (2022) ("patentees cannot recover damages based on sales of products with the mere capability to practice the claimed method"). That distinction is critical here where Dr. Congdon calculated CPU savings "'irrespective' of if it's used or not" because it's "part of the infrastructure." Appx1547.

By substituting a product-to-product relationship for a royalty-to-scope-of-infringement relationship, tied only to "perceived" value in the hypothetical negotiation, the panel permitted royalties untethered to the

11

patent grant. This Court has held that negotiation preferences cannot override the causation requirements of § 284. *See Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 807 F.3d 1283, 1306–07 (Fed. Cir. 2015) (causation sufficient for hypothetical negotiation "is not enough to use the sales as a direct measure of the royalty . . ."); *Enplas*, 909 F.3d at 409 (rejecting retrospective perspective argument); *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1343 (Fed. Cir. 2015) (same). Nor does the panel's analogy to method-of-manufacture claims support its holding. Op. 7 (citing *Amgen Inc. v. Hospira, Inc.*, 944 F.3d 1327, 1341–42 (Fed. Cir. 2019)). There, every method instance directly produces the end product, but no such direct link exists here.

**Foreign sales cases confirm this framework applies where non-infringing sales are used as a damages measure.** The structural problem here is the same one addressed in *WesternGeco*, *Carnegie Mellon*, and *Brumfield*: a patentee seeking to use non-infringing revenue—there, foreign sales; here, unpatented VM-hours—as a measure of damages for § 271 acts of infringement. In both, the patentee relies on non-infringing revenue as a proxy for the value of infringement. In both, there is tension with doctrinal presumptions—against

12

extraterritoriality or the rule of apportionment—requiring heightened scrutiny.  For both, § 284's proximate-cause requirement supplies the governing constraint: non-infringing sales may serve as a damages measure, if at all, only to the extent proximately tied to acts of infringement under § 271 *for those units.*  *Carnegie Mellon,* 807 F.3d at 1306–07 (foreign sales permitted in royalty base "when and only when" an act of infringement "for that unit" is proved).  Thus, this Court held in *Brumfield* that, as a *threshold* requirement of proximate cause, an expert's damages framework must "start from an act of infringement." 97 F.4th at 879–880.  The panel's "causal connection" standard fails to enforce that constraint.

### B. The panel's error is dispositive here because Exafer's damages model is admittedly "irrespective" of use of the patented invention.

Exafer's failure to meet these threshold requirements is dispositive. Exafer's experts both testified actual use of the invention was irrelevant to their analysis.  Mr. Blok admitted that whether or not the Accused Features are actually used or actually increased VM hours "does not vary [his] damages calculation" or "impact [his] analysis," and he was unaware of anything actually "showing . . . an increase in virtual machine hours."

13

Appx1555, , Appx3032. Dr. Congdon too admitted his opinions on the Accused Features were "irrespective of if it's used or not," because "it's part of the infrastructure [so] [t]he benefit is there, regardless of if it's used." Appx1547, Appx1518, Appx1546. The experts undisputably did not start from acts of infringement. Rather, uncontested facts established the Accused Features were rarely used, disabled by default, and unsupported by entire classes of VMs. See *supra*, Statement of the Case.

Dr. Congdon's rationale for failing to consider use of the Accused Features is precisely the capability-based reasoning rejected in *Niazi*, *supra*. Patentees cannot recover damages for "mere capability"; instead "[d]amages should be apportioned to separate out noninfringing uses," and an expert's "failure to account for noninfringing uses" is legally improper. *Niazi*, 30 F.4th at 1357. These principles apply here.

The panel concluded Mr. Blok's methodology "is tethered to the patented invention and does not expand Exafer's patent monopoly to unpatented technology." Op. 8. But "tethered to the patented invention" is not the standard. Tethered to acts of infringement and "use made of the invention" is. And any methodology that measures damages

14

"irrespective" of use of the patented invention, is tethered to the wrong thing.

**Dr. Congdon's opinions only apportioned the patents' contribution within SmartNIC—not between infringing and non-infringing use.** Dr. Congdon opined one-third of SmartNIC's CPU improvement was attributable to the Accused Features. Op. 6; Appx899–900 (¶¶ 124–25). He did not apportion between VM-hours using the Accused Features and those that are not. These are two distinct apportionment steps, and the second—apportioning to the scope of infringement—was never performed. As Dr. Congdon himself conceded, his analysis was "'irrespective' of if it's used or not." Appx1547. Cf. *Niazi*, 30 F.4th at 1357 (requiring apportionment "to separate out noninfringing uses").

**The Court need not reach how units of non-infringing sales are counted because Exafer fails at the threshold step.** Where a royalty base comprises noninfringing product sales, the proximate-cause standard involves two steps. First, is the threshold requirement that the framework must "*start* from an act of infringement" and must "separate out noninfringing uses." *Brumfield,* 97 F.4th at 879–80; *Niazi,* 30 F.4th

15

at 1357; see also *WesternGeco,* 585 U.S. at 417.   Second, once that threshold is met*, Carnegie Mellon*'s "when and only when" rule would govern how non-infringing sales proximately tied to infringing acts may be counted in the royalty base. 807 F.3d at 1306.   *That* inquiry requires some "direct" unit-level correspondence between the infringing acts under § 271 and the scope of non-infringing sales in the royalty base. *Id.* Doctrinal presumptions would, in turn, require rigorous scrutiny, based on evidence "reliable and tangible, and not conjectural or speculative." *Garretson,* 111 U.S. at 121.

The Court need not reach step-two here: Exafer's experts concede they never performed step-one.   Exafer's damages therefore fail at the threshold, and exclusion should be affirmed without the need to determine how counting should work when the threshold is met.

## C.    The district court's exclusion should be affirmed on any correct ground.

This Court may affirm a district court's judgment "on any grounds supported by the record." *Wells v. SmithKline Beecham Corp.*, 601 F.3d 375, 377–78 (5th Cir. 2010) (affirming exclusion on alternative ground than adopted by district court).   Even if the district court's *Enplas* reading was overbroad, the result—exclusion of Mr. Blok's opinions—was

16

correct under the proper proximate-cause standard. Given undisputed admissions that Exafer's damages framework was irrespective of use, the deficiency is a matter of law. The exclusion should be reinstated, or in the alternative, remanded to the district court to apply the correct standard in the first instance.

## II. The panel usurped the district court's gatekeeping role under Rule 702 by affirmatively finding admissibility rather than remanding.

Even if the panel correctly identified an error in the district court's opinion, its remedy was wrong. Rather than remanding to the district court to apply the correct standard in the first instance, the panel made an affirmative admissibility finding, declaring Mr. Blok's testimony "satisfies the admissibility standards of Rule 702." Op. 8. That determination usurped the district court's gatekeeping function, took a one-sided view of a contested record, and bypassed additional grounds for exclusion the district court never reached.

### A. The proper remedy was remand, not an affirmative admissibility finding.

Under Rule 702, "the trial judge plays a 'gatekeeping role,'" which "is particularly essential in the context of patent damages." *EcoFactor, Inc. v. Google LLC*, 137 F.4th 1333, 1340 (Fed. Cir. 2025) (en banc). The

17

district court has familiarity with the full record, can assess credibility, and can make the factual findings Rule 702 requires. When an appellate court concludes the district court applied an incorrect legal standard, the remedy is to vacate and remand, not decide admissibility in the first instance. *See George v. SI Grp., Inc.*, 36 F.4th 611, 623 n.7 (5th Cir. 2022) (close question "merit[s] the district court's careful attention to its admissibility.").

The panel concluded the district court erred in applying *Enplas,* then resolved admissibility itself, finding Mr. Blok's methodology "satisfies the admissibility standards of Rule 702." Op. 8. It did so without the benefit of district court findings on causation or briefing on proximate cause, and without considering the full contested record on causation bearing on admissibility. This was error.

## B. The panel credited only Exafer's evidence, ignoring admissions and uncontested facts presented by Microsoft.

The panel's affirmative admissibility finding is particularly problematic given Mr. Blok's and Dr. Congdon's admissions that their damages model was regardless of use, infringement, or causation-in-fact. Instead, the panel resolved admissibility by crediting only Exafer's

evidence: Dr. Congdon's reliance on early forecasts of 50–100% CPU savings, and his unmetered extrapolation to 50–100% more VM-hours; and Mr. Blok's opinions on "how Microsoft perceived" these technical benefits. Op. 6–7. The panel did not even acknowledge the other side of the record disproving any proximate causal chain. Supra Statement of the Case; Argument I.B; Resp. Br. 14, 39, 69; ECF 59 at 1; Appx1546–47 ("irrespective" of use); Appx1555 (use "does not impact" analysis); Appx3032 (no evidence of increased VM hours); Appx845, Appx4362–63 (list of unsupported VMs); Appx1459 (214:3–8), Appx1483 (187:3–7) (low utilization of accused features); Appx4407–08 (168:14–18, 169:7–11), Appx1420–21 (44:22–45:4) (no financial benefit). Resolving admissibility on these issues was the province of the district court, not an appellate panel reviewing a paper record.

The panel's own language confirms the problem: it credited what Microsoft "perceived" and "would be able" to do, not what actually occurred. Op. 6, 8. That is not Rule 702 gatekeeping. A reliability determination on damages resting on hypothetical possibilities over disqualifying admissions foreclosing proximate cause fails the careful, record-based analysis the rule requires. The district court did not abuse

19

its discretion under the proper standard, but, at minimum, remand was required.

### C. The district court did not reach additional grounds for exclusion that remain pending.

Microsoft independently challenged Mr. Blok's testimony on multiple other grounds, including improper profit-split, opinions untethered to facts, and separate violations of rules of apportionment. Appx837–45. The district court expressly did not reach these "myriad" additional issues (Appx4) because it found the improper royalty-base sufficient to exclude Mr. Blok's testimony. Appx6.

The panel's affirmative admissibility finding effectively resolved all these grounds in Exafer's favor without analysis. Even if the panel's ruling were upheld, the proper remedy would still be to remand for determination on the additional admissibility issues raised below, not declare Mr. Blok's testimony reliable and admissible. Op. 8.

### POINTS MISAPPREHENDED OR OVERLOOKED

The panel should grant rehearing because, first, it overlooked the correct "proximate cause" standard and misapprehended the correct nexus is between the scope of infringement and royalties, not between two products. 35 U.S.C. § 284; *Brumfield,* 97 F.4th at 877. Second, the

panel overlooked disqualifying admissions measuring damages "irrespective" of use and direct evidence the Accused Features were rarely used, disabled by default, and unsupported by many classes of VMs. *Supra*, Statement of the Case. Third, the panel overlooked the district court's gatekeeping role by applying causation and determining admissibility in the first instance. *EcoFactor*, 137 F.4th at 1340. Finally, the panel overlooked Microsoft's "myriad" other Rule 702 challenges to Mr. Blok's testimony raised below. Appx4.

## CONCLUSION

The panel's "causal connection" standard is irreconcilable with § 284, and its affirmative admissibility finding usurped the district court's role under Rule 702. Rehearing en banc is needed to address the precedent-setting question of whether § 284 requires that royalties on non-infringing product sales as a measure of damages be proximately tied to use made of the patented invention, or whether a bare "causal connection" between patented and unpatented products is enough. The district court's exclusion of Mr. Blok should be reinstated, as damages measured "irrespective" of use fail as a matter of law. At minimum, the

21

case should be remanded for the district court to apply the correct

causation standard and address other grounds for exclusion raised below.

Respectfully submitted,

/s/ Kelly C. Hunsaker

| | |
|---|---|
| EIMERIC REIG-PLESSIS | KELLY C. HUNSAKER |
| Winston & Strawn LLP | MATTHEW R. MCCULLOUGH |
| 101 California Street | Winston & Strawn LLP |
| San Francisco, CA 94111 | 255 Shoreline Drive |
| (415) 591-6800 | Redwood City, CA 94065 |
| ereigplessis@winston.com | (650) 858-6500 |
| | khunsaker@winston.com |
| | mrmccullough@winston.com |

*Counsel for Defendant-Appellee Microsoft Corporation*

May 6, 2026

22

# CERTIFICATE OF COMPLIANCE
## WITH TYPE-VOLUME LIMITATIONS

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because the filing has been prepared using a proportionally-spaced typeface and includes 3,896 words.

/s/ Kelly C. Hunsaker
KELLY C. HUNSAKER
*Counsel for Defendant-Appellee*

May 6, 2026

# ADDENDUM

# United States Court of Appeals
# for the Federal Circuit

---

**EXAFER LTD,**
*Plaintiff-Appellant*

**v.**

**MICROSOFT CORPORATION,**
*Defendant-Appellee*

---

2024-2296

---

Appeal from the United States District Court for the Western District of Texas in No. 1:20-cv-00131-RP, Judge Robert L. Pitman.

---

Decided: March 6, 2026

---

ELIZABETH BERNARD, Daignault Iyer LLP, Vienna, VA, argued for plaintiff-appellant. Also represented by RONALD M. DAIGNAULT, JASON SCOTT CHARKOW, SCOTT R. SAMAY.

KELLY CATHERINE HUNSAKER, Winston & Strawn LLP, Redwood City, CA, argued for defendant-appellee. Also represented by MATTHEW R. MCCULLOUGH, MICHAEL RUECKHEIM; EIMERIC REIG-PLESSIS, San Francisco, CA; KATHERINE VIDAL, Washington, DC.

---

Before MOORE, *Chief Judge*, TARANTO and STOLL, *Circuit Judges.*

MOORE, *Chief Judge.*

Exafer Ltd. (Exafer) appeals orders from the United States District Court for the Western District of Texas (1) excluding Exafer's expert report on damages, (2) denying Exafer's motion to reopen fact and expert discovery, and (3) granting Microsoft Corporation's (Microsoft) motion for summary judgment based on absence of a remedy. For the following reasons, we reverse the district court's exclusion of Exafer's damages expert report and vacate the district court's orders denying Exafer's motion to reopen fact and expert discovery and granting summary judgment based on absence of a remedy.

## BACKGROUND

Exafer owns U.S. Patent Nos. 8,325,733 and 8,971,335 (asserted patents), which relate to systems and methods for optimizing communication paths between virtual network devices by controlling data forwarding rules at intelligent switches. '733 patent at 1:16–20, 2:60–67; '335 patent at Abstract, 3:61–4:22. Claim 26 of the '733 patent recites:

26. A method for forwarding frames of a flow via a layer 2 forwarder and manipulator (L2FM), the method comprising:

a. identifying, at the L2FM, one or more first frames of a new flow;

b. obtaining forward control information for frames of the new flow, wherein the forward control information includes re-writing of at least one field in an original header of the frames of the new flow, wherein obtaining forward control information is done out of band;

c. changing the at least one field in an original header of the frames of the new flow according to the obtained forward control information; and

d. forwarding the frames of the new flow according to the forward control information;

wherein at least portion of the control information is obtained from a remote-admission-and-information controller (RAIC).

Claim 26 of the '335 patent recites:

26. A method to optimize information delivery between a first node on a first network and a second node on the same or different network, the delivery being made through a networked system in which one or more paths between the first node and the second node are known and, through a Transmitting Device Set with Promiscuous and Re-writing Capabilities (TDSPRC) that receives and retransmits all frames of the first network and the same or different network, and the method comprising:

collecting topology information related to three or more different Open System Interconnection (OSI) model layers from a plurality of network devices working in networks that belong to different OSI layers;

identifying alternate paths, based at least in part on the collected topology information related to three or more different OSI layers, between the first node and the second node;

creating a collective virtual network (CVN) including the known paths and the alternate paths, for a particular flow, identify an optimal path in the CVN instead of a known path between the first node and the second node; and

modifying the data frames of the particular flow to be compatible with a network technology employed by the identified optimal path, wherein the modification is implemented by the TDSPRC and the TDSPRC is not a member in at least one of the networks.

Exafer sued Microsoft, accusing Microsoft's Azure Platform, and specifically the Azure Smart Network Interface Cards (SmartNICs) and Virtual Filtering Platform (VFP) Fastpath technology (Accused Features), of infringing the asserted patents. J.A. 453–505. Exafer served expert reports from its technical expert, Dr. Paul Congdon, and damages expert, Mr. Justin Blok, quantifying the technical and financial benefits of Microsoft's alleged infringement. J.A. 849–1206; J.A. 1208–1309; J.A. 1347–63; J.A. 1365–77.

Microsoft filed a *Daubert* motion to exclude all of Mr. Blok's opinions and Dr. Congdon's opinions related to damages under Federal Rule of Evidence 702. J.A. 820–46. The district court granted Microsoft's motion as to Mr. Blok's opinions because he used unaccused virtual machines (VMs) as the royalty base for his damages estimate, but the district court denied the motion as to Dr. Congdon's opinions. J.A. 7–10; *see also* J.A. 1–6. Exafer then moved to reopen fact and expert discovery to present an alternative damages theory. J.A. 3307–20. The district court denied Exafer's motion. J.A. 11–17. Microsoft moved for summary judgment based on absence of a remedy. J.A. 3413–32. The district court granted Microsoft's motion and entered final judgment against Exafer. J.A. 18–35; J.A. 36. Exafer appeals the district court's orders excluding Mr. Blok's testimony, denying Exafer's motion to reopen fact and expert discovery, and granting Microsoft's motion for summary judgment for absence of a remedy. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

DISCUSSION

We review issues not unique to patent law under the law of the regional circuit, here, the Fifth Circuit. *Optis Cellular Tech., LLC v. Apple Inc.*, 139 F.4th 1363, 1383 (Fed. Cir. 2025). The Fifth Circuit reviews evidentiary rulings for abuse of discretion. *Reitz v. Woods*, 85 F.4th 780, 787 (5th Cir. 2023). A district court abuses its discretion if its decision is based on an erroneous view of the law or a clearly erroneous assessment of the evidence. *Id.*

Exafer argues the district court erred in excluding Mr. Blok's damages opinions because Exafer's damages theory based on VMs per hour (VM-hours) (i.e., Microsoft's VM pricing rate) reliably reflected how Microsoft valued the Accused Features at the time of the hypothetical negotiation. Exafer Br. 34–44; *see also LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 76 (Fed. Cir. 2012) (explaining that the hypothetical negotiation framework "seeks to discern the value of the patented technology to the parties in the marketplace when infringement began"). In Exafer's view, the district court misapplied *Enplas Display Device Corp. v. Seoul Semiconductor Co.*, 909 F.3d 398 (Fed. Cir. 2018) to improperly create a "categorical bar to considering non-infringing activities in a reasonable royalty analysis." Exafer Br. 30. We agree.

The magistrate judge found *Enplas* "[m]ost closely on point" with the facts of this case because, like the damages expert in *Enplas* who improperly incorporated "activities that do not constitute patent infringement" in the royalty base by including "*potentially* infringing products," Exafer improperly used "VMs—which are not accused of infringement—as the royalty base to determine damages." J.A. 5–6 (citing 909 F.3d at 409–11). The district judge agreed and thus excluded Mr. Blok's testimony, stating that "*Enplas* is directly applicable to this case as it involved the Federal Circuit vacating a damages award that was

based on activities that did not constitute patent infringement." J.A. 9 (citing 909 F.3d at 411).

*Enplas*, however, does not support the district court's overbroad exclusion of Mr. Blok's damages testimony. In *Enplas*, the unaccused, potentially infringing products the plaintiff included in its royalty base had no causal connection to the accused infringing products such that the royalty base improperly "include[d] activities that do not constitute patent infringement." 909 F.3d at 409–12 (quoting *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1343–44 (Fed. Cir. 2015)). Here, however, Microsoft's own documents demonstrate that Mr. Blok's VM-hour royalty base was based on a causal connection between the Accused Features of the Azure Platform and VMs. Dr. Congdon opined that implementation of the Accused Features in the Azure Platform allowed Microsoft to reduce the central processing unit (CPU) usage in Azure servers, freeing up CPU cores to host additional VMs. J.A. 896–900 (¶¶ 113–26). He based this opinion on (1) an internal Microsoft presentation about development and testing of the Accused Features showing VFP Fastpath provided a 50% improvement in VFP CPUs, J.A 1969; and (2) an internal estimate showing Microsoft's use of SmartNIC provided 300% CPU improvement, J.A. 1588–90. Dr. Congdon opined that about one-third of this CPU improvement from SmartNIC was attributable to the asserted patents and that the entire CPU improvement from VFP Fastpath was attributable to the asserted patents. J.A. 899–90 (¶¶ 124–25). Mr. Blok used Dr. Congdon's opinions on how Microsoft perceived the Accused Features' technical benefits within the Azure Platform to value the Accused Features at the time of the hypothetical negotiation in terms of the additional VMs Microsoft would be able to host on its servers. J.A. 1245–60 (¶¶ 92–119). Mr. Blok's methodology for estimating a reasonable royalty did not improperly include activities that do not amount to patent infringement. Instead, Mr. Blok accounted for the causal connection

between the Accused Features and VMs in his valuation of the Accused Features.

Microsoft argues the district court properly relied on *Enplas* in excluding Mr. Blok's damages opinions involving the "application of a royalty rate to sales of unaccused VMs," because it "prevents [Exafer] from expanding its patent monopoly to unpatented products." Microsoft Br. 25–30. *Enplas*, however, does not prescribe the *per se* rule Microsoft attributes to it. A reasonable royalty is not necessarily unreliable under Rule 702 because it uses a royalty base associated with an unaccused product. The facts associated with the alleged infringing activity must be assessed on a case-by-case basis to determine how the parties would value the accused technology during the hypothetical negotiation. *See Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1366 (Fed. Cir. 2008) ("The correct measure of damages is a highly case-specific and fact-specific analysis."), *amended on other grounds by*, 557 F.3d 1377 (Fed. Cir. 2009). For example, damages theories for claims directed to methods of manufacture commonly use the unaccused product made from the claimed method as the royalty base. *Cf. Amgen Inc. v. Hospira, Inc.*, 944 F.3d 1327, 1341–42 (Fed. Cir. 2019) (determining jury's damages award was supported by substantial evidence based on damages expert's testimony estimating a reasonable royalty for a claimed method of manufacture from sales of the unaccused manufactured drug substance).

The facts here illustrate the methodological soundness of Mr. Blok's damages theory based on the technology at issue. The asserted patents are directed to improving efficiency and optimization of data flows within virtual networks. J.A. 895–97 (¶¶ 108–17); '733 patent at Abstract; '335 patent at Abstract. In particular, the '733 patent claims recite systems and methods for forwarding frames of a data flow according to flow-forwarding rules, '733 patent at 3:51–4:29, 13:1–16:54, and the '335 patent claims recite systems and methods of optimizing network traffic

paths across different abstraction layers, '335 patent at 3:61–4:22, 23:54–26:54. Exafer identified the Accused Features operating within the Azure Platform as infringing the asserted patents. J.A.484–503 (¶¶ 136–79). Dr. Congdon opined that the network optimization and efficiency improvements achieved by the claimed inventions "would translate to, among other benefits, the ability to operate more virtual machines on a single CPU or host (i.e., increasing virtual machine density). Accordingly, by increasing virtual machine density, Microsoft would be able to sell more virtual machines without the need for additional network infrastructure." J.A. 897 (¶ 117). Mr. Blok's VM-hour royalty base captured this incremental benefit of being able to offer additional VMs due to operation of the Accused Features within the Azure Platform. J.A. 1255–60 (¶¶ 111–19). Based on (1) Dr. Congdon's estimate that implementation of the Accused Features would result in Microsoft being able to offer 100% more VM-hours from implementing SmartNIC and 50% more VM-hours from implementing VFP Fastpath; (2) the number of VM-hours Microsoft provided during the relevant time period; and (3) estimated average price per hour and gross profit margin from VMs, Mr. Blok calculated an incremental benefit attributable to the claimed inventions of $534.3 million or $0.0625 per VM-hour during the damages period. J.A. 1256–60 (¶¶ 113–19). This methodology is tethered to the patented invention and does not expand Exafer's patent monopoly to unpatented technology. Mr. Blok's testimony therefore satisfies the admissibility standards of Rule 702.

The district court abused its discretion in excluding Mr. Blok's damages opinions as unreliable under Rule 702 for using VMs as its royalty base. We therefore reverse the district court's order excluding his expert opinions.

CONCLUSION

We have considered Microsoft's remaining arguments and find them unpersuasive. We reverse the district court's order excluding Mr. Blok's damages opinions, vacate as moot the district court's order denying Exafer's motion to reopen fact and expert discovery, and vacate the district court's grant of summary judgment based on absence of a remedy. We remand for further proceedings consistent with this opinion.

**REVERSED-IN-PART, VACATED-IN PART, AND REMANDED**

COSTS

Costs to Exafer.